*Plaintiff's Complaint.*

of the University's local campus offices in New Jersey or Pennsylvania (*see also* generally email Exhibits 3E, 3F, and Ex.1A).

*117.* Plaintiff participated in the June 20, 2019 disciplinary hearing without an Attorney, adviser, or witness.

*118.* None of the University's witnesses attended the June 20, 2019 code of conduct hearing.

*119.* The University recorded the June 20, 2019 conduct hearing (Plaintiff will subpoena it soon).

*120.* During the June 20, 2019 disciplinary hearing, the Panel members (defendants Russell, Schmitz, and D'Souza) expressed their confusion about exactly what is Plaintiff's conduct violation.

*121.* During that June 20, 2019 disciplinary hearing, Defendant D'Souza demanded evidence of the June 13, 2019 telephone conversation where Plaintiff allegedly said Defendant Deb Koffman was doing a stupid job so that the panel can hear it for themselves and make a judgment. However, Defendant Agresta advised the Panelists that there was no recorded telephone call evidence. Yet, he proceeded with the hearing absent any evidence and absent Defendant Koffman attending the hearing to be cross-examined for credibility assessment of their statements.

*122.* During the June 20, 2019 conduct hearing, defendant D'Souza demanded that the alleged intimidation emails from Plaintiff should be placed on the screen for members of the Panel to determine for themselves whether Plaintiff actually violated the DeVry University Student Conduct Code or not.

*Plaintiff's Complaint.*

123.    During the June 20, 2019 disciplinary hearing, Plaintiff denied unsubstantiated allegations that he said defendant Koffman was stupid or she was doing a stupid job verifying student information that would still be verified anyway by the Student Support Advisers when she transfers the telephone call to the student support advisers on DeVry Central.

124.    Plaintiff clarified that he was concerned with the waste of time inherent in that telephone procedure and he thinks only the Student Support Advisers themselves should verify his information since the phone call would be transferred to them anyway.

125.    During the June 20, 2019 disciplinary hearing, Plaintiff asserted that it was unlawful for the University to seize and summon him to a disciplinary hearing for reaching out to the University's ADA Officer (Ms. Adrienne Farmby Taylor) to seek ADA accommodations and processing.

126.    During the June 6, 2019  student conduct  hearing, Plaintiff argued that consistent with the University's own Catalogs and Student Handbooks, University Administrators such as Professor Kavouras properly advised Plaintiff to seek ADA accommodations from the ADA Officer, and not from course instructors such as Dr. Goodman.

127.    By email dated June 21, 2019, 12:14 PM (Exhibit 5E), Defendant Agresta notified Plaintiff that the University has imposed a disciplinary sanction "warning and reprimand" against Plaintiff pursuant to Article IV, Sanctions, 1.(a) in violation of Article III of the DeVry student code of conduct in light of the allegations in the hearing package (Ex.1A).

128.    The June 2019 sanction warning letter is contained within Exhibit 5E. Plaintiff was given seven (7) days to appeal.

129.    Defendant Agresta  directed Plaintiff  to send his appeal against the code of conduct violation to the same Defendant Agresta. *Id*

*Plaintiff's Complaint.*

*130.* Page 18 of the 2018-2019 DeVry Student Handbook's code of conduct procedures provides in Page 18 that "…Appeals must be processed by an individual with **no prior involvement** in initial determination or hearing… (emphasis added). *See* Exhibit 6A.

*131.* By email dated June 24, 2019 at 12:45 PM, Plaintiff argued that defendant Agresta participated in the June 20, 2019 hearing; therefore, he should not be receiving or handling Plaintiff's Appeal (Exhibit 6A). Defendant Agresta did not recuse himself from receiving Plaintiff's appeal.

*132.* By email dated June 28, 2019 at 10:00 PM, Plaintiff submitted his appeal to defendant Agresta. (Exhibit 6A).

*133.* By email dated July 1, 2019 at10:06 AM, Defendant Agresta advised Plaintiff that he has forwarded the appeal to the appeal reviewer without disclosing the name of the appeal reviewer.

*134.* The name of the student conduct board appeal reviewer is also undisclosed in the 2018-2019 DeVry Student Handbook.

*135.* By email dated July 1, 2019 at 4:01 PM, defendant Alan Shikowitz notified Plaintiff about the outcome of his appeal (Exhibit 6A). Without any explanation, Defendant Shikowitz upheld the June 2019 disciplinary sanctions of "warning and reprimand."

*136.* Plaintiff believes and therefore avers that Defendant Agresta personally selected Defendant Shikowitz to review Plaintiff's June 2019 student conduct code violation appeal because the student handbook does not authorize Defendant Shikowitz to be appeal reviewer.

*137.* Following the June 2019 conduct proceedings, around July 12, 2019, Plaintiff sent emails and electronic documents to the University's Registrar through Student Support Adviser, Ms. Sayena Sadekin. Plaintiff declared that he does not want to have anything to do with

*Plaintiff's Complaint.*

DeVry's Pennsylvania Campus and he does not want Pennsylvania campus officials to handle any of his files. Plaintiff never authorized anybody to designate his campus location as Philadelphia, Pennsylvania campus.

138. In July 2019, Plaintiff changed his campus location from online student to North Brunswick, New Jersey, location with the assistance of Ms.Sadekin (Exhibit 6D).

139. In November 2018 session, Plaintiff enrolled in the online graduate level class Applied Managerial Statistics ("MATH-533") at DeVry University. The course instructor was a Associate Professor, Kathrine Henson-Mack, Ph.D.

140. Consistent with the provisions for Incomplete Grades in Pages 98-99 of the 2018-2019 Keller Catalog[9] (*see* extracted pertinent part of the Keller Catalog attached herewith as Exhibit 11B), Plaintiff and Dr. Henson-Mack agreed and processed Incomplete grade for the MATH 533 Class (Exhibit 11A) due to Plaintiff's illness (Exhibits 11A.1-11A.2).

141. Around January 31, 2019, consistent with the University's Catalog provisions in Exhibit 11D, Plaintiff contacted Dr. Henson-Mack to extend the Incomplete grade when the Incomplete grade was about to turn to default failing grade (Exhibit 11A).

142. On January 31, 2019 Dr. Henson-Mack left a voicemail on Plaintiff's phone (Exhibit 11A.5) and she stated at the end of her voicemail (Exhibit 11C) to Plaintiff that she could do an F-grade over-rule later on after the Incomplete grade changes to default fail grade (Exhibit 11C) if Plaintiff is unable to submit all the remaining coursework before the Incomplete grade becomes a default fail grade.

143. On or around July 11, 2019, the same Defendant Agresta who previously summoned and sanctioned Plaintiff in June 2019 on grounds that Plaintiff's filing of grade

---

[9]    2018-2019 Keller Catalog,
https://www.devry.edu/content/dam/dvu/www_devry_edu/d/Keller_Catalog.pdf

*Plaintiff's Complaint.*

appeals with the University is "bad character incident" (Exhibit 1A), conspired with Dr. Henson-Mack (as evidenced in July 11, 2019 email Exhibit 11A.8) to stop Dr. Henson-Mack from changing the default F-grade with the F-overrule she previously provided at the end of her January 31, 2019 voicemail to Plaintiff (Ex.11C).

*144.* Around July 11, 2019, defendant Agresta directed Dr. Henson-Mack to tell Plaintiff to file the MATH 533 grade appeal specifically to him, not to anybody else (Exhibit 11A.8) instead of filing the grade appeal electronically to the University for processing by an Academic Specialist, as it was done by Ms. Kelly Day in 2016, *supra*, and Dr. MacCatherine in 2019.

*145.* Plaintiff reminded defendant Agresta about his prejudice against filing grade appeals (Exhibit 11A.10) last June 2019 where the same defendant Agresta mischaracterized Plaintiff's filing of grade appeals as bad "past character incident reference." Yet, in July 2019, the same defendant Agresta wanted Plaintiff to file his grade appeal regarding the MATH 533 class to him.

*146.* By emails, Plaintiff asked defendant Agresta to recuse himself as the decision maker of Plaintiff's MATH 533 grade appeal. Agresta did not recuse.

*147.* On October 31, 2019, Defendant Agresta declined to recuse himself and he proceeded to deny Plaintiff's MATH 533 grade appeal citing pretextual excuses (Ex.11A.11) without referring the grade appeal to an academic specialist and to the University's Provost and Chief Academic Officer for final decision making.

*148.* Defendant Agresta is not the final arbiter of grade appeals at the University.

*Plaintiff's Complaint.*

149.     Academic Affairs Provost of a University such as defendant Shantanu Bose is the final arbiter of grade appeals in the University, as it was previously done in March 2016 by Provost Dr. Donna Rekau, *supra*, when Plaintiff appealed the ACCT 504 grade (Exhibit 16A).

150.     As part of MBA degree academic requirements, Plaintiff enrolled in the University's graduate level class called Managerial Finance ("FIN 515"), September 2019 session,

151.     FIN 515 class was an eight (8) week accelerated online class calendared to run between September 2, 2019 – October 26, 2019.

152.     Defendant Milan Havel, Ph.D ("Dr. Havel," or "Defendant Havel") was the Course Instructor for FIN 515.

153.     By email dated September 1, 2019, 10:17 PM, Plaintiff sent his ADA accommodations note (Exhibit 4D) to Defendant Havel to apply the 1.5x ADA extensions towards the weekly assignments for FIN 515 coursework. Defendant Havel applied the 1.5x ADA extensions (Exhibit 12A).

154.     The University and defendant Havel used a third party educational software system for the FIN 515 class provided by the Textbook's publisher called Cengage Publishing.

155.     Cengage Software was incorporated and synchronized into the FIN 515 course pages that is powered by Canvas Instructure ("Canvas").

156.     To complete FIN 515 weekly homework and quizzes, students log into DeVry's course portal canvas interface and then DeVry's canvas provides a tab link to Cengage for student to complete their Homework and Quizzes.

157.     Plaintiff encountered numerous technical glitches with the synchronization between DeVry Canvas and Cengage systems in FIN 515 class.

*Plaintiff's Complaint.*

*158.* Plaintiff contacted Defendant Havel regarding the technical glitches between the Canvas and Cengage systems. Defendant Havel claimed he does not know how to do it and he referred Plaintiff to DeVry IT help desk, who in turn referred Plaintiff to Cengage (Exhibit 6E).

*159.* By email dated Fri, Jan 11, 2019 at 2:48 PM (Exhibit 7A), DeVry University informed students that Federal Student Financial Aid processing is delayed as result of new merger or ownership and new contracting with the U.S. Department of Education.

*160.* DeVry University does not provide on-campus or off-campus housing or dormitories for students. Students have to find their own housing.

*161.* Plaintiff is a recipient of federal student financial aid for his cost of attendance at DeVry University, which includes tuition, fees, room and board for his own off-campus housing payment.

*162.* Plaintiff encountered non-ADA medical extenuating circumstances during the FIN 515 class.

*163.* By email dated, September 30, 2019, 1:52 PM (Exhibit 7C), one of DeVry University's Financial Aid and Student Support Central Managers, Mr. Daniel McMahon, who is familiar with the financial aid processing delays, encouraged Plaintiff that they would ensure Plaintiff becomes successful in the FIN 515 class despite the financial aid processing delays:

> "…were you able to reach out to your professor already or work with one of our Student Support Advisors about your current class? If not, please call Student Central at 877-496-9050 and we would be happy to work with you on a plan to be successful in the class."

*164.* By email dated October 18, 2019, 2:09 PM (Exhibit 7D, pp.2-3), Plaintiff requested for extensions from Defendant Havel on grounds of non-ADA extenuating circumstances such as  loss of housing associated with the financial aid  delays to allow Plaintiff

*Plaintiff's Complaint.*

to submit his outstanding Homework and Quizzes from Weeks 1-6 of the FIN 515 class. Defendant Havel ignored that email.

165. By email dated October 22, 2019, 11:37 AM (Exhibit 7D, pp.6-8), Plaintiff reiterated his request to defendant Havel for extension to submit outstanding course work in FIN 515 on grounds of extenuating circumstances. Plaintiff also requested for Incomplete grade.

166. Plaintiff copied his designated Student Support Adviser in the person of defendant Arissa Bryant, and Mr. Daniel McMahon.

167. Defendant Arissa Bryant is specifically named within the prior June 20, 2019 disciplinary warning letter. (*Cf* Exhibit 5E, p.4) as part of the channel of communication to act as Plaintiff's advocate and to help escalate concerns to the appropriate administrator. Still, Plaintiff received no response from Defendant Havel or any of the DeVry officials.

168. Plaintiff contacted DeVry Central student support center and inquired about the whereabouts of defendant Arissa Bryant. The Student Support center indicated that they will send Ms. Bryant a message to get back to Plaintiff. Still, Plaintiff did not hear from Ms. Bryant

169. Plaintiff requested to speak to a Faculty Manager with supervisory authority over Dr. Havel. A different Student Support Adviser received Plaintiff's concerns about Defendant Havel and created the Case No. 09351347 at DeVry for a Faculty Manager to address it.

170. Around October 24, 2019, Plaintiff followed up with the Case No. 09351347. DeVry University's Student central informed Plaintiff that the Faculty Manager has instructed Dr. Havel to get back to Plaintiff and Dr. Havel has responded on the case that he would get back to Plaintiff that same day. However, Dr. Havel did not get back to Plaintiff on either October 23 or the next day of October 25.

*Plaintiff's Complaint.*

*171.* Around October 24, 2019, Plaintiff contacted DeVry Central student support advising center in North Brunswick, New Jersey, to attempt to reach a New Jersey local campus Complaint Administrator. Plaintiff was referred to Illinois DeVry Central.

*172.* By email dated October 22, 2019 at 4:20 PM (Exhibit 6G), Plaintiff requested Incomplete grade for the FIN 515 class from Defendant Havel. Without any explanation, Defendant Havel declined to give Plaintiff Incomplete grade, *Id*. Plaintiff electronically signed his part of the Incomplete grade request through the DocuSign electronic system by the Registrar.

*173.* By emails around October 23, 2019 (Exhibit 6H), Plaintiff asserted that he would file a discrimination complaint against Dr. Havel to the U.S. Department of Education's Office of Civil Rights ("OCR") because he felt he was disparately treated or discriminated when Defendant Havel declined Plaintiff's Incomplete request without any basis. Plaintiff copied the OCR on that email.

*174.* By email dated October 29, 2019 at 10:43am (Exhibit 6I), Plaintiff decried, condemned, and asserted his right to bring a "negligence of duty" and "failure to train" causes of action against Defendant Havel.

*175.* By email dated October 24, 2019 at 10:23 AM (Exhibit 7D, pp.10-11), Plaintiff continued to look for the whereabouts of Ms. Bryant to act as Plaintiff's coordinator.

*176.* Plaintiff contacted one of the long-time responsive Student Support Advisers in the person of Ms. Tennille Husbands, whom Plaintiff knew from previous years of being a Student at Keller.

*177.* Ms. Husbands promptly responded to Plaintiff and explained that defendant Bryant called Plaintiff on the phone. *Id.* However, she could not get a hold of Plaintiff. Plaintiff

*Plaintiff's Complaint.*

replied to Ms. Husbands to give his correct phone number to defendant Bryant to contact him. *Id.* Plaintiff received no phone calls or missed phone call from Ms. Bryant.

178.    Defendant Bryant failed to use email to reach Plaintiff if phone was not working out considering the fact that she was copied on Plaintiff's emails.

179.    With June-July 2019 conduct sanction warning letter's proscribed "channel of communication" in mind (*cf.* Exhibit 5E) and the fact that Plaintiff was no longer a Pennsylvania campus student, the next step was for Plaintiff to reach out to a Dean.

180.    Plaintiff knew from experience at Keller that online students are designated to the National Dean's office because the previous National Dean for Keller, Oscar Gutierrez, PhD directly assisted Plaintiff in the past 2016-2017 (*see* Exhibits 12B.1 and Exhibit 12.B.2).[10]

181.    By email dated Fri, Oct 25, 2019 at 9:40 PM (Exhibit 7D, pp.13-18), Plaintiff wrote to the National Dean for Keller Graduate School of Management students, defendant Lenore Goldberg, J.D. Plaintiff copied some of the National Dean's subordinate regional Deans on the email because Plaintiff used generic email construction so that they can channel the email to the National Dean.

182.    Plaintiff did not copy any Provosts in that email Exhibit 7D unlike the previous Exhibit 3I that was used against Plaintiff during the June 2019 conduct hearing.

183.    By email dated October 26, 2019, 10:58 AM, Dean Lenore Goldberg promptly responded to Plaintiff as follows:

> Hi, Michael – thank you for reaching out to us. I understand your concern and I will do my best to help you. Given that it's Saturday, I need a couple

---

[10]    Exhibits 12 B.1-B.2 establishes that Plaintiff followed the channel of communication because when Plaintiff first matriculated at DeVry and Keller back in 2016 and 2017 as "online student," then-National Dean of Keller, Oscar Gutierrez, was Plaintiff's Dean who solved problems for him. Dr. Gutierrez quickly solved problems for Plaintiff and he told Plaintiff that he should feel free to contact him anytime. Similarly, when Plaintiff changed his campus to online student in July 2019, his dean or Complaint administrator is Keller national Dean Lenore Goldberg.

*Plaintiff's Complaint.*

of days to work through read through the documents, work through issues with the instructor and evaluate the best course of action. I'm hopeful that we will have a resolution by Monday. This slight delay won't impact the any potential extensions.
Let me know if you have any questions in the meantime….

184.    Defendant Goldberg did not take any issue that one of her Keller Students has contacted or reached out to her about a problem.

185.    By email dated October 28, 2019 at 10:20 AM, Plaintiff supplemented the record for Dean Goldberg (Exhibit 7D, pp.22-23).

186.    By emails copied to the Deans dated October 28, 2019 at 11:14 AM and October 28, 2019, 1:53 PM, Dr. Havel responded (Exhibit 7D, pp.25-26) claiming that he has extended Weeks 6-8 FIN 515 outstanding Cengage homework and quizzes for Plaintiff. Weeks 7-8 coursework was already completed and submitted on time and so that aspect required no extensions.

187.    By email dated October 28, 2019, 10:06 PM, Plaintiff issued nine (9) rebuttals (Ex. 7D, pp.28-31) against the unsubstantiated statements of Defendant Havel.

188.    After a series of email interactions with Plaintiff in Exhibit 7E, Defendant Agresta fixed the perfunctory technical problems between the Cengage and Canvas systems affecting erroneous or unreported scores in Plaintiff's grade book for FIN 515 class.

189.    Plaintiff drew the attention of Defendants Agresta and Goldberg to the fact that Defendant Havel has failed to honor his own statement to Plaintiff that he has extended Week 5 Homework and Quiz for FIN 515. *Id.* Exhibit 7E.

190.    Plaintiff only received extensions for Weeks 5 & 6 module's outstanding coursework for FIN 515 only extensions (Exhibit 7E) for the extenuating circumstances. Plaintiff completed them with full scores thereby making Plaintiff's final grade "C." There still remains

Weeks 1- 4 module's outstanding quizzes and homework. *See* Exhibit 12C for final Canvas Gradebook record of scores with course syllabus.

191.     Around October 31, 2019, Plaintiff noticed that defendant Havel has posted his final grade for the FIN 515 class and recorded by the University's Registrar as "FAIL" whereas Plaintiff's grade was not a failing grade at the time Defendant Agresta took over the matter from Defendant Havel to work on the discrepancies. Defendant Agresta later submitted a change of grade for Plaintiff to change the Fail grade to "C."

192.     Without explanation, by email dated October 29, 2019, 3:28 PM, defendant Agresta notified Plaintiff about new student conduct code violation charges claiming that Plaintiff has violated Article III of the student conduct code. Upon further inquiry, defendant Agresta explained that it is related to Plaintiff's correspondence with defendant Havel and reaching out to University administrators such as defendant Goldberg (i.e. emails within Exhibit 7D).

193.     Plaintiff asserted to Defendant Agresta that no part of his correspondence with defendants Goldberg and Havel constitutes misconduct.

194.     Defendant Agresta scheduled a student code of conduct disciplinary hearing on November 14, 2019 (Exhibit 7F).

195.     By email dated October 30, 2019, 4:59 PM (Exhibit 7F, p.10), Plaintiff asked defendant Agresta to recuse himself because of his biases from previous June 2019 disciplinary proceedings and assign the new November 2019 disciplinary proceedings to the New Jersey student conduct code administrators.

196.     Defendant Agresta is only authorized by the Handbook as designated code administrator for Pennsylvania Students, not New Jersey students, or online students. *See* Pages

*Plaintiff's Complaint.*

59-60 of the Student Handbook Code of Conduct listing "Moustafa Ahmed" as the Code Administrator for New Jersey.

197. DeVry Student Handbook, Page 62, also declares that online students are assigned to Illinois Student Code Administrators. Defendant Agresta is not listed as code administrator for Illinois. He is listed as code administrator for Pennsylvania alone. *See* Page 61 of the Student Handbook.

198. Defendant Agresta declined to recuse himself from the November 14, 2019 disciplinary proceedings, despite procedural objections on the record.

199. DeVry Student Handbook designates Student Code Administrators by States, not by region.

200. During the November 2019 student conduct proceedings, Plaintiff raised procedural objections on the record (*see* Exhibit 14A) that Defendant Agresta should recuse himself from the proceedings because he is not the designated Code of Conduct Administrator for Online Students and New Jersey campus students such as Plaintiff Livingstone.

201. Defendant Agresta is designated as Pennsylvania Student Code Administrator, not New Jersey.

202. Plaintiff believes and therefore avers that motivated by bad-faith, retaliatory animus, and racial hatred against Plaintiff, Agresta declined to recuse himself; thereby, forcing himself to handle the proceedings against the authority of the contractual provisions in the Code/Handbook.

203. Plaintiff asked Defendant Agresta to recuse the northeast group hearing Panelists (i.e. Defendants Russell, D'Souza, and Schmitz) and empanel a new one because of they are the same panelists decision makers from prior June 2019 conduct hearing becoming the November

*Plaintiff's Complaint.*

2019 conduct hearing panelists too (*see* Exhibit 14A) to avoid the risk of systemic bias and prejudice stemming from familiarity with last June 2019's conduct hearing proceedings causing the November 2019 hearing to be unfair with partiality. Agresta did not recuse the Panelists either.

*204.* Around November 13, 2019, Plaintiff sent a Memorandum to the Panelists that addressing the allegations (Exhibit 14B).

*205.* On November 14, 2019, the November 2019 conduct hearing occurred by telephone, internet, or WebEx. It was not an in-person hearing. It was a virtual hearing. Plaintiff attended without an Attorney or an Adviser.

*206.* During the November 14, 2019 conduct hearing, Plaintiff objected to the absence of the complainants or witnesses (i.e. Defendants Havel, Kohara, and Mofidi) because Plaintiff has credibility questions about their statements of accusation. Agresta declined to sustain the objection and he proceeded with the November 2019 hearing.

*207.* During the November 14, 2019 hearing, Defendant Agresta mischaracterized Plaintiff's written email assertions to defendant Havel reporting racial and disability discrimination to the OCR as "intimidating and threatening" under Article III of the student conduct code.

*208.* During the November 14, 2019 hearing, the hearing panelists (defendants Russell, D'Souza, and Schmitz) ignored Plaintiff's discrimination claims when the Panelists failed to refer Plaintiff to file a discrimination complaint within the University's anti-discrimination office or encourage Plaintiff to file a discrimination complaint elsewhere such as the OCR to enforce the anti-discrimination policy of the University and Civil Rights Act.

*Plaintiff's Complaint.*

209.    The hearing Panelists failed to act against Plaintiff's discrimination allegations thereby condoning, encouraging, and fomenting racial and disability discrimination in the University and retaliating against Plaintiff with adverse disciplinary sanctions.

210.    On November 15, 2019, Plaintiff received adverse disciplinary sanctions of probation, suspension, and limited order contained in the attached Exhibit 14C from Defendant Agresta.

211.    Plaintiff believes and therefore aver that all findings are pretextual excuses to retaliate against Plaintiff or to cause Plaintiff from suing the University and Defendants for asserting his right to complain against Discrimination to a federal anti-discrimination agency such as the OCR.

212.    Plaintiff denies the November 15 conduct finding in Exhibit 14C that he falsified information during the November 14 conduct hearing itself regarding MATH 533  as the remaining class because the November 14 conduct hearing was a virtual hearing via phone and WebEx with intermittent technical signal fluctuations on the lines and background noise. So, either Plaintiff did not hear, or he *clearly* did not hear some questions about his remaining classes, regarding MATH 533, for example, on the other end of his line.

213.    Plaintiff has objected to using virtual technology forum for such due process hearings. Plaintiff believes and therefore avers that this finding shows that Defendant Agresta was relentlessly looking for anything at all he can use as a pretextual excuse to retaliate against Plaintiff.

214.    Plaintiff denied the November 15 conduct finding in Exhibit 14C that he falsified information during the November 14 conduct hearing regarding MATH 533 as a remaining class for him to graduate because in Plaintiff's email-Memorandum (Exhibit 14B) a day before that

*Plaintiff's Complaint.*

November 14 hearing, Plaintiff already gave the panel his graduation degree audit reports (Ex.9A) showing MATH 533 on it as a remaining class.

215.  During the November 14, 2019 hearing, the Panelists stopped Plaintiff from going through the documents and presenting all his defense orally.

216.  The Panelists stated that they have reviewed all the documents Plaintiff sent them and so there is no need for Plaintiff to go through them again. Plaintiff was therefore confused when asked about his remaining classes to graduate whereas the Panelists already had Exhibit 9A showing the disputed remaining class.

217.  The Panelists claimed that they already reviewed everything and Plaintiff need not go through them again, there was no need to ask Plaintiff a question about his remaining classes that was already answered with Exhibit 9A. So, Plaintiff was confused, tricked, and trapped by the panelists during the hearing; thereby, making the November 14 hearing unfair with bad-faith from the panelists too.

218.  There still remains unsettled legal issues about MATH 533 class, which Plaintiff brings before this Court within this Complaint.

219.  Plaintiff denies the November 15, 2019 conduct finding in Exhibit 14C that he falsified information in his email to DeVry IT help desk.

220.  During the November 14 hearing, after Plaintiff presented his defense with clear and convincing evidence, the panelists could not question Plaintiff's rebuttal against that allegation at all given the exculpatory evidential emails in Exhibit 12E Plaintiff presented.

221.  Defendant Havel stated in his emails to Plaintiff that he has "extended all assignments" in FIN 515 class and he further directed Plaintiff to tell DeVry Canvas IT Helpdesk to tell Cengage "to mirror the extensions."

*Plaintiff's Complaint.*

222.    In the November 15 sanctions notice, defendant Agresta truncated Plaintiff's emails out of context and cited it in the sanction notice (Ex.14C) as a finding of misconduct.

223.    Plaintiff avers that the University denied him a fair hearing because unquestioned emails during the hearing were later used in surprise against him in the sanction notice of findings.

224.    Plaintiff denies the November 15, 2019 conduct finding in Exhibit 14C claiming that he did not follow proper communication channels when addressing concerns about FIN 515 class with Defendant Goldberg because defendant Goldberg never said Plaintiff has violated the student conduct code by reaching out to her. Indeed, the evidential email October 26, 2019 at 10:58 AM, supra, from defendant Goldberg to Plaintiff shows that defendant Goldberg rather took issue with the fact that Plaintiff delayed reaching out to her.

225.    Plaintiff has now sued defendant Goldberg because she is the overall Keller National Dean of the Keller and she did nothing to stop defendant Agresta from taking adverse action against Plaintiff for reaching out to defendant Goldberg. If it was misconduct for a student to reach out to their dean, then defendant Goldberg should have said so in her October 26, 2019 email.

226.    Plaintiff has now sued defendant Goldberg because no matriculated student should be suspended for reaching out to their dean.

227.    Plaintiff has now sued defendant Goldberg because defendant Goldberg knew that defendant Agresta was going to take adverse disciplinary action against Plaintiff for reaching out to her regarding FIN 515. Yet, Defendant Goldberg did not stop Agresta despite the fact that defendant Goldberg welcomed plaintiff reaching out to her.

*Plaintiff's Complaint.*

228.    During the November 14, 2019 hearing, Plaintiff addressed the allegation that he did not follow proper channels of communication by referring to attached Exhibit 7D, which demonstrates that Plaintiff followed proper channels of communications outlined in Exhibit 5E. However, the actors within that same channel of communication, such as defendant Arissa Bryant, failed to perform their duty to connect Plaintiff to the appropriate complaint administrator at the time.

229.    During the November 14, 2019 hearing, none of the Panelists raised any questions about "channel of communication" at all after Plaintiff presented his defense with clear and convincing evidence.

230.    Plaintiff appealed the November 2019 disciplinary sanctions to defendant Shikowitz. Without any explanation, defendant Shikowitz denied Plaintiff's appeal.

231.    In May-June 2020 session, Plaintiff returned to the University and completed the online graduate class course called innovation in technology ("MIS 540") with Dr. Peter Newman. Plaintiff earned a final grade straight "A" in the MIS 540 class.

232.    In July 2020 -August 2020 session, Plaintiff enrolled and completed the class called Business Planning Seminar (MGMT 600) class at the University with Defendant Dr. Wendy Finlay. The final grade posted is "B." This MGMT 600 class did not accommodate Plaintiff's ADA extensions because Weeks 3-8 modules of the class assignments required group work.

233.    The MGMT 600 class was simulation class that uses a software called CAPSIM/CAPSTONE.

*Plaintiff's Complaint.*

234.    The University and the Registrar failed to disclose within the academic catalogs and within the title of the class that MGMT 600 is a simulation class, not a typical class where students could write a business plan.

235.    The MGMT 600 class required all students to work in groups. So, Plaintiff's ADA accommodations was not used to extend all assignments by one week. Plaintiff was part of the "Chester group" of students in the MGMT 600 class.

236.    Plaintiff enrolled in the graduate online class called Managing Organizational Change ("HRM 587") for the current September 2020-October 2020 session as part of academic requirements for his second-degree track in Master of Public Administration ("MPA") degree. Most classes that are already completed under the MBA track also count towards the MPA track.

237.    This September 2020, the University administratively dropped Plaintiff's HRM 587 class and placed Plaintiff on interim suspension, scheduled and provided continuance if student disciplinary proceedings conduct on grounds that Plaintiff *inter alia* sent a court-filed cease-and desist notice to defendant Agresta and copied the University's in-house General Legal Counsel/Vice President on the email notifying defendant Agresta (*see* generally Exhibit 25). The University also claims that Plaintiff sent emails to defendant Finlay where Plaintiff talks about protests. *Id.* The University also claims that Plaintiff's emails to defendant Finlay are threatening to the extent that Plaintiff cautioned against mass shootings by referring a 2010 Connecticut mass shooting over perceptions of racial discrimination. *Id*.

238.    Plaintiff avers that these September 2020 allegations are frivolous and malicious.

239.    Plaintiff has completed all his MBA degree classes. There still remains legal disputes about the MATH 533 class so that Plaintiff can graduate for his MBA degree.

*Plaintiff's Complaint.*

## COUNT ONE

### RETALIATION & DISCRIMINATION UNDER
### AMERICANS WITH DISABILTIES ACT ("ADA");
### SECTION 504 OF THE REHABILITATION ACT OF 1973

**(Michael O. Livingstone v. Defendants  DeVry, Keller, Adtalem)**

*240.* Plaintiff incorporates herein by reference each and every one of the allegations contained in the preceding paragraphs as though fully set forth at length herein.

*241.* The conduct of Defendants, as set forth hereinabove, constitutes conduct under color of law which deprived Plaintiff's rights.

*242.* In 2018, Plaintiff was advised by the University's Faculty members, especially Dr. Mary Welsh and Professor Kavouras (Exhibit 4A) to seek ADA accommodations if Plaintiff's medical conditions persist.

*243.* The University's published contractual Catalogs and Student Handbook urges eligible students to obtain ADA accommodations by contacting the University's designated ADA Officer to start ADA accommodation application processing. *See* Page 10 of DeVry 2018-2019 Student Handbook. *See* also Keller Catalog.

*244.* Course instructors are not trained to handle and process medical information for ADA  accommodations.

*245.* Both DeVry University and the ADA statute does not say students with disability should contact their course instructors for the Professors themselves to process ADA accommodations for them.

*246.* In August 2018, Plaintiff obtained ADA accommodations from DeVry University and its Keller Graduate School of Management and it was processed and granted by Ms.

*Plaintiff's Complaint.*

Adrienne Farmby -Taylor who is one of the designated ADA Officers at Defendants DeVry University and its Keller Graduate School of Management.

247.    In April 2019, Plaintiff obtained ADA accommodations modifications from the University's ADA officer and it was fully processed with medical signatures and verifications and granted by Ms. Adrienne Taylor – a designated ADA Officer at DeVry University.

248.    In June 2019, Defendant Agresta subjected Plaintiff to adverse disciplinary proceedings claiming that Plaintiff reached beyond his March 2019 ACCT 504 course instructor to the ADA Officer to obtain the April 2019 ADA accommodations.

249.    In June 2019, Defendant Agresta summoned, sanctioned, and subjected Plaintiff to adverse disciplinary action *inter alia* on grounds that Plaintiff has past incidents of character reference of reaching out to University Administrators "to get his way" which includes Plaintiff reaching out to the University's ADA officer for ADA accommodation processing (Exhibit1A, page 2).

250.    Plaintiff  avers that it is not "Plaintiff's way," but rather, it is "the Law's way" for humm to  reach out to the ADA  officer to process ADA  accommodations because the federal ADA statute and the University required Plaintiff to reach the ADA officer for ADA accommodation.

251.    As evidence against Plaintiff, defendant Agresta attached to the June 2019 conduct hearing packet zip file (Exhibit 1A, p.1)  Exhibits 3A, 3B, 3C, 3D, 3G where "ADA" is specifically mentioned in Plaintiff's emails  that were sent or received from the University's ADA Officer.

*Plaintiff's Complaint.*

252.    Defendant Agresta specifically included in the Zip File attached to the June 2019 conduct hearing packet Plaintiff's pertinent email correspondences reaching out to University's ADA Officer for ADA accommodations.

253.    Plaintiff believes and therefore avers that Defendant Agresta was motivated with actual malice and animosity to intentionally retaliate and discriminate against Plaintiff for reaching out to the designated ADA Officer to process ADA Accommodations because Plaintiff's June 14, 2018 emails issued rebuttals to Defendant Agresta that Plaintiff has a right to reach out to the University's ADA officer to obtain ADA accommodations without being subjected to adversarial disciplinary proceedings (Exhibit 2B). Yet, Defendant Agresta failed to amend the June 2019 hearing packet to eliminate all references to ADA processing.

254.    Plaintiff avers that it was not a mistake on defendant Agresta's part because Agresta ignored Plaintiff's cautionary rebuttals within Exhibit 2B urging him to amend the June 2019 conduct packet by eliminating all ADA references.

255.    Defendant Agresta did not amend the June 2019 conduct hearing packet notices and its attachments to eliminate ADA correspondence matters therein. Defendant Agresta proceeded to impose adverse disciplinary sanctions warning against Plaintiff to tarnish Plaintiff's record against his liberty interests in his clean records.

256.    To the extent that Plaintiff formally appealed the June 2019 disciplinary sanctions to defendant Shikowitz (Exhibit 6A) wherein Plaintiff reiterated that he cannot be subjected to disciplinary action for properly reaching out to the University's ADA officer to process ADA accommodations, defendant Shikowitz and the University also condoned this intentional discrimination and retaliation under the ADA statute and Section 504.

*Plaintiff's Complaint.*

257.    Defendants individually and/or collectively, and/or intentionally retaliated against Plaintiff by summoning Plaintiff for June 2019 disciplinary hearing because Plaintiff reached out beyond his March 2019 session ACCT 504 course instructor (Dr. Goodman) to the University's ADA officer for ADA accommodations processing.

258.    As a direct and proximate cause of Defendants' unlawful conduct as described herein, Plaintiff has suffered, and continues to suffer, irreparable injury which cannot be fully compensated by an award of monetary damages for which Plaintiff is entitled to preliminary and permanent injunctive relief order by this Court to vacate and expunge the June 2019 disciplinary record entirely, as well as damages in an amount to be determined by the Court and reasonable costs of this lawsuit, including reasonable Attorneys' fees.

259.    As a further direct and proximate result of Defendants' unlawful conduct as described herein, Plaintiff Michael O. Livingstone has been caused and will continue indefinitely into the future to be caused severe mental anguish, anxiety, stress, and emotional and/or psychological distress, all with associated physical symptoms.

260.    WHEREFORE, because of the alleged intentional discrimination and malicious intent herein, pursuant to Section 504 of the Rehabilitation Act of 1973 damages, Plaintiff Michael O. Livingstone demands judgment against Defendants Adtalem, DeVry University, and Keller Graduate School of Management jointly, severally and/or severally for compensatory, exemplary, and punitive damages in an amount in excess of $10 million exclusive of interest and costs to deter.

261.    WHEREFORE, consistent with damages clause under the ADA statute, Plaintiff demands preliminary, declaratory, and permanent injunctive relief to vacate and expunge the adverse June 2019 disciplinary record and sanctions from Plaintiff's files at the University

*Plaintiff's Complaint.*

without making references to it; and such other and further relief as the Court may deem just and equitable; and enjoin defendants from further retaliations against Plaintiff regarding his ADA accommodations.

## COUNT TWO

### DISCRIMINATION UNDER
### AMERICANS WITH DISABILTIES ACT ("ADA");
### Section 504 of the Rehabilitation Act of 1973

### (Michael O. Livingstone v. DeVry, Keller, Adtalem)

*262.* Plaintiff incorporates herein by reference each and every one of the allegations contained in the preceding paragraphs as though fully set forth at length herein.

*263.* The conduct of defendants, as set forth hereinabove, constitutes conduct under color of law which deprived Plaintiff's rights.

*264.* At all times during the September 2019 session FIN 515 class, Defendant Havel was aware that Plaintiff is an American with a Disability (Exhibits 12A; 4D).

*265.* As a matriculated graduate student enrolled in the University's FIN 515 class, Plaintiff had a right under the University's contractual published Handbook and Catalogs (Exhibit 11B) to request for Incomplete grade to allow him some time to complete outstanding coursework due to extenuating circumstances that are not ADA disability related at all, such as loss of housing and other non-ADA medical issues, to allow Plaintiff to complete outstanding Homework and Quizzes for the FIN 515 class.

*266.* By email dated October 22, 2019 at 11:37 AM, Plaintiff submitted a timely request with documentation of extenuating circumstances in support of his request for

*Plaintiff's Complaint.*

Incomplete grade for FIN 515 class to defendant Havel and the University Registrar before FIN 515 class ended (Exhibits 6G; 7D)

267.     Without any explanation in an email dated on October 22, 2019 at 5:36 PM, Defendant Havel refused to grant Plaintiff's request for Incomplete grade citing arbitrary reasons that Plaintiff is "not qualified" for the Incomplete grade (Exhibit 6G) notwithstanding the fact that ADA students are equally qualified to seek Incomplete grades.

268.     To the extent that Defendants might claim that Plaintiff was not qualified to receive Incomplete grade because of Plaintiff's scores in FIN 515, whereas a passing score is necessary to receive incomplete grade for remaining coursework, this should be construed as a pretextual excuse to discriminate under ADA because Plaintiff's final score in FIN 515 is a passing score grade "C" (*see* also Exhibit 12C).

269.     To the extent that Defendant Havel might claim that he denied Plaintiff's incomplete grade request on grounds that he already applied Plaintiff's ADA Accommodation extensions to the weekly assignments and so he is not required to go beyond those ADA accommodation extensions, Plaintiff avers that is a pretextual excuse to discriminate under the ADA because Plaintiff clarified that he is not seeking additional ADA extensions at all and his ADA status should not be used to discriminate his request for extension or incomplete grade like every other student might get extensions of time (*see* email dated October 22, 2019 at 11:37 AM at point No. 5, i.e. Ex. 6G, page 2). Plaintiff clarified that his loss of housing is not ADA matter. His medical condition is not ADA. Not all extenuating circumstances or medical issues are disability within the meaning of ADA statute.

*Plaintiff's Complaint.*

270.    The University's contractual 2019-2020 Academic Catalog makes the following provision for incomplete grades for *all* students with regardless of ADA accommodation or no ADA accommodations, for example (Exhibit 11B):

> …Incompletes, designators of I, are granted in exceptional situations only, such as when illness or work-related travel is documented and when substantial course requirements have already been completed. Students must submit a Request for Course Incomplete form and obtain approval from the professor and the appropriate academic administrator prior to the grade roster deadline in order for an incomplete to be granted….

*See*, Page 99 of Keller Catalog https://www.devry.edu/d/Keller_Catalog.pdf

271.    Just as any student can get Incomplete grade based upon non-disability related extenuating circumstances such work –travel or medical issues, students with disability should equally be able to get Incomplete grades for non-disability related extenuating circumstances.

272.    Plaintiff asserted that he is not seeking ADA extensions or Incomplete grade based on ADA, but rather, Plaintiff is seeking extensions or incomplete grade based on normal extenuating circumstances every other student can seek.

273.    Plaintiff emphasized that just because he has ADA accommodation extensions does not mean he cannot seek other extensions or Incomplete grade based upon extenuating circumstances that can happen to every other student such as loss of housing or other non-ADA medical issues.

274.    Plaintiff avers that just as any student can seek incomplete grade for work travel, students with ADA accommodation notices like him can also seek incomplete grade for work travel or other extenuating circumstances such as loss of housing or medical issues.

*Plaintiff's Complaint.*

275.     Defendant Havel used Plaintiff's disability against him when defendant Havel stated that he is not required to go beyond Plaintiff's ADA accommodation extensions to give Plaintiff any other extension and incomplete grade any other student can get.

276.     Plaintiff avers that as a pretextual excuse to discriminate against his disability, in denying the Incomplete grade and extensions, Defendant Havel claimed that Plaintiff's Weeks 1-4 outstanding weekly Homework and Quizzes in FIN 515 class is long overdue for him to extend them and/or assign Incomplete grade. The class was not yet over. Hence, nothing was long overdue.

277.     Inasmuch as Plaintiff requested for non-ADA extensions and Incomplete grade while FIN 515 class was still ongoing, Plaintiff's request was not long overdue and the Weeks 1-4 outstanding coursework was not overdue.

278.     Even after a class is over, the University could still receive and grade outstanding coursework. (*see* example Exhibit 12B.2).

279.     Plaintiff avers that it was a pretextual excuse when Defendant Havel declined to grant Plaintiff request for extensions and/ or Incomplete grade on grounds that he never knew Plaintiff was dealing with extenuating circumstances until near the end of FIN 515 class. This is not true because Plaintiff called Defendant Havel and left him a voice-message. Defendant Havel never returned Plaintiff's phone call unlike other Keller Professors do. Moreover, by email dated, September 30, 2019, 1:52 PM (Exhibit 7C), one of DeVry University's Student Central Managers, Mr. Daniel McMahon, stated that even if Plaintiff was unable to reach out to his Professor already, the University would be happy to work with Plaintiff on a plan to be successful in the FIN 515 class.

*Plaintiff's Complaint.*

280.    Plaintiff avers that Defendants discriminated him under the ADA statute by using his preexisting ADA accommodation extension (Ex.4D) as grounds to deny him other non-ADA extensions and incomplete grade despite documented extenuating circumstances because just as non- ADA students can get non-ADA extensions and incomplete grades to complete their coursework based on extenuating circumstances, students with disability should also be able to get non-ADA extensions or incomplete grades with documented extenuating circumstances to complete their coursework.

281.    The record shows that defendant Havel granted extensions to the entire members of FIN 515 class without ADA accommodations or otherwise even though those similarly-situated students never requested for extensions. *See* Exhibit 12E for Canvas announcements from Defendant Havel dated October 28, 2019 and October 30, 2019.

282.    Plaintiff avers that Defendant Havel was motivated by bad-faith, ill-will, and actual malice against Plaintiff when he denied extensions to Plaintiff and granted other similarly situated students extensions for which those similarly-situated students never requested.

283.    As a direct and proximate result of Defendants' unlawful conduct as described herein, Plaintiff Michael O. Livingstone has suffered and continues to suffer irreparable injury and humiliation about his disability which cannot be fully compensated by an award of monetary damages for which Plaintiff is entitled to preliminary and permanent injunctive relief from this Court to enjoin defendants to re-open the remaining Weeks 1-4 Homework and Quizzes for FIN 515 class in both Canvas and Cengage systems for Plaintiff to complete them within 1-2 Weeks of the Court's Order and change Plaintiff's final grade for FIN 515 class; as well as damages in an amount to be determined by the Court and reasonable costs of bringing this lawsuit.

*Plaintiff's Complaint.*

284.    WHEREFORE, in accordance to the damages clauses of Section 504 of the
Rehabilitation Act, Plaintiff demands exemplary, compensatory, and punitive damages in excess
of $10 million exclusive of interest and costs; preliminary and permanent injunctive relief and
award of reasonable Attorneys' fees, costs and other costs and disbursements in this action; and
such other and further relief as the Court may deem just and equitable.

285.    WHEREFORE, pursuant to the damages clause of the ADA Statute, Plaintiff
Michael O. Livingstone demands preliminary and permanent injunctive relief against Defendants
-- Adtalem, DeVry University and its Keller Graduate School of Management jointly, severally
and/or severally, for declaratory, preliminary, and permanent injunctive relief to Order the
University to unlock the remaining weekly Modules 1-4 outstanding Homework and Quizzes in
both Canvas and Cengage for Plaintiff to do them within November -December 2019, change
Plaintiff's FIN 515 grade and supply a copy of Plaintiff's academic transcript reflecting the
change of grade to the Court.


## COUNT THREE—-NEGLIGENCE OF DUTY &

## COUNT FOUR— NEGLIGENT FAILURE TO TRAIN

### (Michael O. Livingstone v. Milan Havel; DeVry University; Keller Graduate School of Management; Adtalem Education Group Inc.)


286.    Plaintiff incorporates herein by reference each and every one of the allegations
contained in the preceding paragraphs as though fully set forth at length herein.

287.    The conduct of Defendants, as set forth hereinabove, constitutes conduct under
color of Law which deprived Plaintiff's rights.

*Plaintiff's Complaint.*

288.    Defendants DeVry University, Keller Graduate School of Management, and Adtalem Education Group Inc., designed the online FIN 515 class using DeVry's Canvas online portal and the Cengage textbook Publisher's software system synchronization for students to do weekly Homework and Quizzes.

289.    Defendants DeVry University, Keller Graduate School of Management, and Adtalem Education Group Inc., recruited, employed, and hired Defendant Havel as course instructor to teach the FIN 515 class in September 2019 session.

290.    Plaintiff paid tuition and fees to be taught the course material in FIN 515 from the expertise of a trained Teacher.

291.    Defendant Havel failed to perform paid teaching services to Plaintiff because throughout the accelerated eight weekly modules of the class, not once did Defendant Havel prepare and post a PowerPoint recorded lecture or *WebEx* recorded conference to explain or teach the concepts of the FIN 515 course material to students unlike other equally employed course instructors at the University do in their online classes.

292.    To the extent that defendants may argue that Defendant Havel participated in weekly discussion activities of the class, mere discussion postings do not constitute "tuition."

293.    Plaintiff avers that weekly written discussion postings (similar to Facebook postings) about the FIN 515 course material with amateur classmates cannot replace rendition of paid "tuition" from the expertise of the course instructor himself.

294.    Defendants failed to codify and designate the FIN 515 class within their course registration systems that FIN 515 class is an "independent study" class.

295.    Defendant Havel failed to perform his paid tuition duties because he never responded to Plaintiff's request for actual academic feedback as to why Plaintiff's answer to a

*Plaintiff's Complaint.*

question on the Week 7 Homework was erroneous; thereby, failing to perform his paid teaching duty at the detriment of Plaintiff's paid tuition money. *See* Plaintiff's email dated Oct 23, 2019, 11:05 AM (Exhibit 6H at page 2) requesting to feedback:

> …Week 7 Homework is completed and submitted after three consecutive sleepless nights of working on it. One question was graded wrong by the system. I had someone review it and they also think the system graded it wrong although it is correct. Please take a look at that question in Week 7 Homework and provide me academic feedback….

It is the duty of the course instructor to provide academic feedback and assessment for students to learn from academic mistakes pertaining to the FIN 515 class for improvement.

296. By ignoring and failing to address Plaintiff's academic question in the October 23 email, Defendant Havel did not perform his paid teaching duty to Plaintiff Livingstone.

297. Plaintiff avers that the University failed to train Defendant Havel about making extensions in Cengage in conjunction with Canvas when the University hired and recruited defendant Havel as the course instructor for September 2019 FIN 515 class (Exhibit 12E).

298. Defendant Havel claims that he does not know how to perform extensions for Homework and Quizzes in the Cengage system and transport scores from Cengage to Canvas grade book. Defendant Havel also claims he only works for DeVry's canvas and so he directed Plaintiff to rather contact Cengage and DeVry IT help desk.

299. Defendant Havel knew or he should have been trained about these systems that are used to teach the FIN 515 Class.

300. By direct and proximate cause of the negligent failure of Defendant Havel to perform his paid teaching duty to actually teach the course material and to explain the financial theory concepts in the FIN 515 Class, Plaintiff had to spend more time on the course material

without any proper pedagogic guidance, which negatively-affected Plaintiff's academic performance.

*301.* Both DeVry IT help desk and Cengage support center stated in emails and telephone to Plaintiff that it is the responsibility of Defendant Havel as the Course instructor to contact them to do changes on Canvas and Cengage (*see* Exhibits 6E and 6F).

*302.* When Defendant Agresta later took over the situation to solve the problem and he worked with Canvas to transport Weeks 5 & 8 scores from Cengage into Canvas gradebook (Exhibit 7E), he communicated directly with Cengage without telling Plaintiff to contact Cengage for anything.

*303.* As the course instructor for FIN 515, Defendant Havel should have been trained by the University or he *should have known* how to work with both Cengage and Canvas and communicate directly with Cengage instead of telling student Plaintiff Michael Livingstone to perform that duty.

*304.* By direct and proximate cause of the negligent failure of Defendant Havel to directly contact Cengage Support and DeVry's IT Help Desk at the time to address apparent technical glitches between the two systems for FIN 515 class, this resulted in Plaintiff sending more emails and strings of emails to find solutions from other University administrators, which in turn resulted in the University summoning and seizing Plaintiff for disciplinary hearing (Exhibits 7F, 7D; 8A-8M; 14C), and which has in turn wasted Plaintiff's time and distracted his academic focus.

*305.* WHEREFORE, Plaintiff Michael O. Livingstone demands judgment against Defendants Adtalem, DeVry University, Keller Graduate School of Management, jointly, severally and/or severally, for compensatory and punitive damages in an amount in excess of

*Plaintiff's Complaint.*

$5million exclusive of interest and costs; preliminary, declaratory, and permanent injunctive relief order to vacate and expunge the November 2019 disciplinary record and sanctions without making references to it; an award of reasonable Attorneys' fees, costs and other costs and disbursements in this action; and such other and further relief as the Court may deem just and equitable.

## COUNT FIVE

### BREACH OF THE DUTY OF GOOD-FAITH & FAIR-DEALING; NEGLIGENCE; GROSS NEGLIGENCE

**(Michael O. Livingstone v. Paul Kohara; Mack Mofidi, Milan Havel; DeVry University; Keller Graduate School of Management; Adtalem Education Group Inc.)**

*306.*     Plaintiff incorporates herein by reference each and every one of the allegations contained in the preceding paragraphs as though fully set forth at length herein.

*307.*     The conduct of Defendants, as set forth hereinabove, constitutes conduct under color of Law which deprived Plaintiff's rights.

*308.*      Mr. James Bartholomew, DeVry University's 2019 then-President, stated in his opening Welcome Message of the published contractual Keller Graduate School of Management Academic Catalog [11] that the University's staff and faculty will act in Good Faith and Fair Dealing to support students to be successful students at DeVry when he stated this:

> Dear Student, Welcome to the DeVry University family, and congratulations on taking this important step toward realizing your educational goals. Know that our talented faculty and committed student support staff will be there for you every step of the way. It is our goal to help you become a successful student, and ultimately, a successful graduate of DeVry University….

---

[11]     See, https://www.devry.edu/content/dam/devry_edu/d/US_Catalog.pdf at Page 5

*Plaintiff's Complaint.*

309.    In 2019, after attempts to resolve technical and academic issues directly with
Defendant Havel failed, Plaintiff contacted DeVry Student Support center for faculty
management to address the issues.

310.    Whereupon, the University created the Case No.09351347 for Plaintiff at DeVry.

311.    Notwithstanding the University President's cataloged message, *supra,* members
of the University's Faculty Management (Defendants Mofidi and Kohara) failed to reach student
Plaintiff Michael Livingstone in the spirit of good-faith and fair-dealing to ascertain the scope of
things, to assess Plaintiff's problems with the FIN 515 class, and to provide solutions or
directions

312.    The record within the November 2019 student conduct hearing packet (Exhibits
8A-8M) at Exhibit 8G suggests that defendants Mofidi and Kohara conspired with defendant
Havel to injure Plaintiff by forwarding Plaintiff's issue and emails to Defendant Agresta, instead
of reaching out to student Plaintiff Michael Livingstone to assess the problem and offer any
resolutions.

313.    In the spirit of the University President's message, *supra,* other DeVry University
course instructors, administrative faculty members, and Deans in the past acted in good faith to
address Plaintiff's concerns about a class or pointed Plaintiff in the right direction under
University policies.

314.    When Plaintiff needed extensions back in July 2018 MGMT 530 class from Dr.
Welsh, for example, Dr. Welsh connected Plaintiff to her Faculty Manager, Professor John
Kavouras. Professor Kavouras then reached out to Plaintiff at the time and advised Plaintiff to
apply for ADA accommodations if his medical conditions persist. (*See* Exhibit 4B).

*Plaintiff's Complaint.*

315.     Similarly, when Plaintiff encountered some academic problems with Dr.
Goodman during the ACCT 504 March 2019 session, Dr. Goodman connected Plaintiff to her
faculty chairperson, Dr. MacCatherine, who then handled the technical glitches at the time and
asked Plaintiff to file a grade appeal at the time for him to review Plaintiff's other concerns. (*See*
Exhibit 3C, Page 1).

316.     Conversely, in November 2019, Defendant Havel and Assistant faculty
management deans (defendants Kohara and Mofidi) never reached out in good –faith to Plaintiff
to see the scope of things and deal with the matter. Instead, they ignored Plaintiff and forwarded
Plaintiff's emails to conspire with Defendant Agresta to take adverse action
against Plaintiff merely for voicing his concerns.

317.     By direct and proximate cause of the negligent failure of Defendants Mofidi and
Kohara to respond to Plaintiff's emails and concerns about Dr. Havel at the time, this resulted in
Plaintiff sending more emails and strings of emails to find solutions from other administrators
including Plaintiff contacting defendant Keller's National Dean (Lenore Goldberg), for example.
(*See* also Ex. 8G at point No.4).

318.     As a further direct and proximate result the negligent failure of Defendants Mofidi
and Kohara to respond to Plaintiff's emails and concerns about Dr. Havel at the time, this caused
Plaintiff to look for his own complaint administrator (defendant Keller's National Dean, Lenore
Goldberg), which has led to adverse disciplinary sanctions on baseless grounds that Plaintiff
contacted a higher administrator without following proper communication channels (Exhibit
14C).

319.     As a further direct and proximate cause, this caused the University to be
summoning and seizing Plaintiff for adverse November 2019 disciplinary hearing (Exhibits 7F,

*Plaintiff's Complaint.*

7D; Exhibits 8A-8M), which has in turn wasted Plaintiff's time, stigmatized Plaintiff's record, and distracted his academic focus all to his detriment.

320.    WHEREFORE, Plaintiff Michael O. Livingstone demands judgment against all Defendants against Adtalem, DeVry University and its Keller Graduate School of Management, and Defendant Havel, jointly, severally and/or severally, for compensatory and punitive damages in an amount in excess of $1million exclusive of interest and costs; preliminary, declaratory, and permanent injunctive relief to vacate and expunge the November 2019 disciplinary proceedings /sanction; and an award of reasonable Attorneys' fees, costs and other costs and disbursements in this action; and such other and further relief as the Court may deem just and equitable.

## COUNT SIX

1. **DISPARATE TREATMENT UNDER ADA STATUTE ;**
2. **DISPARATE TREATMENT BASED ON NATIONAL ORIGIN AND/OR RACE UNDER CIVIL RIGHTS ACT OF 1964**

**(Michael O. Livingstone v. DeVry University;
Keller Graduate School of Management; Adtalem Education Group Inc.)**

321.    Plaintiff incorporates herein by reference each and every one of the allegations contained in the preceding paragraphs as though fully set forth at length herein.

322.    The conduct of Defendants, as set forth hereinabove, constitutes conduct under color of Law which deprived Plaintiff's rights.

323.    Plaintiff is a US Citizen.

324.     Plaintiff is a black male individual with origins from the Republic of Ghana, West Africa. Plaintiff speaks with an African accent.

*Plaintiff's Complaint.*

325.    Plaintiff requested for extensions from Defendant Havel to submit his outstanding coursework for Weeks 1-6 modules of FIN 515 class during September 2019 session due to documented extenuating circumstances.

326.    Defendant Havel declined to grant Plaintiff's request for extensions. After administrative interventions, the University ultimately allowed extension and opened the locked modules for only Weeks 5 & 6 module's assignments for Plaintiff to complete his Homework and Quizzes for those modules. (*See* Exhibit 7E).

327.    In a general announcement to the entire class, defendant Havel announced that he has extended all the assignments for the entire class to complete by end of the class on October 30, 2019. *See* Exhibit 12E for Canvas announcements from Defendant Havel dated October 28, 2019 and October 30, 2019. So, defendant Havel granted extensions to other similarly-situated students who never requested for the extension and who never produced any documentation of extenuating circumstances unlike Plaintiff Livingstone did.

328.    Plaintiff believes and therefore avers that motivated by prejudice and bad-faith against the fact that Plaintiff has ADA accommodations, Defendant Havel denied Plaintiff's non–ADA requests for extensions and he rather granted extensions to other able students – students in they FIN 515 class who did not even need extensions and students who never requested for those extensions at all.

329.    Plaintiff believes and therefore avers that motivated by prejudice and stereotypes against Plaintiff's race as a black man with indigenous accent from West Africa, defendant Havel treated Plaintiff differently, denied Plaintiff extensions, and he granted unsolicited extensions to other similarly-situated student classmates of FIN 515 class.

*Plaintiff's Complaint.*

330.     Specifically, on October 28-30, 2019, Defendant Havel announced that he has given extensions to other similarly-situated students in the FIN 515 Class to complete all assignments (Exhibit 12E, Pages 7 & 8) although the students of the class never requested for the extensions and they never provided any documentation of extenuating circumstances for the extensions unlike Plaintiff Livingstone who requested for extensions based on documented extenuating circumstances.

331.     As a direct and proximate result of Defendants' unlawful conduct as described herein, Plaintiff has suffered and continues to suffer grave mental anguish, humiliation to his national origin and race and disability, and loss of his enjoyment of life.

332.     As a further direct and proximate cause, Plaintiff has otherwise suffered in his feelings and peace of mind with irreparable injury which cannot be fully compensated by an award of monetary damages for which Plaintiff is entitled to preliminary and permanent injunctive relief from this Court to enjoin defendants to re-open the remaining Weeks 1-4 module Homework and Quizzes for FIN 515 class in both Canvas and Cengage systems for Plaintiff to complete them within 1-2 Weeks of the Court's Order and change Plaintiff's final grade for September 2019 session of the FIN 515 class.

333.     WHEREFORE, Plaintiff Michael O. Livingstone demands judgment against Defendants against Adtalem, DeVry University, Keller Graduate School of Management, jointly, severally and/or severally, for compensatory and punitive damages in an amount in excess of $5million exclusive of interest and costs; preliminary, declaratory, and permanent injunctive to enjoin the University to unlock the course modules and extend Weeks 1-4 Homework and Quizzes in both canvas and Cengage portals for Plaintiff to submit the outstanding work and change the FIN 515 grade; and an award of reasonable Attorneys' fees, costs and other costs and

*Plaintiff's Complaint.*

disbursements in this action; and such other and further relief as the Court may deem just and equitable.

## COUNT SEVEN

### NEGLIGENT MISREPRESENTATION;
### FALSE REPRESENTATION

**(Michael O. Livingstone v. Milan Havel; DeVry University; Keller Graduate School of Management; Adtalem Education Group Inc.)**

*334.* Plaintiff incorporates herein by reference each and every one of the allegations contained in the preceding paragraphs as though fully set forth at length herein.

*335.* The conduct of Defendants, as set forth hereinabove constitutes conduct under color of Law which deprived Plaintiff's rights.

*336.* In September 2019, Defendant Havel received Plaintiff's ADA accommodations notice and applied the 1.5X extensions to all of Plaintiff's Weekly Homework and Quizzes in both DeVry Canvas course portal and Cengage Publisher's software (Exhibits 12A; 4D) systems that FIN 515 class used.

*337.* Later in October 2019, the same Defendant Havel claimed that he does not know how to do extensions for the Homework and Quizzes in Cengage (*see* Exhibit 12E).

*338.* Given that Defendant Havel was able to perform the extensions in September 2019 in both Canvas and Cengage, the same Defendant Havel knew or should have known how to perform the extensions in both Cengage and Canvas in October 2019 as well.

*339.* Inasmuch as Defendant Havel was able to do the extensions in September 2019 in both Canvas and Cengage, the same Defendant Havel falsely, intentionally, and willfully

*Plaintiff's Complaint.*

misrepresented to Plaintiff that he does not know how to do the extensions in both Cengage and Canvas in October 2019 (Exhibit 12E).

340.    Defendant Havel also posted a Fail (F) final grade to the University Registrar for Plaintiff around October 30, 2019 although Plaintiff's final grade at the time in his grade book was not a Fail grade at all.

341.    Notwithstanding the fact that Defendant Agresta acted under the auspices of defendant Goldberg to change the Fail grade to "C" after addressing the plethora of perfunctory technical glitches, Defendant Havel cannot be exonerated for false misrepresentation by maliciously posting a bad (F) grade to the Registrar that was not consistent with the actual scores in the gradebook at the time of posting the grade.

342.    By direct and proximate cause of the alleged negligent misrepresentation of Defendant Havel, this resulted in Plaintiff sending more emails and strings of emails seeking solutions from University Administrators, wasting Plaintiff's time, and distracting his academic focus.

343.    As a further direct and proximate result of the unlawful behavior of Defendant Havel, the University rather summoned and seized Plaintiff for disciplinary action (Exhibits 7F; 7D; 8A-8M), which has in turn wasted Plaintiff's time, inflicted loss of enjoyment of life, stigmatized Plaintiff's record, and distracted Plaintiff's academic focus.

344.    WHEREFORE, Plaintiff Michael O. Livingstone demands judgment against all Defendants Adtalem, DeVry University, Keller Graduate School of Management, and Defendant Havel jointly, severally and/or severally, for compensatory and punitive damages in an amount in excess of $5million exclusive of interest and costs; preliminary, declaratory, and permanent

*Plaintiff's Complaint.*

injunctive relief; an award of reasonable Attorneys' fees, costs and other costs and disbursements in this action; and such other and further relief as the Court may deem just and equitable.

## COUNT EIGHT

### NEGLIGENT FAILURE TO ACT AGAINST RACIAL DISCRIMINATION UNDER TITLE VI of the CIVIL RIGHTS ACT of 1964, 42 U.S.C. § 2000d;
### &
### RETALIATION UNDER TITLE VI of the CIVIL RIGHTS ACT of 1964, 42 U.S.C. § 2000d

**(Michael O. Livingstone v. DeVry University; Keller; Adtalem.)**

*345.*   Plaintiff incorporates herein by reference each and every one of the allegations contained in the preceding paragraphs as though fully set forth at length herein.

*346.*   The conduct of Defendants, as set forth hereinabove constitutes conduct under Color of Law which deprived Plaintiff's rights.

*347.*   Plaintiff avers that the inaction and *repeated inaction* of Defendants against Plaintiff's discrimination complaints flies in the face of the anti-discrimination clause of the Title VI Civil Rights Act of 1964.

*348.*   DeVry University participates in the federal student financial aid programs, which also requires the University to comply with the Civil Rights Act of 1964 against racial Discrimination.

*349.*   The University has published anti-discrimination policy in its Catalogs and Handbooks.

*350.*   In an email dated October 23, 2019 at 11:05 AM to Defendant Havel, Plaintiff asserted his rights; Plaintiff alleged racial discrimination; and Plaintiff complained and copied

*Plaintiff's Complaint.*

the OCR on it (*see* Exhibit 6H). As a faculty member of the University, Defendant Havel failed

to refer Plaintiff to the University's anti-discrimination officer for regarding plaintiff's

allegations of discrimination

351. In a November 4, 2019 email from Defendant Agresta sending a disciplinary

Conduct hearing packet to Plaintiff, Defendant Agresta attached Plaintiff's October 23, 2019

email that was copied to the Office of Civil Rights (OCR) wherein Plaintiff alleged and reported

racial discrimination.

352. Defendant Agresta summoned and seized Plaintiff for a November 14, 2019

disciplinary hearing on grounds that Plaintiff has complained against discrimination to the OCR

(*see* Exhibit 8F contained with the hearing package zip file Exhibits 8A-8M).

353. In the November 4, 2019 conduct hearing packet, Defendant Agresta

characterized Plaintiff's October 23, 2019 email complaining about racial discrimination to the

OCR as "bullying behavior" for which Plaintiff should be disciplined (*see* conduct hearing

packet Exhibit 8B, Page 1 within exhibits 8A-8M).

354. Plaintiff avers that the OCR, EEOC, and the Civil Rights Act of 1964 requires all

Universities (especially Universities that participate in Federal Student Financial aid programs)

to have a designated anti-discrimination Officer at the University to receive, investigate, and act

upon allegations of discrimination under Civil Rights Act of 1964.

355. Instead of Defendants Havel and Agresta referring Plaintiff and Plaintiff's Oct 23,

2019 email alleging racial discrimination to the University's designated trained anti-

discrimination Officer for Investigation and action against Plaintiff's allegations of

discrimination, Defendant Havel and Defendant Agresta rather summoned Plaintiff for

*Plaintiff's Complaint.*

November 14, 2019 disciplinary action hearing and on November 15, 2019, Defendant Agresta imposed adverse disciplinary sanctions against Plaintiff (Ex.14C).

356.    Plaintiff avers that the proper thing defendants Agresta and Havel knew or should have known to do when a student alleges racial discrimination is to refer the student to the University's designated anti-discrimination officer, not refer the student for disciplinary action.

357.    Defendants, all of them, individually and/or collectively, intentionally retaliated against Plaintiff by summoning Plaintiff for November 14, 2019 disciplinary hearing and sanctioning him with adverse disciplinary action because Plaintiff complained and asserted his rights against racial discrimination to the OCR in Plaintiff's emails.

358.    Specifically, Plaintiff's email Exhibit (8F) dated October 23, 2019 at 8:015AM which is contained within the zip file of the November 2019 student conduct hearing packet (Exhibits 8A-8M) alleges racial and disability discrimination to the University and copies the external federal anti-discrimination agency (OCR) on it.

359.    Specifically, Plaintiff's email dated October 25, 2019 at 9:40PM to defendant Goldberg (Exhibit 8D, pp.26-30) that was included within the November 2019 conduct hearing packet (Exhibits 8A-8M) also alleges racial and disability discrimination.

360.    During the November 14, 2019 student conduct hearing, Defendant Agresta claimed before the Panelists that Plaintiff asserted his right to complain about discrimination to the OCR and so that is against Article III of the DeVry Student Code of Conduct as intimidation and threatening and bullying.

361.    Plaintiff avers that complaining report discrimination is not physical threat, intimidation, or bullying at all.

*Plaintiff's Complaint.*

*362.* During the November 14, 2019 hearing, Defendant Agresta mischaracterized the aforementioned written email assertions by Plaintiff to report racial and disability discrimination to the OCR "intimidating and threatening" against Article III of the student conduct code.

*363.* The hearing Panelists (i.e. defendants Russell, D'Souza, and Schmitz) also condoned, aided and abetted in discrimination, by virtue of their failure to act and refer Plaintiff to file a discrimination complaint within the University itself or encourage Plaintiff to file a discrimination complaint elsewhere such as the OCR.

*364.* The University, the Panelists, the Defendants--Agresta, Havel, Kohara, Mofidi – all them-- knew or *should have known* that they have a duty to discourage discrimination in the University and to act against discrimination. Yet, these defendants failed to refer Plaintiff to the University's anti-discrimination Officer (if any)or to encourage Plaintiff to report the alleged discrimination to the OCR for investigation and remedies.

*365.* Plaintiff avers that Defendants, individually and/or collectively, intentionally retaliated against Plaintiff in the institution, investigation, prosecution, and assessment and imposition of adverse disciplinary proceedings that distracted Plaintiff's academic focus, distracted his peace of mind, and denied Plaintiff's enjoyment of the rights, privileges, and reasonable expectations of a student enrolled at the University, because of Plaintiff's race as well as suspicion and mistrust of Plaintiff's motivations based on false stereotypes concerning Plaintiff's cultural and moral background.

*366.* WHEREFORE, Plaintiff Michael O. Livingstone demands judgment against Defendants, DeVry University; Keller Graduate School of Management; Adtalem Education Group Inc. jointly, severally and/or severally, for compensatory and punitive damages in an amount in excess of $7million exclusive of interest and costs; declaratory relief, preliminary and

*Plaintiff's Complaint.*

permanent injunctive relief order by this Court to strike, vacate, reverse, set aside, and nullify the

November 15, 2019 adverse disciplinary sanctions and records contained within Exhibit 14C; an

award of reasonable attorneys' fees, costs and other costs and disbursements in this action; and

such other and further relief as the Court may deem just and equitable.


## COUNT NINE

### CHARACTER ASSASINATION;
### DEFAMATION;FALSE LIGHT.

**(Michael O. Livingstone v. Defendants Jonathan Agresta;
DeVry University; Keller Graduate School of Management;
Adtalem Education Group Inc.)**

*367.*    Plaintiff incorporates herein by reference each and every one of the allegations

contained in the preceding paragraphs as though fully set forth at length herein.

*368.*    The conduct of Defendants, as set forth hereinabove, constitutes conduct under

color of law which deprived Plaintiff's rights.

*369.*    At all times mentioned herein, Plaintiff was a law abiding Citizen of the United

States and the State of New Jersey, student at DeVry University and its Keller Graduate School

of Management who enjoyed the respect, confidence, and esteem of his neighbors, as well as of

all others in the community, and has never been guilty of any crime, offense, or violation of the

law which would tend to lessen the respect, confidence, and esteem he has enjoyed, and to which

he was entitled.

*370.*    Defendant Agresta well knowing the facts set forth in the preceding paragraph

concerning Plaintiff's reputation in the community and with intent to injure Plaintiff and bring

him into public scandal and disgrace, knowingly and maliciously, or with reckless disregard for

*Plaintiff's Complaint.*

the truth, or negligently and carelessly published or caused to be published the scandalous, defamatory, and libelous statements of and concerning Plaintiff Livingstone.

*371.* Specifically, Defendant Agresta stated in the November 2019 conduct hearing packet that Plaintiff has "bullying behavior" for complaining against racial and disability discrimination in Plaintiff's November 23, 2019 email (*see* within Exhibit 8b).

*372.* The statements contained in the written communications identified and described above reflect upon Plaintiff's conduct as well as his character and reputation whereas defendant Agresta described Plaintiff as a columbine "bully" with an "ongoing behavior."

*373.* Plaintiff has no ongoing "behavior," but rather, Plaintiff made expressions and assertions of his rights (Exhibit 8b). Plaintiff has no criminal convictions for any bullying.

*374.* Even if defendants are privileged to defame and assassinate Plaintiff's character by virtue of their capacities as school administrators, for the purposes of good procedure and fair hearing, this defamatory innuendo has cast a negative shadow upon the November 14, 2019 disciplinary proceedings.

*375.* Defendant Agresta knew or should have known that the statements contained in the written communications identified and described above were false when made, and Defendants published them either intentionally and maliciously or with reckless disregard for their truth or falsity, or negligently, and carelessly.

*376.* The false and defamatory statements contained in the written communications identified and described above applies to Plaintiff; were understood by the Panelists and recipients of the statements to have a defamatory meaning; and were understood or reasonably understood by the recipients of the statements as intended to be applied to Plaintiff to extent that it prejudiced Plaintiff before the Panelists.

*Plaintiff's Complaint.*

377.    The publication of the false and defamatory statements contained in the written communications identified and described above and other similar false and defamatory statements of which Plaintiff is not yet aware, may have been, and may continue to be republished and so Plaintiff demands presumed, compensatory, economic and punitive damages for the harm flowing from any and all such republications of the false and character assassination in addition to damages for the harm flowing from their initial publications.

378.    To the extent that Defendants may attempt to assert in their own defense the privileged character of the occasion on which the false statements and character assassination were published, any such conditional or judicial privilege was abused by Defendants and thereby waived and forfeited especially because Plaintiff's assertion of rights and complaining about racial discrimination to the OCR.

379.    The aforementioned false and defamatory statements that Plaintiff has "bullying behavior" was made maliciously, intentionally, recklessly, and falsely, by words, innuendo, inference and the manner in which they were presented held Plaintiff out to public scorn and ridicule and attributed improper conduct, including conduct of a criminal nature as a bully to the hearing Panel.

380.    The aforementioned defamatory character assassination were in no manner privileged nor did the aforementioned constitute fair comment on matters of public concern.

381.    The aforementioned false and defamatory statements were published with knowledge that said statements, innuendo, inference and manner in which they were presented were false and/or with reckless disregard for whether said material was false.

382.    The written communications were published in a negligent manner without adequately investigating the underlying facts.

*Plaintiff's Complaint.*

383.    The statements and implications set forth above were false, and Defendants either knew or should have known at the time of publication that they were false.

384.    The statements and implications set forth above constitute character assassination publications which are actionable per se, are libels per se, and were published with actual malice.

385.    The above statements have severely injured and caused special harm to Plaintiff in that they have tended to (a) blacken his reputation; (b) expose him to hatred, contempt, ridicule and humiliation; (c) ascribe to him characteristics incompatible with the proper conduct expected of a law abiding and trustworthy citizen; and (d) prejudiced him before members of the conduct hearing panel.

386.    As a direct and proximate result of the intentional, malicious, reckless, negligent and/or careless statements and charges contained in the written communications identified and described above and their publication to third parties, Plaintiff's reputation and esteem in the University's community has been adversely affected.

387.    Plaintiff has sustained grave mental anguish, humiliation, and loss of his enjoyment of life by calling him a bully for asserting his rights to complain about discrimination to the OCR.

388.    As a direct and proximate result, Plaintiff has otherwise suffered in his feelings and peace of mind to his great financial loss and damage.

389.    The conduct of Defendants in publishing the aforementioned false and defamatory statements was outrageous and Defendant Agresta acted in bad faith and/or with reckless disregard and indifference to the truth and to the interests of Plaintiff for which Plaintiff claims an additional sum for punitive damages.

*Plaintiff's Complaint.*

390.    As a result of Defendants' malicious publication of the false and defamatory statements complained of herein, Plaintiff is entitled to recover from Defendants such presumed, compensatory and economic damages that will compensate him for his actual financial loss, injury to his personal, educational, and business reputation; mental anguish, suffering and severe emotional distress; and in addition, punitive damages which will punish Defendants for malicious libels, and will deter Defendants from repetition of similar libels in the future.

391.    The false light in which Plaintiff was placed would be highly offensive to a reasonable person in that it amounted to a major misrepresentation of Plaintiff's character, history, activities or beliefs in a manner that could reasonably be expected to cause a reasonable man to take serious offense, and in this case, the Panelists took offense.

392.    Defendant Agresta had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which Plaintiff would be placed before the disciplinary board and beyond.

393.    Defendant Agresta is therefore liable to Plaintiff in damages for the tort of character assassination and/or libelous defamation by mischaracterizing Plaintiff as a bully for asserting his rights to reports discrimination to the OCR.

394.    WHEREFORE, Plaintiff Michael O. Livingstone hereby demands judgment against Defendants, jointly, severally and/or severally, in an amount in excess of $1million exclusive of interest, costs; a preliminary and permanent injunctive order to strike, vacate and expunge the November 2019 disciplinary records to prevent further deprivation of Plaintiff's constitutional rights and the rights of other DeVry University students; an award of reasonable attorneys' fees, costs and other costs and disbursements in this action; and such other and further relief as the Court may deem just and equitable.

*Plaintiff's Complaint.*

## COUNT TEN

### ABUSE OF PROCESS

### (Michael O. Livingstone v. Defendants DeVry University Inc.; Keller Graduate School of Management; Adtalem Education Group Inc.)

*395.* Plaintiff incorporates herein by reference each and every one of the allegations contained in the preceding paragraphs as though fully set forth at length herein.

*396.* The conduct of Defendants, as set forth hereinabove, constitutes conduct under Color of Law which deprived Plaintiff's rights.

*397.* The U.S.Department of Education's Office of Civil Rights ("OCR") is a federal agency that is responsible for enforcing five federal civil rights laws that prohibit discrimination based on race, color, national origin, sex, disability, and age by recipients of federal financial assistance.

*398.* In an October 23, 2019 at 11:05 AM email to defendant Havel, Plaintiff asserted his rights, Plaintiff alleged racial discrimination, and Plaintiff complained and copied the OCR on it (*see* Exhibit 6H). This email was included in the hearing packet zip file that defendant Agresta presented as evidence against Plaintiff.

*399.* Plaintiff avers that by subjecting him to disciplinary proceedings and imposing adverse disciplinary sanctions upon him for asserting his rights and for complaining against discrimination to the OCR, the University has abused the student disciplinary process.

*400.* Plaintiff avers that by subjecting him to disciplinary proceedings for complaining about poor quality of education and the perfunctory Cengage and Canvas systems that were used to teach FIN 515 class, the University has abused and misused the student conduct process.

*Plaintiff's Complaint.*

401.    The University has published an anti-discrimination policy within its contractual Catalogs and Handbooks. Yet, when Plaintiff complained about racial discrimination, the University ignored it and the University rather subjected Plaintiff to disciplinary action.

402.    Plaintiff is not obligated to use the University's own anti-discrimination office (if any) as the forum to complain against racial discrimination under the Civil Rights Act of 1964. Plaintiff chose a different forum. Plaintiff chose to use the OCR.

403.    In a November 4, 2019 email from Defendant Agresta sending a disciplinary Conduct hearing packet to Plaintiff, Defendant Agresta attached Plaintiff's October 23, 2019 email that was copied to the OCR. Defendant Agresta summoned Plaintiff for a November 14, 2019 disciplinary conduct hearing on grounds that Plaintiff has *inter alia* complained against racial discrimination to the OCR (*see* Exhibit 8F contained with the hearing package zip file Exhibits 8A-8M).

404.    The Civil Rights Act of 1964 requires all Universities (especially Universities that participate in Federaltudent Financial aid programs) to have a designated anti-discrimination officer at the University to receive, investigate, and act upon allegations of discrimination under Civil Rights Act of 1964. Defendant Agresta and the panelists never referred Plaintiff to any anti-discrimination officer.

405.    Defendants Havel and Agresta referred Plaintiff's October 23, 2019, 11:05 AM email alleging racial discrimination to November 14, 2019 disciplinary action hearing without referring the discrimination complaint to a designated anti-discrimination officer within the University for investigation and action against alleged discriminators.

406.    Plaintiff avers that the proper thing Defendants Agresta and Havel knew or should have known to do when a student alleges racial discrimination is to refer the student to the

*Plaintiff's Complaint.*

University's own designated anti-discrimination officer, not refer the student for adverse disciplinary action.

407.   Article III of DeVry University Student Conduct Code is against Students who take matters into their own hands with physical violence, not against students like Livingstone who seek administrative remedies against discrimination. Absolutely no parts of Plaintiff's year 2019 emails makes any actionable threats of physical violence in violation of Article III.

408.   Plaintiff avers that Defendants, all of them, individually and/or collectively, intentionally abused the disciplinary conduct process by summoning and seizing and /or sanctioning Plaintiff for an adverse November 14, 2019 disciplinary hearing because Plaintiff complained and asserted his rights against racial discrimination to the OCR in Plaintiff's November 23, 2019 email.

409.   Plaintiff bring this cause of action for this Court to enjoin DeVry University and its officials to come up with an in-house neutral anti-discrimination officer who can receive, investigate, and act upon allegations of discrimination.

410.   WHEREFORE, Plaintiff Michael O. Livingstone demands judgment against Defendants, DeVry University; Keller Graduate School of Management; Adtalem Education Group Inc. jointly, severally and/or severally, for compensatory, exemplary, and punitive damages in an amount in excess of $11million exclusive of interest and costs; declaratory relief, preliminary and permanent injunctive relief order to strike, vacate, and reverse and expunge the Plaintiff's November 2019 disciplinary record; an award of reasonable Attorneys' fees, costs and other costs and disbursements in this action; and such other and further relief as the Court may deem just and equitable.

## COUNT ELEVEN

### 42 U.S.C. §1985 (3) - CONSPIRACY TO DEPRIVE CIVIL RIGHTS; UNDUE INFLUENCE; TORTIOUS AND INTENTIONAL INTERFERENCE

### (Michael O. Livingstone v. Defendants DeVry University; Keller Graduate School of Management; Adtalem Education Group Inc.)

*411.*  Plaintiff incorporates herein by reference each and every one of the allegations contained in the preceding paragraphs as though fully set forth at length herein.

*412.*  The conduct of Defendants, as set forth hereinabove, constitutes conduct under Color of Law which deprived Plaintiff's rights.

*413.*  As a graduate student at DeVry University, Plaintiff avers that he has fundamental right or fundamental civil right to his continued education undeterred.

*414.*  Plaintiff avers that part of fulfilling his fundamental right to continued education at DeVry University and its Keller Graduate School of Management was to complete MATH 533 class as part of the MBA degree requirements.

*415.*  In December 2018, Plaintiff contracted with his November 2018 session MATH 533 course instructor, Dr. Henson-Mack, for incomplete grade in accordance with the contractual provisions of the University's Academic Catalog (Exhibit 11B). (*See* also Exhibit 11A for threaded sequence of emails). Plaintiff supported his request for the incomplete grade with documents. Dr. Henson-Mack granted the Incomplete grade (I) designator and processed it through the defendant Registrar.

*416.*  When the Incomplete grade was about to expire and turn to fail grade by default, Plaintiff contacted Dr. Henson-Mack on time by email dated January 31, 2019 at 3:35 PM and explained with documents (Ex.11A.4) and photos in email dated June 29, 2019 at 7: 34PM (Ex.11A.7) that Plaintiff's condition has not improved, and so Plaintiff requests the Incomplete

*Plaintiff's Complaint.*

grade to be extended as provided in the Keller Academic Catalog at Page 77 providing for extending Incompletes,

https://www.devry.edu/content/dam/dvu/www_devry_edu/d/Keller_Catalog.pdf

> …Incompletes, designators of I, are granted in exceptional situations only, such as when illness or work-related travel is documented and when substantial course requirements have already been completed. Students must submit a Request for Course Incomplete form and obtain approval from the professor and the appropriate academic administrator prior to the grade roster deadline in order for an incomplete to be granted. Designators of I are counted in attempted hours but are not counted in any GPA computations. If remaining coursework has not been completed by the end of week four of the next session, I designators automatically become grades of F or designators of U, **unless written approval granting an extension has been obtained** from the chief location administrator/academic advisor…

(emphasis added)

417.    Plaintiff timely requested Dr. Henson-Mack to extend the Incomplete because Plaintiff was not fully recovered.

418.    By e-mail dated January 31, 2019 (within Exhibit 11), Dr. Henson-Mack responded to Plaintiff and she also left a voicemail that even if the Incomplete grade changes to fail grade, she could do an F-override for Plaintiff later on. However, the default Fail-grade would negatively impact Plaintiff's GPA in the meantime. (Plaintiff may produce the voicemail on CD-ROM for the Court later in a motion for declaratory relief).

419.    Dr. Henson-Mack did not impose any deadline upon Plaintiff as to the time-frame she could do the F-override for Plaintiff. She left it open for Plaintiff putting into perspective that Plaintiff needs time to recover his health.

420.    Around July 2019, when Plaintiff got well, Plaintiff contacted Dr. Henson- Mack to submit the remaining coursework for MATH 533 so that she could do the F- Override she indicated (Ex. 11A8).

*Plaintiff's Complaint.*

*421.* To Plaintiff's surprise, Dr. Henson- Mack copied Defendant Agresta on her July 11, 2019 reply email (Ex.11A.8) and she demonstrated a change of mind about the F- override she had previously indicated in her voicemail to Plaintiff.

*422.* In previous communications about the Incomplete grade, Dr. Henson-Mack never copied defendant Agresta. So, by copying defendant Agresta on that July 11, 2019 email suddenly, it suggests that a conspiracy or discussion took place between Dr. Henson-Mack and defendant Agresta.

*423.* Whereupon, Dr. Henson–Mack changed her mind from what she previously stated on the on her voicemail and asked Plaintiff to rather file a grade appeal specifically to Defendant Agresta, and not to any of the many Assistant Deans at Keller. *Id.*

*424.* As relevant background, in June 2019, the same defendant Agresta who previously characterized Plaintiff's filing of grade appeal and incomplete grade as "past incident of character reference" and subjected Plaintiff to disciplinary action for that within Exhibit 1A, Page 2 under "past incidents of character reference" was now asking Plaintiff to file a grade appeal to him.

*425.* Plaintiff asked Defendant Agresta to recuse himself from the MATH 533 issues and grade appeal because of his systemic bias and prejudice against grade appeals. Agresta declined to recuse himself.

*426.* Defendant Agresta asked Plaintiff to go outside of procedure and appeal the MATH 533 grade directly to him instead of the required electronic filing of grade appeals through the canvas system. Plaintiff filed an email grade appeal out of procedure to Defendant Agresta and Agresta definitely denied it (Exhibit 11A.10 - Exhibit 11 A.11).

*Plaintiff's Complaint.*

427.    In denying the grade appeal, defendant Agresta cited pretextual excuses that are misplaced against the fact that the course instructor (Dr. Henson-Mack) said she would do an F-override for Plaintiff later on.

428.    Defendant Agresta is not named as Plaintiff's New Jersey Complaint Administrator in the Student Handbook at Pages 50-61 for him to adjudicate Plaintiff's grade appeal. So, Agresta forced himself into grade appeal procedure in which he is not authorized to adjudicate.

429.    The University's formal procedure for filing grade appeals is to file it electronically and then it gets assigned to an Academic Specialist who will then act as a Coordinator or Ombudsman of the grade appeal, submit it from faculty chairs to Deans, and ultimately to the University Provost, just as it was done in 2016 when Plaintiff appealed the ACCT 504 grade to Provost Dr. Lorraine Rekau. *See* also exhibit 16A

430.    Plaintiff believes and therefore infers that defendant Agresta asked Dr. Henson-Mack to tell Plaintiff to file the grade appeal specifically to him (Agresta), so that he can carry out his malice and bad-faith activity to deny the grade appeal.

431.    Inasmuch as Dr. Henson-Mack is not just a mere course instructor, Plaintiff avers that the voicemail decision of a *tenured* Associate Professor and course instructor for MATH 533 Dr. Henson-Mack to do an F-override should not be altered or influenced by a third party such as Defendant Agresta, who is not a tenured Professor.

432.    Plaintiff avers that Defendant Agresta, was motivated with bad-faith, deep-seated antagonism, and ill-will against Plaintiff, when he conspired with Dr. Henson-Mack to stop her and change her mind from going forward to do the F-override in the best interests of Plaintiff to pass the MATH 533 class.

*Plaintiff's Complaint.*

*433.* Plaintiff avers that Defendant Agresta conspired to deprive Plaintiff of his civil right to his education when Defendant Agresta asked Dr. Henson-Mack to file a grade appeal to him and not to any other Assistant Dean and when Agresta refused to recuse himself despite his own professed deep-seated antagonism that filing grade appeals and incomplete grades is "bad character incident."

*434.* Plaintiff avers that Defendant Agresta was motivated by bias, bad-faith, and deep-seated antagonism against Plaintiff when he directed Dr. Henson-Mack not to do the F-override and instead ask Plaintiff to file a grade appeal to him so that he can find any reason at all to deny Plaintiff's grade appeal to Plaintiff's detriment.

*435.* To the extent that Defendant Agresta claims that Plaintiff did not meet his part of the incomplete grade contractual provisions for MATH 533 class, this is not true because according to the record, University's contractual incomplete grade policy required plaintiff to ask the course instructor to extend the incomplete grade before it expires and Plaintiff contacted Dr. Henson-Mack before the incomplete grade turned into Fail by default and Dr. Henson-Mack responded by voice-message to Plaintiff's timely request that she could do an F-override later on for Plaintiff. Accordingly, Plaintiff did his part.

*436.* To the extent that Defendant Agresta claims that it is too late in nine (9) months in October 2019 from the time the Incomplete grade for MATH 533 class was contracted, this is another pretextual excuse to deprive Plaintiff's right because under the University's contractual Catalogs, a grade can always be changed retroactively *before* a student graduates. (*see* Exhibits 11B & 11D).

*437.* Plaintiff brings this lawsuit for this Court to uphold and enforce the original decision of the tenured course instructor (Dr.Henson-Mack) to do the F-Override for Plaintiff

*Plaintiff's Complaint.*

and enjoin the University to unlock the MATH 533 class for Plaintiff to submit outstanding coursework within two weeks of this Court's Order. A locked online Keller class can always be unlocked.

438.  The University should be enjoined by this Court to allow Dr. Henson-Mack to apply the F-override she offered to Plaintiff before she was unduly influenced with bad-faith by Defendant Agresta to change her mind to Plaintiff's peril.

439.  Given that Plaintiff eligible to graduate since January 2020 session (Exhibit 9A) and MATH 533 is an outstanding class, Plaintiff requests for declaratory relief, preliminary and permanent injunctive relief enjoining the University to unlock the MATH 533 November 2019 Class for Plaintiff to submit any outstanding and change the grade.

440.  By direct and proximate cause, this dispute regarding the MATH 533 has created an indelible gap within Plaintiff's continued education, delayed Plaintiff's graduation for his MBA degree since January 2020 session, and caused loss salary.

441.  WHEREFORE, Plaintiff Michael O. Livingstone demands judgment against Defendants DeVry University; Keller Graduate School of Management; Adtalem Education Group Inc., jointly, severally and/or severally, for compensatory, exemplary, and punitive damages in an amount in excess of $10 million exclusive of interest and costs; declaratory relief, preliminary and permanent injunctive relief; an award of reasonable Attorneys' fees, costs and other costs and disbursements in this action; and such other and further relief as the Court may deem just and equitable.

*Plaintiff's Complaint.*

## COUNT TWELVE

### RETALIATION UNDER TITLE VI OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000d;
### &
### RETALIATION AGAINST RIGHT TO PETITION

### (Michael O. Livingstone v. Adtalem Education Group, Inc., DeVry University, Keller)

*442.* Plaintiff incorporates herein by reference each and every one of the allegations contained in the preceding paragraphs as though fully set forth at length herein.

*443.* The conduct of Defendants, as set forth hereinabove, constitutes conduct under color of law which deprived Plaintiff's rights in the following manner under each count.

*444.* As part of Plaintiff's MBA degree requirements, Plaintiff enrolled and completed DeVry University's Business Economics ("ECON 545") graduate level class during the November 2017 session. Dr. William Mapp was the course instructor for ECON 545 class.

*445.* Plaintiff completed ECON 545 class with final "A-" grade. Plaintiff ended on good terms with Dr. Mapp in 2017. There was no misconduct complaints against Plaintiff in 2017 from Dr. Mapp to the University's student conduct board at all in 2017.

*446.* To Plaintiff's surprise, within the June 14, 2019 conduct hearing packet (Exhibits 1A, 3A-3I), Defendant Agresta cited an email correspondence that was exchanged between Plaintiff and Dr. Mapp during the 2017 ECON 545 class. (*See* Exhibit 1A, pp.4-5; *see* also actual attached rebuttal email thread with Exhibit 2A).

*447.* No part of Plaintiff's 2017 email (Ex. 1A, pp.4-5; Ex.2A) to Dr. Mapp expresses any actionable threat of physical violence or intimidation at all that can be considered as violating Article III of the University's Student Code Of Conduct. Plaintiff only asserted his right to complain against discrimination to the OCR within that email.

*Plaintiff's Complaint.*

448.     In 2017, Dr. Mapp never took issue with that email and he never alleged any misconduct against Plaintiff in 2017 or in 2019 regarding that 2017 email.

449.     Dr. Mapp never reported that 2017 email from Plaintiff to the University Conduct Board for any misconduct. Plaintiff never engaged in any misconduct whatsoever during the 2017 ECON 545 class with Dr. Mapp.

450.     In search for anything to use against Plaintiff in June 2019 for adverse disciplinary action, Defendant Agresta impermissibly accessed Plaintiff's DeVry University email account without Plaintiff's knowledge and without Dr. Mapp's knowledge to retrieve that 2017 email and used it to injure Plaintiff in the June 2019 disciplinary proceedings all because Defendant Agresta noticed in that 2017 email that Plaintiff reported discrimination, or Plaintiff asserted his right to report discrimination to the OCR, and Plaintiff actually copied the OCR.

451.     Dr. Mapp was not even aware of any disciplinary conduct proceedings happening in June 2019 over Plaintiff's previous 2017 email to Dr. Mapp at all.

452.     Plaintiff avers that the University retaliated against him under the Civil Rights Act when Defendant Agresta summoned and sanctioned Plaintiff for disciplinary action in June 2019 on grounds that Plaintiff's 2017 email to Dr. Mapp alleges and complained against appearance of civil rights discrimination and copied a federal anti-discrimination enforcement agency (OCR) on it (Exhibit 1A, pp.4-5; Exhibit 2A).

453.     Apart from that, on June 13, 2019, Defendant Kristine Kearney allegedly reported Plaintiff to the University's Student Conduct Board for adverse disciplinary action on grounds that Plaintiff "threatened to sue Keller" for his money (*See* Ex. 1A, p.2 for the statement of Kristine Kearney).

*Plaintiff's Complaint.*

*454.* On June 14, 2019, during a follow-up telephone call from Plaintiff to Defendant Agresta, Defendant Agresta specifically expressed his animosity to the fact that Plaintiff said he would sue the University.

*455.* In a June 14, 2019 email to Defendant Agresta, Plaintiff issued rebuttals in email Exhibit 2B to Defendant Agresta that Plaintiff has a constitutional civil right to assert his rights. Plaintiff has a right to petition and assert that he would sue the University. Asserting to sue the University is neither actionable threat of physical violence nor intimidation under Article III of the University's student code of conduct.

*456.* Notwithstanding those rebuttals in Exhibit 2B, Defendant Agresta proceeded with the conduct hearing on June 2019 and imposed an adverse disciplinary sanction against Plaintiff to tarnish Plaintiff's reputation and liberty interests.

*457.* Plaintiff avers that by subjecting him to disciplinary action for asserting his rights to sue the University, the University retaliated against Plaintiff's constitutionally-protected right to petition for redress of his grievances.

*458.* Plaintiff avers that as a pretextual excuse to retaliate against Plaintiff with adverse disciplinary action for complaining about discrimination in the 2017 email that Plaintiff sent to Dr. Mapp and copied to the OCR and for Plaintiff asserting his right to sue the University to defendants Kearney and Agresta, defendant Agresta attached Exhibits 3A-3I to the disciplinary hearing packet (Exhibit.1A) charging Plaintiff for violating Article III of the student Code of Conduct.

*459.* Plaintiff avers that as another pretextual excuse to retaliate against his with adverse disciplinary action for complaining about discrimination in the 2017 email Plaintiff sent to Dr. Mapp that was copied to the OCR, and for Plaintiff asserting his right to defendant

*Plaintiff's Complaint.*

Kearney to sue the University, within the June 2019 conduct zip file packet (Exhibits 1A, 3A-3I), Defendant Agresta charged Plaintiff for code of conduct violation on grounds that Plaintiff reached out beyond his March 2019 ACCT 504 Course instructor to the University's designated ADA accommodations Officer to seek extended ADA accommodations (*see* Exhibit 1A, p.2).

460.    Plaintiff avers that this was another pretextual excuse to retaliate against him because consistent with the University's own Catalogs, it was Plaintiff's responsibility to seek ADA accommodations by reaching out to the ADA Officer, directly, not through course instructors, because Course Instructors are not designated as ADA officers to process requests for ADA accommodations. Plaintiff denies any misconduct for properly reaching out to the University's designated ADA Accommodations Officer.

461.    As another pretextual excuse to retaliate with adverse disciplinary action against Plaintiff under the Civil Rights Act and under the right to petition, Defendant Agresta charged and sanctioned Plaintiff with code of conduct violation on grounds that it is bad "incident of character reference" for Plaintiff to reach out to DeVry's Professor John Kavouras (Ex.1A, p.2). In support of this allegation of bad character reference, defendant Agresta attached Exhibit 3D as evidence. *See* also Exhibit 2C for full details about this.

462.    Plaintiff avers that this was pretextual excuse because email Exhibit 4B shows Professor Kavouras never took issue with Plaintiff reaching out to him for administrative and academic guidance. *See* also attached email Exhibits 4A & 4B for historical background evidence in 2018 as to why Plaintiff reached Professor Kavouras in particular in 2019.

463.    As another pretextual excuse to discriminate or retaliate against Plaintiff with adverse disciplinary action for complaining against discrimination in 2017 email to Dr. Mapp and asserting his right to sue the University in 2019, without any evidential record of an alleged

*Plaintiff's Complaint.*

June 13 phone call, Defendant Agresta charged and sanctioned Plaintiff for being rude in a telephone call Plaintiff allegedly placed to DeVry University Central phone on June 13, 2019 to defendants Deb Koffman and Kristine Kearney regarding delayed processing of Plaintiff's textbook credit balance refund. Plaintiff denies being rude to anybody and Plaintiff denies saying defendant Deb Koffman was stupid doing a stupid job.

464.    *Assuming arguendo* Plaintiff said defendant Koffman was doing a stupid job, usage of the word "stupid" is not a subjective rude word. Even US Supreme Court Justices used the word "stupid" to describe "stupid defendants" in the case of *TXO Production Corp. v. Alliance Resources* (92-479), 509 U.S. 443 (1993), for example, to describe "really stupid" defendants eligible for punitive damages.

465.    As another pretextual excuse to retaliate against Plaintiff with adverse disciplinary action, within the June 2019 conduct hearing packet (emails Exhibits 1A, 3A-3I), Defendant Agresta also charged Plaintiff for student conduct violation for sending so-called "intimidation emails" to the March 2019 ACCT 504 course instructor (Dr. Goodman) and copying multiple deans, a Professor, and the Provost of the University on or around April 27, 2019 (i.e. Exhibit.3I). The alleged "intimidation emails" were included in the Zip file. The first one is purely about a detected ambiguity within a multiple choice question in the ACCT 504 class.

466.    Plaintiff avers that this was a pretextual excuse to retaliate and discriminate him because Plaintiff has a right to voice his academic concerns to University Administrators in authority to deal with it. Plaintiff copied administrators on that email because the University administration always seek Plaintiff's feedback such as Ex. 4C. Moreover, both DeVry then University President (Mr. James Bartholomew) and Provost (Defendant Bose) have stated in their opening messages published in the Keller Catalog that they are here to support Students.

*Plaintiff's Complaint.*

467. As another pretextual excuse to retaliate against Plaintiff, Defendant Agresta attached another alleged intimidation email within the June 2019 conduct packet (Exhibits 1A, 3A-3I) regarding Plaintiff reporting a technical glitch to the University's IT help desk when the ACCT 504 course portal prevented Plaintiff from submitting his schoolwork. Plaintiff reached out to IT Help Desk and Dr. MacCatherine about what to do and they re-opened the portal for Plaintiff to submit his work (*see* email thread Exhibit 3C for details).

468. Plaintiff believes and therefore avers that this was pretextual excuse because there was no actionable intimidation of physical violence. Plaintiff has duty to report perfunctory educational systems affecting his academic work.

469. As another pretextual excuse to retaliate against Plaintiff with disciplinary action for asserting his rights to sue the University and for complaining about discrimination to the OCR in the 2017 email, within the June 2019 conduct zip file packet (Exhibits 1A, 3A-3I), Defendant Agresta charged and sanctioned Plaintiff for violating Article III of the student code of conduct on grounds that Plaintiff has past character reference incident of filing grade appeals or seeking Incomplete grades (*see* Ex.1A, p.3).

470. This was pretextual excuse to retaliate against Plaintiff because the University's own Catalog at Pages 102 & 104 contractually provides Grade Appeals and Incomplete Grade, as required by the Education Amendments Act of 1972, https://www.devry.edu/content/dam/devry_edu/d/Keller_Catalog.pdf. *See* also Exhibit 3C at Page 1 where DeVry's own Assistant Dean, Dr. John MacCatherine, directs Plaintiff in an April 28, 2019 email to "file a grade appeal" over the ACCT 504 class. *See* also Exhibit 11A for email dated July 11, 2019 at 5:59 PM where DeVry's tenured Associate Professor Kathrine Henson-Mack, Ph.D tells Plaintiff *inter alia* to file an official grade appeal about the MATH 533 class.

*Plaintiff's Complaint.*

  *471.* As another pretextual excuse to retaliate against Plaintiff with disciplinary action for asserting his rights to sue the University and for complaining against discrimination to the OCR, Defendant Agresta accused and sanctioned Plaintiff for conduct violation by attaching to the June 2019 conduct a full year old August 17, 2018 allegation claiming that Plaintiff was "rude" when he "refused to verify his identity" and Plaintiff was "unable to end a live chat session" on the University's website with defendant Megan Mihelich when Plaintiff requested information about who is Keller's new "Main Dean" (i.e. National Dean) and Center Dean for Philadelphia Campus. Plaintiff denies any misconduct in that.

  *472.* Plaintiff believes and therefore avers that this was a pretextual excuse because if indeed Plaintiff refused to "verify his identity" at the time during the live chat online then it is questionable how Ms. Mihelich thinks it was actually Plaintiff who did that live chat to begin with.

  *473.* As another pretextual excuse to retaliate against Plaintiff with disciplinary action for asserting his rights to petition to sue the University and for complaining against discrimination to the OCR, during the June 20, 2019 disciplinary hearing, the University ultimately claimed that Plaintiff has violated Article III of the student conduct code because Plaintiff copied University administrators and the University's Provost, i.e. Defendant Shantanu Bose, to express his academic concerns. Hence, that is intimidation.

  *474.* Plaintiff avers that this was a pretextual excuse to retaliate against him because imposing disciplinary sanctions against Plaintiff for copying the Provost Defendant Shantanu Bose to express his academic concerns is not actionable intimidation or misconduct because of the following:

*Plaintiff's Complaint.*

(i)     Defendant Bose did not personally take any issue with Plaintiff writing him an email about his academic concerns;

(ii)    Defendant Shantanu Bose is the University's Chief Academic Officer who is well-vexed in the academic processes of the University that are used for teaching at the University; [12]

(iii)    Defendant Bose is ultimately responsible for the University's academic policies;

(iv)    Defendant Bose welcomes Plaintiff in his welcome message in Page 3 of the Keller Catalog.[13]

(v)    Defendant Bose did not take personal issue or report Plaintiff for disciplinary action for merely copying him on that email Exhibit 3I.

(vi)    Defendant Bose was not even aware that a disciplinary hearing was happening on June 20, 2019 to Plaintiff merely for copying him about an academic concern related to a perfunctory Accounting software the University uses to teach ACCT 504 class.

(vii)    Plaintiff copied the Provost because at DeVry University, course instructors do not design their own courses, but rather, the courses are designed by the University's Academic curriculum development team, which falls under the executive portfolio of the University's Chief Academic Officer. So, the Course Instructor, Dr. Goodman, is not the one who designed her ACCT 504 course and she is not the one who chose Pearson Publisher's MAL software for her ACCT 504 class. Plaintiff therefore copied Provost Shantanu Bose because he is published in the University's Catalog as the current academic Provost or the University's Chief Academic Officer with ultimate responsibility or

---

[12]    See the profile of Provost Bose on the DeVry University website affirming these responsibilities, here http://newsroom.devry.edu/administration--live/administration/shantanu-bose-phd-provost-devry-university.htm

[13]    See Page 3 off the Keller Catalog, https://www.devry.edu/d/Keller_Catalog.pdf, Where Provost Bose welcomes students and signs off as Chief Academic Officer.

*Plaintiff's Complaint.*

vicarious responsibility for academic issues, concerns, software, and curriculum design in the University. *See* Page 3 off the Keller Catalog,

https://www.devry.edu/d/Keller_Catalog.pdf

(viii)   Plaintiff had reason to believe that copying the Provost in the April 2019 email Exhibit 3I at issue regarding the perfunctory nature of the Pearson MAL software that was used during the ACCT 504 class, Provost Bose would have specific context and example of what academic software students are having issues and concerns with instead of random general solicitation of student feedback.

Categorically, copying defendant Shantanu Bose on an email (Ex. 3I) full of academic content was not intimidation or rudeness on Plaintiff's part.

475.   Moreover, Dr. Goodman, who was the original recipient of that email copied to defendant Bose (Ex. 3I) did not express any personal issue with Plaintiff copying the Provost or administrators on that email at all, as demonstrated by a follow-up email dated April 27, 2019, 9:34 PM where Dr. Goodman asked Plaintiff to include additional administrators on his email such as her own Dean (Dr. MacCatherine) and the University's ADA administrator when she wrote:

> ... Additionally - you failed to omit my Dean which I have now included - and also your ADA coordinator…

This shows that  the original recipient of the email (Dr. Goodman) did not have a problem with Plaintiff "copying" administrators such as Provost Bose  and other Deans on it because she wanted Plaintiff to copy more administrators.

476.   Dr. Goodman never reported that by copying the Provost on emails Exhibit 31, Plaintiff has intimidated her and so Plaintiff should be subjected to disciplinary action.

*Plaintiff's Complaint.*

477. Dr. Goodman, the original course instructor, and the original recipient of the emails (Ex. 3I) in April 2019, was not even aware of the June 2019 adverse disciplinary proceedings orchestrated by Defendant Agresta in retaliation to Plaintiff.

478. To the extent that Plaintiff sent the emails (Exhibit 3I) in April 2019 and Defendant Agresta was copied directly on it; yet, defendant Agresta took no action until June 2019 after he was informed by Defendant Kearney that Plaintiff has asserted to sue Keller, Plaintiff alleges that Defendant Agresta was motivated by retaliatory animus to find anything to use against Plaintiff; therefore, he resorted to use those outdated April 2017 emails against Plaintiff in June 2019.

479. To the extent that Plaintiff was sanctioned with adverse disciplinary action for copying the University Provost (defendant Bose) on a purely academic concern in the email Exhibit 3I, the University has created a hostile educational environment for Plaintiff at the University.

480. To the extent that Defendant Shikowitz upheld Plaintiff's conduct appeal (Exhibit 6A) which also presented the argument that the Student Conduct Board had imposed disciplinary action against Plaintiff in June 2019, Defendant Shikowitz also supported retaliation against Plaintiff's right to petition.

481. As a direct and proximate result of Defendants' unlawful conduct as described herein, Plaintiff Livingstone has suffered, and continues to suffer irreparable injury which cannot be fully compensated by an award of monetary damages for which Plaintiff is entitled to preliminary and permanent injunctive relief as well as damages in an amount to be determined by the Court and reasonable costs of this lawsuit, including reasonable Attorneys' fees under the Civil Rights Act.

*Plaintiff's Complaint.*

482.     As a further direct and proximate result of Defendants' unlawful conduct as described herein, Plaintiff has been caused and will continue indefinitely into the future to be caused severe mental anguish, humiliation, anxiety, stress, and emotional and/or psychological distress, all with associated physical symptoms.

483.     WHEREFORE, Plaintiff Michael O. Livingstone demands judgment against all Defendants DeVry, Keller, Adtalem jointly, severally and/or severally, for compensatory and punitive damages in an amount in excess of $20 million, exclusive of interest and costs; preliminary, declaratory, and injunctive relief to vacate and expunge the June 2019 disciplinary sanction and record without making references to it; an award of reasonable attorneys' fees, costs and other costs and disbursements in this action; and such other and further relief as the Court may deem just and equitable.

## COUNT THIRTEEN

### FAILURE OF THE UNIVERSITY TO FOLLOW ITS OWN RULES; BREACH OF CONTRACT; HIGHER EDUCATION LAW

**(Michael O. Livingstone v. DeVry, Keller, Adtalem)**

484.     Plaintiff incorporates herein by reference each and every one of the allegations contained in preceding paragraphs as though fully set forth at length herein.

485.     The conduct of Defendants, as set forth hereinabove constitutes conduct under color of law that deprived Plaintiff's rights in the manner described in the following paragraphs.

486.     Although the University is not a state actor, the University has promulgated and published Student Handbook and Catalogs containing procedures, rules, and policies for which the University must be held to compliance.

*Plaintiff's Complaint.*

487.    Plaintiff avers that the University did not follow its own rules during the November 2019 student conduct proceedings because Pages 55-61 of the DeVry Student Handbook Code of conduct designates Student Code Administrators by States, not by region. Plaintiff raised procedural objections on the record (*See* Exhibit 14A) that Defendant Agresta should recuse himself from the proceedings because he is not the designated Code of Conduct Administrator for Online and New Jersey Students such as Plaintiff Michael Livingstone. Defendant Agresta is named as the *Pennsylvania* Student Code Administrator, not *New Jersey.* Plaintiff believes and therefore aver that motivated by bad-faith, animosity, retaliatory animus, and racial hatred against Plaintiff, Agresta declined to recuse himself; thereby, forcing himself to handle the proceedings against the authority of the contractual provisions in the Code or Handbook.

488.    During the November 2019 student conduct proceedings, Plaintiff also asked Defendant Agresta to recuse the hearing Panelists (i.e. Defendants Russell, D'Souza, and Schmitz) and empanel a new one because of they are the same panelists from prior June 2019 conduct hearing becoming the November 2019 conduct hearing panelists too (*See* Exhibit 14A). Hence, the risk of systemic bias and prejudice stemming from familiarity in June 2019's conduct hearing proceedings causing the November 2019 hearing to be unfair and partial. Agresta did not recuse the Panelists either. Indeed, the Panelists quickly recollected Michael Livingstone and therefore compromised fair hearing.

489.    Plaintiff avers that the University did not follow its own rules during the June 2019 disciplinary proceedings because Article IV, section 5(e) of the University's published 2018-2019 Student Handbook Code of Conduct, https://www.devry.edu/d/student-handbook.pdf,

*Plaintiff's Complaint.*

provides for **cross-examination of both** Complainants and Respondents during Conduct

hearings. Specifically, the Student Conduct procedures provides the following in Page 17:

> "…The University, the complainant, the respondent and the conduct panel shall
> be allowed to present witnesses and evidence, subject to the **right of cross-
> examination** by the conduct panel…"

(Emphasis added)

490. The identified complainants or witnesses (Defendants Koffman, Mihelich, and

Kearney) in Page 2 of the June 2019 conduct hearing packet (Ex. 1A) were not summoned by the

University to attend the hearing; they did not attend the June 19, 2019 disciplinary hearing; and

they were not cross-examined for credibility of their statements at all.

491. This deprived Plaintiff's procedural safeguards of fundamental fairness in the

absence of the Complainants.

492. The absence of the witnesses prevented Plaintiff and the hearing panel from

assessing the credibility of the Complainants' allegations against Plaintiff especially in this case

where it was the mere statement of defendants Koffman and Kearney against Plaintiff's

statement without any evidence of the actual telephone conversation.

493. As another deviation from the University's own rules, by email dated June 21,

2019, 12:14 PM, Defendant Agresta asked Plaintiff to submit his conduct sanction appeal against

the adverse June 2019 disciplinary action directly to him (Exhibit 6A). Meanwhile, the Student

Handbook's proscribes the following rule in Page 18 regarding Appeals of disciplinary hearings:

> …Appeals must be processed by an individual **with no prior
> involvement** in initial determination or hearing…

(Emphasis added)

*Plaintiff's Complaint.*

By asking Plaintiff to send the appeal to him, Defendant Agresta, who chaired the conduct hearing was involved in the processing of the appeal in contravention to the University's own rules, *supra*.

494.    Plaintiff avers that inasmuch as Defendant Agresta participated in the June 20, 2019 disciplinary hearing, the University did not follow its own rules when Defendant Agresta asked Plaintiff to submit his June 2019 appeal to him even if the same defendant Agresta did not adjudicate the appeal.

495.    As another departure from the University's own rules, by compelling Plaintiff to submit the June 2019 conduct appeal to the same Defendant Agresta who previously participated in the June 20, 2019 hearing and acted as complainant per se, the University used a procedure not authorized by the Student Code of Conduct.

496.    As another departure from the University's own rules, the same defendant Agresta acted as a complainant during the June 2019 conduct proceedings because it was Defendant Agresta who impermissibly went into Plaintiff's official DeVry University email inbox to retrieve 2017 emails exchanged between Plaintiff and ECON 545 Professor (Dr. Mapp), as well as 2019 emails exchanged between Plaintiff and Plaintiff's March 2019 ACCT 504 class Professor (Dr. Goodman) to use it against Plaintiff. Defendant Agresta acted as a both Complainant and witness because he is the one who accessed and presented those emails against Plaintiff without the knowledge of Dr.Mapp, for example. Indeed, both Drs. Mapp and Goodman did not even know that a conduct hearing was happening on June 20, 2019 involving the aforementioned emails Plaintiff sent to them years ago.

497.    As another departure from the University's own rules during the June 2019 conduct proceedings, Plaintiff was summoned and subjected to disciplinary action for filing

grade appeals and/or seeking incomplete grades. *See* specifically conduct hearing packet Exhibit

1A at Page 3 stating the following:

> "… there are multiple instances of this behavior, some of which can be seen
> below. With a thorough review of his academic history, the conduct administrator
> noted multiple repeated instances of grade appeal and incomplete requests (8 such
> cases on file) throughout his academic career."

Filing grade appeals and seeking Incomplete grades is not a "behavior" or "misbehavior" at all.

*Grade appeal* and *incomplete grades* are provided as part of the University's contractual

procedures and policies within the University's own published Catalogs,

https://www.devry.edu/d/Keller_Catalog.pdf, Pages 102-104, as well as the University's

Published Student Handbook.

498.     As another departure from the University's own rules, defendant Agresta

characterized Plaintiff's grade appeal as punishable [mis]behavior. Plaintiff followed the

University's catalog and  properly went through the University's administrative channels to

process grade appeals and incomplete grades where necessary. *See* emails Exhibit 12B.2, for

example, where former Keller National Dean, Dr. Oscar Gutierrez, approved Plaintiff's grade

appeal and authorized a change of grade for Plaintiff in 2016. *See* also email Exhibit 11A where

Dr. Henson-Mack approved Incomplete grade and advised Plaintiff to file a grade appeal.

499.     As a graduate student enrolled in a Masters degree program at DeVry University

and Keller Graduate School of Management since 2015, Plaintiff had a protected liberty interest

in his good name and reputation that is now tarnished by disciplinary sanctions on his record for

properly filing grade appeal and incomplete grade under the contractual provisions of the Student

Handbook and the Catalogs.

500.     For each of the above-stated reasons, Plaintiff was entitled to the protections of

the law during the June 2019 disciplinary proceedings that was unilaterally scheduled by

*Plaintiff's Complaint.*

Defendants and which resulted in adverse disciplinary sanctions that deprives or impairs of Plaintiff's constitutionally-protected property and liberty interests.

*501.* The University departed from its own policies and rules by formulating, implementing, and applying aberrant policies and procedures, which deprived Plaintiff of the right to a fair hearing by an impartial and unbiased tribunal because Plaintiff did not get a chance to cross-examine Defendants Deb Koffman, Megan Michelich, and Kristine Kearney; thereby denying fundamental fairness to Plaintiff.

*502.* Defendants forced Plaintiff to undergo disciplinary proceedings which denied Plaintiff fundamental fairness in the following manner:

a) Plaintiff did not receive adequate notice of the nature of the charges against him and the evidence to be presented. Indeed, during the June 2019 hearing, the Panelists were confused about exactly what was the conduct charge against Plaintiff.

b) Plaintiff was not afforded adequate opportunity to prepare to meet the June 2019 conduct charges even after he informed Defendant Agresta that he was sick and so he cannot effectively represent himself for the June 20, 2019 hearing. Plaintiff's request for continuance was denied. *See* Exhibit 2B at pp.11-13 for email dated June 20, 2019 at 11:48 AM.

c) Plaintiff had no right of confrontation to his alleged accusers, in particular Defendants Koffman, Mihelich, and Kearney, who failed to attend the June 2019 conduct hearing by internet or phone.

d) The University failed to provide a proper hearing within a proper forum without barriers to communication such as a physical hearing at any of its many local campuses.

*Plaintiff's Complaint.*

e) Plaintiff was judged by Defendant Agresta who not only had personal knowledge of Plaintiff and of the facts of his case, but also, Defendant Agresta demonstrated the following: (i) Agresta displayed extreme animosity toward Plaintiff for saying that he would sue the University; (ii) Agresta recommended Plaintiff's disciplinary action on the basis of alleged independent "research" to which he gave no testimony during the disciplinary phase of the hearing; (iii ) Agresta recommended Plaintiff's disciplinary action over conduct for which Plaintiff was not being subjected to disciplinary proceedings, without offering testimony for which he would have been subject to cross-examination to support the commission of such conduct; (vi) Agresta recommended disciplinary action against Plaintiff for conduct that clearly falls within the realm of constitutionally-protected speech under New Jersey State Law; (vii) Agresta recommended disciplinary action against Plaintiff for conduct that violated no provision of the Student Code of Conduct or any other positive enactment; (viii) Agresta recommended disciplinary action against Plaintiff for conduct for which Plaintiff was not charged such as fling grade appeals ; (ix) Agresta recommended adverse disciplinary action against Plaintiff for alleged past conduct by Plaintiff for which Plaintiff had never previously been criticized or subjected to disciplinary proceedings and as to which no reasonable evidence was presented at the hearing such as filing grade appeals and Incomplete grades.

*503.*    As a direct and proximate result of Defendants' unlawful conduct as described herein, Plaintiff has suffered, and continues to suffer, irreparable injury which cannot be fully compensated by an award of monetary damages for which Plaintiff is entitled to preliminary and permanent injunctive relief as well as damages in an amount to be determined by the Court and reasonable costs of this lawsuit, including reasonable attorneys' fees.

*Plaintiff's Complaint.*

504.     As a further direct and proximate result of Defendants' unlawful conduct as described herein, Plaintiff has been caused and will continue indefinitely into the future to be caused severe mental anguish, humiliation, anxiety, stress, and emotional and/or psychological distress, all with associated physical symptoms.

505.     WHEREFORE, Plaintiff Michael O Livingstone demands judgment against Defendants DeVry University, Keller Graduate School of Management, Adtalem Global Education, Inc., named in the caption of this instant complaint jointly, severally and/or severally, for compensatory and punitive damages in an amount in excess of $3 million exclusive of interest and costs; preliminary, declaratory, and injunctive relief Order to vacate and expunge both the June 2019 and November 2019 disciplinary sanctions and records, an award of reasonable attorneys' fees, costs and other costs and disbursements in this action; and such other and further relief as the Court may deem just and equitable.

## COUNT FOURTEEN

### TITLE IX OF THE EDUCATIONAL AMENDMENTS ACT OF 1972; BREACH OF CONTRACT
**(Michael O. Livingstone v. DeVry University; Keller Graduate School of Management; Adtalem Global Education Inc.)**

506.     Plaintiff incorporates herein by reference each and every one of the allegations contained in preceding paragraphs as though fully set forth at length herein.

507.     The conduct of Defendants, as set forth hereinabove constitutes conduct under color of law that deprived Plaintiff's rights in the manner described in the following paragraphs.

508.     DeVry University is required to publish grade appeal procedures.

*Plaintiff's Complaint.*

509.    The Provost or Chief Academic Officer of a University is the ultimate final arbiter of grade appeals in every University after lower Administrators have reviewed the grade appeal stepwise from the course instructor to faculty chairperson, to Dean, and then to the Provost.

510.    DeVry University has published Grade Appeal Procedures in its Student Handbooks and Catalogs at Pages 102-104, see https://www.devry.edu/d/Keller_Catalog.pdf

511.    In 2018, the University deliberately, intentionally failed to process and address Plaintiff's grade appeal Case No. 08314829, which Plaintiff formally filed with the University regarding the March 2017 session MIS 535 class. The University's Student support center assigned that grade appeal to Dr. Brent Ward and Dr. Virgil Mensah-Dartey.

512.    Plaintiff informed Dr. Mensah-Dartey that he needs a final decision letter from the University regarding the MIS 535 class grade appeal to show external accreditation boards that he has exhausted internal administrative remedies with the University so that the accreditation board can review the matter.

513.    To date, Plaintiff never received a formal decision letter regarding the MIS 535 class grade appeal from lower administrators or from the University's Provost, defendant Shantanu Bose.

514.    The University deliberately, maliciously, and intentionally failed to address Plaintiff's grade appeal Case No. 08878845 that Plaintiff formally filed with the University regarding the March 2019 session ACCT 504 class grade appeal was filed with the University and assigned by the Student Support Center to Dr. John MacCatherine who actually requested that Plaintiff should file a grade appeal (*See* Exhibit 3A, Page 1). Yet, as of this day, Plaintiff has received no formal decision letter about the grade appeal from Dr. MacCatherine or from the University's Provost (Defendant Bose).

*Plaintiff's Complaint.*

515.    Plaintiff believes and therefore avers that it was the same Defendant Agresta acting with extreme animosity against Plaintiff who conspired with Dr. MacCatherine to ignore Plaintiff's grade appeal Case No. 08878845 regarding the March 2019 ACCT 504 class, as evidenced by Defendant Agresta's mischaracterizations of Plaintiff filing of grade appeals as "past character incident" and "bad behavior" in the June 2019 conduct hearing packet. Defendant Agresta was aware that Plaintiff filed a grade appeal to Dr. MacCatherine.

516.    WHEREFORE, Plaintiff Michael O. Livingstone demands judgment against Defendants DeVry University, Keller Graduate School of Management, Adtalem Global Education, Inc., jointly, severally and/or severally, for compensatory and punitive damages in an amount in excess of $5 million exclusive of interest and costs; preliminary, declaratory, and injunctive relief enjoining Defendants to change Plaintiff's grades to straight "A" grades for which Plaintiff appealed in both 2017 MIS 535 class and March 2019 ACCT 504 class; an award of reasonable attorneys' fees, costs and other costs and disbursements in this action; and such other and further relief as the Court may deem just and equitable.

## COUNT FIFTEEN

### CHARACTER ASSASSINATION; DEFAMATION; FALSE LIGHT
### (Michael O. Livingstone v. DeVry University

### Keller Graduate School of Management; Jonathan Agresta)

517.    Plaintiff incorporates herein by reference each and every one of the allegations contained in preceding paragraphs as though fully set forth at length herein.

518.    At all times mentioned herein, Plaintiff was a law-abiding Citizen of the United States, the State of New Jersey, and a law-abiding graduate student of Defendant Keller Graduate

*Plaintiff's Complaint.*

School of Management who enjoyed the respect, confidence, and esteem of his neighbors, as well as all others in the community, and has never been guilty of any crime, offense, or violation of the law which would tend to lessen the respect, confidence, and esteem which he has enjoyed, and to which he was entitled.

519.     Defendant Agresta, knowing the facts set forth in the preceding paragraph concerning Plaintiff's reputation in the DeVry University community and with invidious intent to injure Plaintiff and bring him into public scandal and disgrace, knowingly and maliciously, or with reckless disregard for the truth or negligently and carelessly published or caused to be published the scandalous, defamatory, and libelous statements of, and concerning Plaintiff Livingstone.

520.     Specifically, Defendant Agresta stated this in the June 2019 conduct hearing packet as "past incidents of character reference" against Plaintiff Livingstone ( Ex.1A, page 2) that:

> "… there are multiple instances of this behavior, some of which can be seen below. With a thorough review of his academic history, the conduct administrator noted multiple repeated instances of grade appeal and incomplete requests (8 such cases on file) throughout his academic career." (Exhibit 1A, Page 3)

Defendant Agresta says it is a "past incident of character reference" and misbehavior that Plaintiff filed grade appeals and sought incomplete grades in some classes he completed at the University.

521.     Filing grade appeals and seeking incomplete grades is not misbehavior and it cannot be considered as "past incident of character reference."

522.     Grade appeals and incomplete grades are provided as part of the University's own procedures and policies in the University's own Catalogs

*Plaintiff's Complaint.*

https://www.devry.edu/d/Keller_Catalog.pdf, Pages 102-104, as well as the University's Student Handbook.

523.    The University's Catalog at Pages 102 & 104 contractually provides for Grade Appeals and Incomplete Grade procedures as required by the Education Amendments Act of 1972. See https://www.devry.edu/content/dam/devry_edu/d/Keller_Catalog.pdf. *See* also Exhibit 3C, Page 1 where DeVry's Asst. Dean, Dr. John MacCatherine, directs Plaintiff in an April 28, 2019 email to "file a grade appeal to me" over the ACCT 504 class. If indeed filing grade appeals is misbehavior, then the University's own administrator, Asst. Dean Dr. John MacCatherine told Plaintiff to misbehave.

524.    Throughout Plaintiff's academic work at the University since 2015, there are times when some DeVry Course instructors themselves assigned incomplete grades to Plaintiff to give themselves time to complete grading, for example.

525.    Plaintiff avers that it is within his right under Higher Education Law for Plaintiff to request for incomplete grade when Plaintiff was sick around the end of a class. That cannot be construed as misbehavior or bad character reference.

526.    By describing Plaintiff's grade appeals and incomplete grades as "bad character incidents," defendant Agresta should be held liable for assassinating Plaintiff's character.

527.    The aforementioned statements of Defendant Agresta contained in the written communications in i emails Exhibit 1A, pp.2-3 and described above are entirely false insofar as they reflect upon Plaintiff's conduct as well as his character and reputation because filing grade appeal and seeking incomplete grades is not misbehavior or bad character. Defendant Agresta knew that the statements contained in the written communication identified and described above were false when made and published them either intentionally and maliciously, or with reckless

disregard for their truth or falsity, or negligently and carelessly to assassinate and injure the character of Plaintiff.

528.    The false statements contained within the written communication identified and described above applied to Plaintiff Livingstone and was understood by recipients of the statements to have a defamatory meaning against Plaintiff's good character.

529.    To the extent Defendants may attempt to assert in their own defense the privileged character of the occasion on which the false and defamatory statements were published, any such conditional privilege was abused by Defendants and thereby waived and forfeited.

530.    The aforementioned false and defamatory statement maliciously, intentionally, recklessly, and falsely, by words, innuendo, inference and manner in which they were presented holds Livingstone out to public scorn and ridicule and attributes irresponsible conduct to Livingstone.

531.    The aforementioned false and defamatory statements were in no manner privileged nor constitutes fair comment on matters of public concern or interest.

532.    The aforementioned false and defamatory statements were published with knowledge that said statements; innuendo, inference and manner in which they were presented were false and/or with reckless disregard for whether said material was false or constitutes actual malice with intent to injure Livingstone.

533.    The statements and implications set forth above constitute defamatory publications that are actionable *per se* and were published with actual malice.

534.    The above statement has severely injured and caused special harm to Plaintiff Livingstone in that they have tended to (a) blacken his reputation; (b) expose him to hatred,

*Plaintiff's Complaint.*

contempt, ridicule, and humiliation; and (c) ascribe to him characteristics incompatible with the proper conduct expected of a law abiding and trustworthy citizen.

*535.* The publication of the false and defamatory statements contained in the written communications identified and described above and other similar false and defamatory statements of which Livingstone is not yet aware may have been and may continue to be republished, and so Plaintiff Livingstone demands presumed, compensatory, economic and punitive damages for the harm flowing from any and all such republications of the false and defamatory statements in addition to damages for the harm flowing from their initial publication.

*536.* As a direct and proximate result of the intentional, malicious, reckless, negligent and/or careless statements and charges contained in the written communications identified and described above and their publication to third parties, Plaintiff's reputation and esteem in the community has been adversely affected.

*537.* As a further direct and proximate result of Defendants' unlawful conduct as described herein, Livingstone has suffered, and continues to suffer, irreparable injury which cannot be fully compensated by an award of monetary damages for which Livingstone is entitled to preliminary and permanent injunctive relief as well as damages in an amount to be determined by the Court and reasonable costs of this lawsuit, including reasonable attorneys' fees.

*538.* As a further direct and proximate result of Defendants' unlawful conduct as described herein, Plaintiff Livingstone has been caused and will continue indefinitely into the future to be caused severe mental anguish, humiliation, anxiety, stress, and emotional and/or psychological distress, all with associated physical symptoms.

*539.* WHEREFORE, Plaintiff Michael O. Livingstone demands judgment against all Defendants named in the caption of this instant complaint jointly, severally and/or severally, for

*Plaintiff's Complaint.*

compensatory and punitive damages in an amount in excess of $300,000, exclusive of interest and costs; preliminary, declaratory, and permanent injunctive relief; an award of reasonable attorneys' fees, costs and other costs and disbursements in this action; and such other and further relief as the Court may deem just and equitable.

## COUNT SIXTEEN

### INVASION OF PRIVACY

**(Michael O. Livingstone v. Jonathan Agresta; DeVry University; Keller Graduate School of Management; Adtalem)**

*540.*     Plaintiff incorporates herein by reference each and every one of the allegations contained in preceding paragraphs as though fully set forth at length herein.

*541.*     The conduct of Defendants, as set forth hereinabove constitutes conduct which deprived Plaintiff's rights in the manner described in the following paragraphs:

*542.*     Defendant Agresta has never been Plaintiff's Course Instructor in any of the many classes Plaintiff has completed at Defendant DeVry University and its Keller graduate School Of Management since 2015.

*543.*     Plaintiff believes and therefore aver that Defendant Agresta was motivated by retaliatory animus and deep-seated antagonism against Plaintiff's assertions to sue the University. So, Defendant Agresta impermissibly accessed Plaintiff's official DeVry email account to find any emails at all that he could use against Plaintiff as conduct violation.

*544.*      Without Plaintiff's permission, without Course Instructors' permission, and without any conduct violation complaint from the original recipients of emails, in June 2019, Defendant Agresta impermissibly accessed Plaintiff's official DeVry email account to find any emails at all that he can use to injure Plaintiff for conduct violation.

*Plaintiff's Complaint.*

545. Specifically, in June 2019, Defendant Agresta impermissibly went into Plaintiff's DeVry student email account and retrieved past 2017 emails between Dr. Mensah-Dartey and Dr. Mapp and cited it in the June 2019 conduct packet and referenced it as "past incident of character references" against Plaintiff (Exhibit 1A, p.3).

546. Plaintiff has attached herewith the actual email thread and its responses as "Exhibit 2A." None of these identified emails show any bad character against Plaintiff under Article III of the Student Code of Conduct. They contain Plaintiff's assertions of his rights.

547. No part of these identified emails (Exhibit 2A) were reported in 2017 as misconduct or bad character by the true recipients of that email (i.e. Dr. Mapp, and Dr. Mensah – Dartey, of DeVry University).

548. No part of those emails (Exhibit 2A) constitutes misconduct or bad character.

549. None of the original recipients of those emails (i.e. Dr. Mapp and Dr. Mensah – Dartey of DeVry University) reported those emails as misconduct in 2017 or thereafter when they received it.

550. None of the original recipients of the identified emails in 2017 were aware that those emails were being used against Plaintiff at a code of conduct violation hearing in June 2019.

551. To the extent that Defendant Agresta may argue that anybody can file a code of conduct violation complaint against anybody at the University, it does not fall within the province of Defendant Agresta to take anybody's conflict unto himself whereas the original recipients of those emails in 2017 are equally able people who could file their own conduct complaint against Plaintiff if those emails was problematically misconduct in-fact the recipients.

*Plaintiff's Complaint.*

552. To the extent that Defendant Agresta may argue that he can also file a code of conduct complaint against anybody at all in the University, given his official capacity as a Student Code of Conduct Administrator, he cannot do that because Defendant Agresta is supposed to be an impartial and neutral arbiter of the student conduct code, not a Complainant on behalf of any capable person in the University who can make their report.

553. As a direct and proximate result of the Defendant's disruptive, malicious activity, and invasion into Plaintiff's student email account, Plaintiff feels invaded and insecure to use his DeVry Student email account anymore. This has created a hostile educational environment for Plaintiff. Plaintiff has been severely injured with special harm.

554. As a further direct and proximate result of the intentional, malicious, reckless, negligent and/or careless invasion into Plaintiff's student email account, Plaintiff now feels he exists and operates in a hostile educational environment where his email communications with administrators and faculty will be invaded and used against him with abuse of power.

555. WHEREFORE, Plaintiff Michael O. Livingstone demands judgment against defendants Jonathan Agresta, DeVry University, Keller Graduate School Of Management jointly, severally and/or severally, for compensatory and punitive damages in an amount in excess of $500,000, exclusive of interest and costs; preliminary, declaratory, and permanent injunctive relief to vacate and expunge the June 2019 disciplinary record; an award of reasonable attorneys' fees, costs and other costs and disbursements in this action; and such other and further relief as the Court may deem just and equitable.

*Plaintiff's Complaint.*

## COUNT SEVENTEEN

### ACADEMIC FREEDOM;
### FIRST AMENDMENT FREE SPEECH UNDER N. J. CONSTITUTION

### (Michael O. Livingstone v. Jonathan Agresta; DeVry; Keller; Adtalem)

*556.* Plaintiff incorporates herein by reference each and every one of the allegations contained in preceding paragraphs as though fully set forth at length herein.

*557.* The conduct of Defendants, as set forth hereinabove constitutes conduct which deprived Plaintiff's rights to academic freedom in the manner described in the following paragraphs:

*558.* Although defendant DeVry University and its Keller Graduate School of Management is a private University, the University has published in its Catalogs and Handbooks that it provides Academic Freedom and freedom of expression to students and members of the community. *See* Page 136 of the 2019-2020 Keller Academic Catalog [14] stating this:

> …**Academic Freedom**
> DeVry University supports development of autonomous thought and respect for others' ideas. As such, members of the DeVry community, including students and faculty, should feel free to discuss their questions and express their opinions both publicly and privately…

*559.* Plaintiff believes and therefore avers that all the contents of his email communications (Exhibits 1A; 3I) that formed the basis of the June 2019 disciplinary proceedings and sanctions falls within the protected boundaries of academic freedom and freedom of speech.

*560.* During the June 2019 disciplinary proceedings, the University took issue especially with email Exhibit 3I that was copied to the Provost although Plaintiff only expressed

---

[14]     https://www.devry.edu/d/Keller_Catalog.pdf

*Plaintiff's Complaint.*

"academic concerns" about Pearson Publisher's MAL software that was being used in the ACCT 504 March session class, for example, without making any true threats of physical violence at all.

561.    None of the email exhibits contained within the June 2019 disciplinary hearing packet presents any actionable true threat of physical violence or actionable intimidation of physical harm under the First Amendment's speech clause against Article III of the University's Student Code of Conduct. (*See* Exhibits B, 3H, 4C, 2C, 3A, 3B, 3G, 4B, 2A, C, 3I, 3E, 3F, 1A, 3D, 3C).

562.    None of Plaintiff's email communications that were also contained in the October -November 2019 disciplinary hearing package (Exhibits 8A-8M) falls outside the boundaries of academic freedom and freedom of speech at all.

563.    By subjecting Plaintiff to adverse disciplinary proceedings and sanctions in June 2019 for copying the University's Chief Academic Officer or Provost (defendant Shantanu Bose) on that email (Exhibits 1A; 3I) containing communications that are purely within the boundaries of academic freedom and academic concerns without making any true threats of violence, this Court should conclude that Defendants have deprived Plaintiff of his right to academic freedom and freedom of speech.

564.    Plaintiff avers that Defendant Agresta deprived Plaintiff of his right to freedom of expression by way of "content discrimination" when defendant Agresta failed to act as a neutral code administrator to pass-on Plaintiff's apology letter (Exhibit 3E) in June 2019. Defendant Agresta claimed in an email within Exhibits 1A, Page 2 and Exhibit 2B that Plaintiff's apology letter (Ex.3E) does not sound good to his ears.

*Plaintiff's Complaint.*

565. The Student Handbook procedures for disciplinary action only requires the code administrator to pass-on the apology letter to the complainants and use it to mediate between the parties, not to pass judgment upon it.

566. Defendants deprived Plaintiff of his right to freedom of expression under the First Amendment by discriminating against Plaintiff on the basis of the points of view expressed in the content of his protected speech within the June 2019 conduct hearing packet and November 2019 conduct hearing packet.

567. As a direct and proximate result of Defendants' unlawful conduct as described herein, Plaintiff Michael O. Livingstone was deprived of his New Jersey constitutional rights and Plaintiff has otherwise sustained legal injury.

568. As a further direct and proximate result of Defendants' unlawful conduct as described herein, Plaintiff was caused to suffer other, non-economic losses, all to Plaintiff's great financial, psychological, and emotional detriment and loss.

569. WHEREFORE, Plaintiff Michael O. Livingstone demands judgment against all Defendants named in the caption of this instant complaint jointly, severally and/or severally, for compensatory and punitive damages in an amount in excess of $300,000, exclusive of interest and costs; preliminary, declaratory, and permanent injunctive relief to vacate, stay, remove the disciplinary records; an award of reasonable Attorneys' fees, costs and other costs and disbursements in this action; and such other and further relief as the Court may deem just and equitable.

*Plaintiff's Complaint.*

## COUNT EIGHTEEN

### CONSUMER FRAUD ACT (Federal and State Law) ;
### 20 U.S. Code § 1015b (Textbook)

### (Michael O. Livingstone v. Defendants DeVry; Keller; Adtalem)

*570.*    Plaintiff incorporates herein by reference each and every one of the allegations contained in preceding paragraphs as though fully set forth at length herein.

*571.*    The conduct of Defendants, as set forth hereinabove, constitutes conduct which deprived Plaintiff's rights in the manner described in the following paragraphs:

*572.*    Around 2015, the University maintained a policy that imposed mandatory electronic textbook upon all students for every class for mandatory fees payable to the University.

*573.*    Effective July 2016, the University promulgated a new policy to give students the option to decline the mandatory electronic textbook and acquire the textbook elsewhere for classes (*see* Exhibit 5A).

*574.*    Plaintiff enrolled in the online graduate class "ENTR 550" - Entrepreneurial Marketing for the May 2019 Session that run between May 6, 2019 - June 29, 2019 at the University.

*575.*    ENTR 550 required a mandatory Textbook.

*576.*    Plaintiff declined the University's eBook option so that he can use the money to buy his own colored hardcopy textbook for the class.

*577.*    When Plaintiff declined the mandatory electronic textbook option for the ENTR 550 Class, this resulted in a $30 credit balance on Plaintiff's student account and the University

*Plaintiff's Complaint.*

notified Plaintiff by email dated Jun 7, 2019, 10:08 AM that Plaintiff's billing statement reflects the $30 credit balance.

578.    When Plaintiff waited for a number of days and the University still did not issue a refund of the $30 credit balance on their own for Plaintiff to purchase his own textbook for the ENTR 550 class, on June 13, 2019, Plaintiff contacted DeVry Central Student Support Center by telephone to tell them to release the $30 refund for him to buy his own textbook for the ongoing ENTR 550 class.

579.    Defendant Koffman was the first person to pick up the Phone to verify Plaintiff's student information and transferred it to Defendant Kristine Kearney. (It is part of the DeVry Central Student Support Center telephone practices that someone else first answers the caller and then transfer the call to a Student Support Adviser and the financial aid department.

580.    Defendant Kearney started contending with Plaintiff arguing that although Plaintiff has a credit balance of $30 stemming from his decline to purchase the University's electronic textbook for the ENTR 550 class, it is the University's practice to carry over such credit balance to the next session.

581.    Plaintiff argued that he is the one who determines what to do with his money, not the University, and so the University should not have applied the $30 credit balance towards the next session of school for their financial gain without Plaintiff's authorization.

582.    Plaintiff  argued that every 8-week session of each semester at the University has its own class and its own book and its own bill. Hence, every session's $30 textbook credit balance should be refunded automatically to Plaintiff if he declines to buy the University's own textbook.

*Plaintiff's Complaint.*

583.    Plaintiff argued that he declined the University's electronic textbook option so that he can use the $30 to buy his own textbook from elsewhere and so it is wrong for Defendant Kearney to carry over the $30 money on her own prerogative for the gains of the University instead of Plaintiff whereas Plaintiff expected the money to buy his own textbook for the class.

584.    Plaintiff stated that he is a recipient of federal student financial aid that has been disbursed and applied to the July 2019 session for the ENTR 550 class. Title IV of the Higher Education Act ( HEA) is what governs what to do with credit balances on student accounts of federal student financial aid recipients, not the University's personal interest or practices.

585.    Plaintiff argued that Title IV of the HEA does not permit participating Universities like DeVry to do whatever it wants with student refunds or to carry it over to another session's bill without the student's authorization first.

586.    Plaintiff argued that it will be different if the $30 credit balance resulted from DeVry's own funds. However, the $30 credit balance did not stem from DeVry money or DeVry scholarship, but rather, Plaintiff's own student loan, and so DeVry does not have a right to keep it or carry over the money to another session without student's prior authorization.

587.    Plaintiff demanded that his $30 credit balance should be refunded for him to buy his own required textbook for the ongoing ENTR 550 class. Plaintiff asserted that he will sue the University for holding his money.

588.    Plaintiff added that he would sue the University if the University ever holds back or carries his $30 stemming from his decline to purchase the University's version of textbooks instead of purchasing his own from somewhere else.

589.    Whereupon, Defendant Kearney obliged to refund the $30 credit balance to Plaintiff and by email dated Jun 14, 2019, 3:54 PM.

*Plaintiff's Complaint.*

590.     The University notified Plaintiff that the $30 credit balance payment has been issued to Plaintiff.

591.     To Plaintiff's surprise, between June 13-14, 2019, Defendant Agresta notified Plaintiff that he has received a June 13, 2019 complaint from Defendant Kristine Kearney seeking disciplinary action against Plaintiff regarding Plaintiff's prior June 13, 2019 telephone interaction over the $30 credit balance. *See* Page 2 of Exhibit 1A showing the statement of Defendant Kearney about the June 13, 2019 phone call interaction.

592.     When Plaintiff called Defendant Agresta on June 13, 2019 to follow up, Defendant Agresta expressed strong disdain to the fact Plaintiff has asserted that "he would sue Keller."

593.     Plaintiff affirmed to Defendant Agresta that he was not disrespectful to Defendant Kearney, but rather, Plaintiff has a right to say he would sue Keller for redress of his grievances, and that is not misconduct for disciplinary action because the right to petition is a constitutional right.

594.     Defendant Agresta urged Plaintiff to apologize. Plaintiff said he can apologize as a Courtesy only for any misconception of disrespect without admitting any fault because he has not violated the code for saying that he would sue Keller for mishandling his money because that is within Plaintiff's constitutional right to assert his right to petition.

595.     Without admitting fault, Plaintiff wrote an apology letter (Exhibit 3E) for purposes of mediation only under the student handbook code of conduct process and for Defendant Agresta to pass it on to Defendant Kearney to drop the matter. See Page 16, at No.2 of the Student Handbook, https://www.devry.edu/d/student-handbook.pdf, providing that:

> …Once charges have been filed, the conduct administrator will investigate to determine if charges have merit and/or if they can be resolved by

*Plaintiff's Complaint.*

> mutual consent of the complainant and the respondent on a basis
> acceptable to the conduct administrator (such as mediation)…

596.     Defendant Agresta declined to perform the mediation duties provided under the code of conduct procedures of the University's student handbook because he claims he did not like the content of the apology letter ( Ex.1A, p.2), perhaps because Plaintiff did not apologize for saying that he would sue Keller. Defendant Agresta attached Plaintiff's apology letter to the Zip file contained in the hearing packet, which is now attached herewith as Exhibit 3E.

597.     Plaintiff asked Defendant Agresta to produce a copy of June 13, 2019 telephone interaction he had with Defendant Kearney so that Defendant Agresta and the hearing panel can hear exactly what was said for themselves to determine whether Plaintiff was disrespectful or not (Exhibit 5C, page 2). However, Defendant Agresta claims he does not have the recorded telephone conversation.

598.     The disciplinary hearing took place and Defendant Agresta did not have the attendance of Defendant Kearney and the telephone conversation at issue for credibility. Yet, he proceeded.

599.     The foregoing shows that Plaintiff was subjected to adverse disciplinary action for challenging the University's attempt to keep his $30 credit balance after Plaintiff declined to purchase the University's own version of the textbook for ENTR 550 class and for demanding a refund of his $30 credit balance to buy his own book.

600.     It is within Plaintiff's province to demand his credit balance and to stand up against misuse of his money at the University.

601.     By attempting to keep the $30 credit balance for themselves stemming from Plaintiff's decline to buy the mandatory textbook directly from the University, Plaintiff alleges that Defendants violated the Consumer Fraud Act and 20 U.S. Code § 1015b.

*Plaintiff's Complaint.*

602.    To the extent that the June 2019 disciplinary proceedings stem from that June 13 telephone interaction between Defendant Kearney and Plaintiff over the University's own perfunctory and malicious attempt to keep Plaintiff's $30 credit balance for declining to buy the textbook from the University, Plaintiff pleads that this Court should hold the University liable and vacate the sanction.

603.    WHEREFORE, Plaintiff Michael O. Livingstone demands judgment against Defendants Adtalem, DeVry University, Keller Graduate School Of Management; Board of Trustees named in this instant complaint jointly, severally and/or severally, for compensatory and punitive damages in an amount in excess of $ 2million exclusive of interest and costs; preliminary, declaratory, and permanent injunctive relief to vacate and remove the June 2019 disciplinary records; an award of reasonable Attorneys' fees, costs and other costs and disbursements in this action; and such other and further relief as the Court may deem just and equitable.


## COUNT NINETEEN

### STATUTORY NEGLIGENCE
### (Michael O. Livingstone v. Defendants DeVry; Keller)

604.    Plaintiff incorporates herein by reference each and every one of the allegations contained in preceding paragraphs as though fully set forth at length herein.

605.    The conduct of Defendants, as set forth hereinabove, constitutes conduct which deprived Plaintiff's rights in the manner described in the following paragraphs:

606.    Plaintiff is not bringing a private right of action under Title IV of the Higher Education Act ("HEA") here, . Instead, Plaintiff is pointing this Court to the statute under which Defendants have been negligent as Title IV of the HEA.

*Plaintiff's Complaint.*

607.    The University policy is clear that students can decline to buy the mandatory course textbook from the University for their classes. This resulted in $30 credit balance on Plaintiff's account from Plaintiff's federal student financial aid.

608.    Plaintiff avers that Title IV of HEA statute guidelines governs how a University should handle credit balances on student accounts, not the University's own choice.

609.    Notwithstanding the statutory imperatives of Title IV of HEA for participating Universities to get the permission of the student borrower to carryover credit balances, DeVry attempted and argued that they determine what to do with student's money to apply it to the next session's bill.

610.    Plaintiff avers that this was negligent practice and this negligent practice was the root cause of the in June 13, 2019 telephone interaction with Defendant Kearney, which in turn resulted in disciplinary action to Plaintiff's detriment.

611.    Plaintiff complains for this Court to hold the University liable for statutory negligence. Just as the University needs money on time, Student also need their money on time. Here, the University was intentionally keeping the $30 whereas Student also needed it to buy his own textbook.

612.    WHEREFORE, Plaintiff Michael O. Livingstone demands judgment against Defendants Adtalem, DeVry University, Keller Graduate School Of Management; Board of Trustees named in this instant complaint jointly, severally and/or severally, for compensatory and punitive damages in an amount in excess of $150,000, exclusive of interest and costs; preliminary, declaratory, and permanent injunctive relief to vacate and expunge and remove the June 2019 disciplinary record; an award of reasonable Attorneys' fees, costs and other costs and

*Plaintiff's Complaint.*

disbursements in this action; and such other and further relief as the Court may deem just and equitable.

## COUNT TWENTY

**Title IX of Education Amendments Act of 1972;**
**Consumer Fraud;**
**Detrimental Reliance;**
**Constructive Trust;**
**20 U.S. Code § 1015b**

**(Michael O. Livingstone v. Defendants DeVry ;Keller; Board Of Trustees Of DeVry University; Online Bookstore)**

*613.* Plaintiff incorporates herein by reference each and every one of the allegations contained in preceding paragraphs as though fully set forth at length herein.

*614.* Plaintiff enrolled and completed the graduate level online class, Financial Accounting ACCT 504-16107 in May 2016 session at DeVry University and its Keller Graduate School of Management DeVry University.

*615.* ACCT 504-16107 was an eight-week graduate level online class from May 2, 2016 - June 26, 2016.

*616.* Ms. Malinda Marsh was the Course Instructor for ACCT 504-16107, May 2016 session.

*617.* Ms. Malinda Marsh did not provide any lecture to explain the course material from expertise to perform her paid tuition duties. Instead, Ms. Marsh relied upon online student discussions as tuition.

*618.* Plaintiff alleged that he has been ripped-off his tuition money because he paid tuition to be taught from the expert knowledge of the course instructor, not amateur students.

*619.* The Textbook for that ACCT 504 May 2016 session class was mandatory.

*Plaintiff's Complaint.*

*620.* It was also mandatory at that time for students to purchase that required textbook from the University's online Bookstore only.

*621.* The required electronic textbook was available online. Students who preferred a hardcopy version could order a black-and-white print-on-demand hardcopy from the University's Bookstore for additional fee.

*622.* Plaintiff does not read electronic textbooks on computer screens due to eye problems when he sustains his eyes to computer screens, but rather, Plaintiff reads hard copies.

*623.* Plaintiff ordered the print-on-demand hardcopy of the mandatory online textbook for the ACCT 504 May 2016 session class.

*624.* The University updated the Textbook to a newer edition during the first few weeks of that May 2016 session ACCT 504 class.

*625.* The University's online Bookstore sent the outdated version of the Textbook when Plaintiff purchased the print-on-demand hard copy.

*626.* The University's online bookstore never sent the corrected version when Plaintiff brought this to their attention (*See* generally attached Exhibit 5B for email thread correspondence with the Bookstore.)

*627.* Plaintiff did not succeed in that ACCT 504 May 2016 session class.

*628.* Having exhausted remedies with the course instructor, by email dated July 5, 2016, at 2:20 PM, Plaintiff filed a timely formal grade appeal in the form of an electronic Memorandum to the *then*-Senior National Dean of DeVry's College of Business and Management, Oscar Gutierrez, PhD, cc'd to his Assistant National Dean, Mike Wasson.

*629.* Plaintiff brought up the discrepancy with the wrong textbook in Page 8 of his July 5, 2016 Memorandum grade appeal *inter alia* stating this:

*Plaintiff's Complaint.*

"…Wrong or outdated Textbook Edition was sent by the mandatory Print On Demand at the time; thus student was unbeknownst studying wrong information in the course."

630.    Without explanation, by email dated Wed, July 6, 2016 at 2:43 PM, Mike Wasson, who was DeVry University's then-National Associate Dean for the College of Business & Management issued an arbitrary decision that failed to address the discrepancy with the textbook:

> Hi Michael – I wanted to get back to you as soon as possible. After reviewing your case and all the documentation DeVry University is denying your appeal to change the grade in your ACCT504 course. I recommend that you retake the course.

631.    In his capacity as Associate National Dean, Mike Wasson is not the final arbiter of grade appeals, but rather, the Provost for Academic Affairs is the final arbiter of grade appeal in every University.

632.    Plaintiff informed Mike Wasson and Dr. Gutierrez that he would further appeal the grade to the Provost of the University to exhaust all internal remedies.

633.    Whereupon, the grade appeal against that ACCT 504 class was assigned to Ms. Kelly Day, Academic Affairs Specialist, to coordinate the grade appeal process or to act as Ombudsman for further appeal to the University's Provost for Academic Affairs. (Exhibit 16A)

634.    By emails, Ms. Kelly Day initially informed Plaintiff that there would be a hearing regarding the grade appeal whereby faculty members will also hear and review the matter as required by grade appeal due process. However, without explanation, Ms. Kelly Day later informed Plaintiff that there would be no hearing. (Exhibit 16A)

635.    By email dated July 7, 2016, 12:05 PM, Ms. Kelly Day and Plaintiff submitted the grade appeal to Donna Rekau, Ph.D., who was DeVry University's then-Interim Vice President, Academic Affairs/Provost (Exhibit 16A).

*Plaintiff's Complaint.*

*636.*    By email letter dated July 20, 2016, Dr. Donna Rekau addressed the grade appeal without addressing Plaintiff's issue pertaining to the discrepancy involving the wrong Textbook that was sent to Plaintiff by the University's Bookstore.

*637.*    Whereas a Provost for Academic Affairs is the ultimate arbiter of grade appeals in every University under the mandates of Title IX of Education Amendments Act of 1972 and Higher Education Law, Plaintiff has exhausted all internal administrative remedies with DeVry University. So, Plaintiff has standing to bring this matter before this Court for compliance involving the May 2016 session ACCT 504 class.

*638.*    Plaintiff repeated the ACCT 504 class in March 2019 session and this time Plaintiff received an A- final grade when the correct textbook for that same class was sent to him in 2019.

*639.*    Defendant DeVry University online Bookstore, on their part, addressed the previous 2016 discrepancy with the ACCT 504 Textbook by declining to charge Plaintiff for it again when Plaintiff repeated the class in 2019. *See* generally Exhibit 5B.

*640.*    The conduct of Defendants, as set forth hereinabove, constitutes conduct which deprived Plaintiff's rights in the manner described in the following paragraphs regarding the first ACCT 504 May 2016 class:

*641.*    The textbook was mandatory for the class and it was mandatory at the time for Plaintiff to purchase the textbook from DeVry University Bookstore only.

*642.*    Defendant DeVry University Online Bookstore ("Bookstore") initially sent the wrong textbook for that ACCT 504 May 2016 session class full of wrong information for the class at the time in 2016 (Exhibit 5B).

*Plaintiff's Complaint.*

*643.* Despite a number of follow-ups, the Bookstore ("Bookstore") never sent the correct textbook for Plaintiff to use for that 2016 ACCT 504 class thereby causing Plaintiff to use the wrong information for the class at the time in 2016. (Exhibit. 5B).

*644.* By sending Plaintiff the wrong textbook for the 2016 ACCT 504 class, Plaintiff was caused to use wrong information from the textbook to his detriment that directly and proximately caused Plaintiff's failure in the May 2016 ACCT 504 class (Exhibit 5B).

*645.* When Defendant DeVry University online Bookstore sent the correct textbook to Plaintiff in 2019 (Exhibit 5B) when Plaintiff repeated the same ACCT 504 class during the March 2019 session, Plaintiff succeeded with "A-" final grade. Consequently, Defendants should be held liable for detrimental reliance, Consumer Fraud, and 20 U.S. Code § 1015b.

*646.* The bad grade for the first ACCT 504 March 2016 class still stigmatizes Plaintiff's excellent academic record at DeVry.

*647.* As a graduate student and U.S. Citizen, Plaintiff has constitutionally-protected liberty interest and property interest in his academic record for which Plaintiff is entitled to due process of law regarding the grade appeal for the first ACCT 504 May 2016 session class.

*648.* DeVry University failed to provide fair grade appeal to Plaintiff in this manner (Exhibit 16A):

*649.* First, Ms. Kelly Day and DeVry did not provide due process grade appeal hearing by a panel of neutral faculty members to review Plaintiff's grade appeal at all despite her initial indication that she would summon a grade appeal hearing that includes faculty members and she would disclose their credentials (Exhibit 16A)

*650.* Second, then-Associate National Dean (Mike Wasson) and the Provost for Academic Affairs (Dr. Donna Rekau), who adjudicated Plaintiff's grade appeal at the time,