*Plaintiff's Complaint.*

intentionally and maliciously failed to address the discrepancy involving the wrong textbook which caused Plaintiff's failure in the class despite the fact that the textbook was imposed upon Plaintiff and Plaintiff was forced by the University to buy it directly from the University's bookstore (Exhibit 16A).

*651.*    Third, Ms. Marsh, the ACCT 504 May 2016 class session course instructor, did not teach the class. Plaintiff paid tuition money for expert tuition from the course instructor, not mere discussing positing by amateur students. Plaintiff avers that discussions with other students is not tuition and it does not substitute the duty to teach the course material by the course instructor. Peer Discussions only supplement and augment teaching. It does not replace the duty to teach.

*652.*    Defendants should be held liable because they are reprehensible for Plaintiff's failure in that ACCT 504 May 2016 session class inasmuch as defendants sent Plaintiff the wrong textbook that was not being used for the class.

*653.*    Plaintiff brings each of these COUNTS separately under this cause of action for the Court to enjoin defendants DeVry University and its Keller Graduate School Of Management to retroactively remove the ACCT 504 May 2016 class from Plaintiff's academic record and the associated tuition and costs should be returned to Plaintiff as Constructive Trust.

*654.*    WHEREFORE, Plaintiff Michael O. Livingstone demands judgment against all Defendants DeVry University and its Keller Graduate School Of Management; Board Of Trustees named in this instant complaint jointly, severally and/or severally, for compensatory and punitive damages in an amount in excess of $150,000 exclusive of interest and costs; preliminary, declaratory, and permanent injunctive relief to remove the March 2016 ACCT 504 class from his academic records; an award of reasonable Attorneys' fees, costs and other costs

*Plaintiff's Complaint.*

and disbursements in this action; and such other and further relief as the Court may deem just

and equitable.

## COUNT TWENTY ONE

1. **Title IX of Education Amendments Act of 1972;**
2. **Violation of Due Process (during Grade Appeal for MIS-535);**
3. **Consumer Fraud Act**

**(Michael O. Livingstone v. Gordon Jacobs; DeVry University; Keller Graduate
School of Management; Board of Trustees of DeVry University)**

655.     Plaintiff incorporates herein by reference each and every one of the allegations

contained in preceding paragraphs as though fully set forth at length herein.

656.     The conduct of Defendants, as set forth hereinabove, constitutes conduct which

deprived Plaintiff's rights in the manner described in the following paragraphs:

657.     The University and its defendant Board of Trustees failed to promulgate timelines

for the University's respondents at each level of the grade appeal procedures into the grade

appeal procedures in the University's academic Catalogs and Student Handbooks.

658.     Plaintiff enrolled and completed the graduate level online class called Managerial

Applications of Information Technology, MIS-535-62245 ("MIS 535") during the March 2017

session at Keller Graduate School of Management of DeVry University.

659.     The MIS-535 class was an accelerated eight-week online class between February

27, 2017 - April 23, 2017.

660.     The Course Instructor for that MIS-535 class was defendant Mr. Jacob Gordon

("defendant Gordon").

661.     Plaintiff observed that a wrongful "D+" final grade was posted for him by the

University Registrar, which was inconsistent with a "B" final grade on his grade book ledger in

the course page. (*See* within email thread Exhibit 16B).

*Plaintiff's Complaint.*

662.    Whereupon, by email dated April 30, 2017, 11:35 PM, Plaintiff brought this to the

attention of Defendant Gordon Jacob. (*See* within email thread Exhibit 16B).

663.    By reply email dated May 2, 2017, 12:42 AM, defendant Gordon expressed his

surprise and wrote this to Plaintiff:

> Michael, do you go by another name? There is no Michael Osei in the last MIS535 class - and no Michaels in the class received a grade of D. Regards, Rick

664.    Plaintiff explained that his legal name is Michael Osei Livingstone. Regardless, if

"No Michaels in the class received a grade of D" at all as defendant Gordon claimed, then a D+

grade should not have been posted for Plaintiff at all whether he is "Michael Osei" or "Michael

Osei Livingstone" because either way, Plaintiff's name starts with Michael. (*See* within email

thread Exhibit 16B).

665.    In a further email dated May 2, 2017, 1:03 AM, defendant Gordon wrote this to

Plaintiff:

> "…The course grade I submitted for you is a 'B'. I will try to contact the registrar or someone else at DeVry regarding a correction if it is not showing properly in your record. I may need your student number due to the name - please let me know
> J. R. (Rick) Gordon
> Visiting Professor
> DeVry University…"

666.    Whereupon the erroneous D+ grade was changed to a "B" grade.

667.    Consistent with the University Catalog's grade appeal timeline to submit grade

appeal to Course instructors by the beginning of the next 8-week session of School, by email

dated May 11, 2017, 10:50 AM, Plaintiff submitted a timely grade appeal to Defendant Gordon

that he is appealing the final grade for higher grade.

*Plaintiff's Complaint.*

668.    In reply email dated May 12, 2017, 12:33 PM, Defendant Gordon did not address any of the academic issues raised within in Plaintiff's grade appeal. Instead, defendant Gordon wrote that he has already solved the prior technical discrepancy with the grade whereby a D+ grade was erroneously posted for Plaintiff instead of the B grade, as he wrote this (*See* within email thread Exhibit 16B):

> "Michael, as I noted earlier, I turned in a grade change request for you. I do not know the timing of its acceptance, but I believe it will be processed sooner than later."

669.    Whereupon, Plaintiff stated to defendant Gordon that he is not appealing the technically- erroneous previously posted D+ grade that was already admitted by Defendant Gordon in cited May 2, 2017 emails above that it was a technical error and that "no Michaels in the class received a D+ at all."

670.    By further email dated May 15, 2017, 2:48 AM, Plaintiff asserted his right to appeal the grade and the duty of Defendant Gordon to comply with University policy and procedures to address the academic issues raised in his grade appeal.

671.    In that May 15, 2017 email, Plaintiff cited to Defendant Gordon the case of *Wozniak v. Conry*, 236 F.3d 888 (7th Cir.), *cert. denied,* 121 S.Ct. 2243 (2001) where the Court held that "No teacher has a fundamental right to hand in random or skewed grades…" Defendant Gordon ignored Plaintiff's grade appeal. (*See* within email thread Exhibit 16B).

672.    Having exhausted the MIS 535 grade appeal remedies directly with the course instructor, Plaintiff's next recourse under the DeVry grade appeal process was to file a formal grade appeal to the University.

*Plaintiff's Complaint.*

673. By email dated December 1, 2017, 11:38 PM to Dr. Virgil Mensah-Dartey,

DeVry University's Assistant Dean of Academic Excellence, South East Group, Plaintiff

indicated his intent to appeal the Grade to a Dean.

674. Having recovered from illness, on September 11, 2018, Plaintiff contacted the

DeVry University Student Central and discussed the matter with Dwone Ross Jr., Student

Support Advisor I, DeVry University, about moving the grade appeal forward.

675. By email dated September 11, 2018, 8:22 PM, Mr. Dwone Ross Jr., wrote this to

defendant Gordon and copied Plaintiff Livingstone on that email:

> Good evening Professor Gordon,
> My name is Dwone Ross Jr. and I'm a Student Support Advisor here with DeVry.
> I'm emailing you tonight regarding a student that you taught in your MIS 535 –
> 62245 course back in March 2017. Michael Livingstone…contacted us regarding
> the grade in this course showing as a B, when he believes that he earned an A in
> the course.
> Michael also did mention that back near the time that the course first ended, he
> was originally awarded a grade of D, which he spoke with you and he stated that
> you input that grade accidentally, and then updated that to the B that is now
> showing. Again, the student believes he earned an A in this class. This being the
> case, I have sent over a Grade Change form via DocuSign that we would like you
> to complete with either your approval or denial of updating the grade as well as a
> brief explanation as to why. All of this can be completed on the document. Feel
> free to reach out to me with any questions or concerns. I've also Cc'd the student
> on this email to make sure we are all on the same page.
> Thank you,
>
> Dwone Ross Jr.| *Student Support Advisor I*
> P 877.883.3879 | E drossjr@devry.edu
> 1200 E. Diehl Rd | Naperville, IL 60563 | devry.edu

676. Without copying Plaintiff, by email dated Wednesday, September 12, 2018 9:46

PM, Defendant Gordon replied directly to Mr. Dwone Ross stating the following:

> "Attached is the grade change form from 2017. The 'D' was not a mistake. I
> accepted a late major project report from the student and submitted the change to
> a 'B'.
> Regards, Rick "

*Plaintiff's Complaint.*

Mr. Dwone Ross forwarded this reply email directly to Plaintiff on Sep 13, 2018, 3:09 PM.

677.     Defendant Gordon misrepresented the grade because in his prior May 2, 2017 emails to Plaintiff cited above, the same defendant Gordon told Plaintiff that the D+ grade was technical error committed by the University Registrar because "no Michaels in the class received a 'D' grade at all" in the class. Yet, in his September 11, 2018 reply email to Dwone Ross, Defendant Gordon stated that the "D+" grade was not a mistake because he actually submitted that grade.

678.     Plaintiff replied by email dated Sep 13, 2018, 4:27 PM to Dwone Ross and cc'd defendant Gordon on it. Plaintiff briefed Dwone Ross about the prior May 2, 2017 email interaction regarding erroneous D + grade. (*See* within email thread Exhibit 16B).

679.     In that September 13, 2018 email, Plaintiff urged Dwone Ross to advise Defendant Gordon to copy Plaintiff on all his future correspondence regarding the grade appeal to promote transparency in the grade appeal process. (*See* within email thread Exhibit 16B).

680.     By email dated September 17, 2018, 10:40 AM, Plaintiff submitted a 5-page Memorandum with seven exhibits to Defendant Dr. Dartey-Mensah and cc'd defendant Gordon and Mr. Dwone Ross. (*See* within email thread Exhibit 16B).

681.     When Plaintiff did not hear from defendant Dr. Dartey-Mensah, on October 1, 2018, Plaintiff contacted the DeVry Central Student Support center to reach Mr. Ross again for the next steps forward. However, in his absence, another Student Support Adviser, Ms. Colleen Phelps, assisted Plaintiff.

682.     By email dated Monday, Oct 1, 2018, 4:25 PM sent through the DeVry Student support email system, i.e. DVU Online Student Finance dvuonlinesf@adtalem.com, Ms. Colleen Phelps, wrote this to Plaintiff(*See* within email thread Exhibit 16B):

*Plaintiff's Complaint.*

> Dear Michael,
>
> I am sorry you were not able to work out the grade dispute with your professor. As we discussed, you now have the option to file a formal grade appeal by submitting a request before Week 8 of the session following the course.
> Follow these steps to submit your grade appeal as soon as possible:
> > Log into the student portal at [my.devry.edu / my.keller.edu]
> > Select **Contact Us** on the left menu and click **Create Academic Case**
> > Click the **Cases** tab and click the **New Case** button
> > Select **DeVry & Keller Registrar Services** for the Department
> > Select **Grade Appeal** for the Request Detail
> > Fill in all of the information in the blank fields and click submit
> Note: By submitting a grade appeal, the entire body of your work for the class may be reviewed and your final grade has the potential to be raised, lowered or remain the same…

*683.* To the extent that anybody might claim that the formal grade appeal was time-barred because Plaintiff submitted it one-year after the class was over, this claim is misplaced as a matter of fact because Plaintiff started the grade appeal directly with the course instructor in 2017. Further, Mr. Dwone Ross and Ms. Colleen Phelps, speaking for the University, permitted Plaintiff to file the formal grade appeal in 2018.

*684.* Plaintiff filed his formal grade appeal to the University following the steps provided by Ms. Colleen Phelps and it was assigned a Case No. 08314829 at DeVry University.

*685.* By email dated October 11, 2018, 1:17 PM, Dr. Dartey-Mensah got back to Plaintiff's prior September 17, 2018 email *supra* and stated as follows:

> Hi Michael,
> Good to hear from you. Sorry for not getting back with a response earlier. I've been out of the country. I'll look into this and let you know as soon as possible.
> Regards,
> Virgil Mensah-Dartey, Ph.D. | *Assistant Dean of Academic Excellence, SE Group*
> P 404.270.2921 | VOIP 274.2921 | E vmensah-dartey@devry.edu

*Plaintiff's Complaint.*

1 W. Court Square | Decatur, GA 30030 | devry.edu

686.    By email dated October 16, 2018, 3:55 PM, Dr. Brent Ward wrote this to Plaintiff

that the grade appeal is assigned to him:

> Plaintiff Mike:
> My name is Brent Ward. I am a faculty chair and I handle student
> concerns like your grading concerns regarding MIS-535 from 2017.
> I am looking over your emails, and your course (just got access since it
> was before Canvas) and will keep you informed of the outcome.
> Thanks,
> Brent Ward, PhD
> Faculty Chair
> South East Group

687.    In a number of phone calls, Dr. Mensah-Dartey informed Plaintiff that Plaintiff's

grade appeal has been assigned to him.

688.    Plaintiff informed Dr. Mensah-Dartey that he needs written decision letter

addressing the issues in the memorandum he has submitted as grade appeal and if unfavorable

decision, then Plaintiff wants to appeal it to the external Accreditation Board, which requires

exhausting all internal administrative remedies at the University first.

689.    Dr. Mensah-Dartey called Plaintiff on the phone a number of times.

690.    In a January 5, 2019 phone call to Plaintiff, Dr. Mensah- Dartey calculated

Plaintiff's grade and observed that Plaintiff would get a final straight "A" grade for the class if

the 0/75 points for the only outstanding course project PowerPoint recording was submitted and

changed to 75/75 points.

691.    In a January 8, 2019 phone call, Dr. Mensah-Dartey asked Plaintiff to send him

evidence that Plaintiff in fact told Defendant Gordon that he was sick during the MIS 535 class.

By email dated Jan 7, 2019, 8:00 PM, Plaintiff sent the evidential email to Dr. Dartey-Mensah,

*Plaintiff's Complaint.*

which he replied: "Thanks, Michael! I'll continue to look into this and keep you updated." (*See* within email thread Exhibit 16B).

692.     During that January 8, 2019 phone call, Dr. Mensah-Dartey informed Plaintiff that he contacted defendant Gordon and he has sent him an email. Plaintiff objected on grounds of transparency and fair due process because Plaintiff previously advised that for transparency of procedures, Defendant Gordon should copy Plaintiff on all matters regarding the grade appeal because defendant Gordon falsified the grade in his prior May 2, 2017 emails to Plaintiff cited above unbeknownst to Plaintiff; the same defendant Gordon told Plaintiff that the D+ grade was technical error committed by the University Registrar because "no Michaels in the class received a D grade at all" in the class; yet, in his September 11, 2018 reply email to Dwone Ross, Defendant Gordon stated that the "D+" grade was not a mistake because he actually submitted that grade.

693.     In another January 8, 2019 telephone call, Dr. Mensah- Dartey told Plaintiff that the grade appeal has received a lot of visibility within the administration and administration has predetermined and instructed him to simply ignore Plaintiff and close the grade appeal without addressing it.

694.     Whereupon, Plaintiff asked Dr. Dartey-Mensah to give him a written decision letter in one week stating what he said on official DeVry letterhead so that Plaintiff can Appeal that letter to the Accreditation Board or to the Court. However, the decision letter was never written or sent to Plaintiff to date.

695.     After Plaintiff did not hear from Dr. Mensah- Dartey, Plaintiff sent email dated Jan 10, 2019, 5:37 PM to Dr. Mensah-Dartey cc'd to defendant Gordon and decried the unfair grade appeal procedures, lack of transparency, and expressed his regret.

*Plaintiff's Complaint.*

696.     In that January 10, 2019 email, Plaintiff finally requested written decision letter about the grade appeal to be sent to him in one week. However, DeVry never did that and so as of this day, the University has intentionally, maliciously, politically, and negligently chosen to ignore Plaintiff's grade appeal about MIS 535 all to Plaintiff's detriment.

697.     Whereas University Provosts are the Chief Academic Officers and final decision makers of grade appeals, to date, Dr. Mensah –Dartey never moved the grade appeal to the University Provost for review, the Provost never reviewed the MIS 535 grade appeal.

698.     Later, Dr. Mensah-Dartey told Plaintiff that the University says he should simply close the grade appeal without decision and if Plaintiff elects to sue, they have lawyers. Accordingly, the MIS 535 grade appeal was not adjudicated. It was ignored with bad-faith.

699.     The record shows that Plaintiff did his part to appeal the MIS 535 grade. Ultimately, the University did not give Plaintiff his due process grade appeal regarding MIS 535.

700.     As in Exhibit 16A, the final reviewer of a grade appeal should be the Provost or Chief Academic Officer of the University (Defendant Shantanu Bose). Yet, Dr. Mensah-Dartey failed to adjudicate the MIS 535 grade appeal and he also failed to refer it for final disposition by the Provost with letter from the provost like the one appended as the last page of Exhibit 16a.

701.     Plaintiff also brings this complaint for this Court to enjoin Defendants to publish into their grade appeal procedures timelines for the University's respondents to address grade appeals.

702.     The Keller Academic Catalog and the Student Handbook provides that grades can be changed retroactively any time before a student graduates. Accordingly, the MIS 535 grade can be changed.

*Plaintiff's Complaint.*

703.    WHEREFORE, Plaintiff Michael O. Livingstone demands judgment against

Defendants DeVry University, Adtalem Global Education Inc. and its Keller Graduate School of

Management; Board Of Trustees, jointly, severally and/or severally, for compensatory and

punitive damages in an amount in excess of $150,000 exclusive of interest and costs;

preliminary, declaratory, and permanent injunctive relief to enjoin defendants to issue the default

straight "A" Grade for MIS 535 class within 1-2 weeks of the Court's order; an award of

reasonable Attorneys' fees, costs and other costs and disbursements in this action; and such other

and further relief as the Court may deem just and equitable.


## COUNT TWENTY-TWO

### NEGLIGENT FAILURE TO ACT UPON ALLEGATIONS OF DISCRIMINATION

**(Michael O. Livingstone v. DeVry University; Keller Graduate School of Management; Adtalem)**

704.    Plaintiff incorporates herein by reference each and every one of the allegations

contained in preceding paragraphs as though fully set forth at length herein.

705.    The conduct of Defendants, as set forth hereinabove, constitutes conduct which

deprived Plaintiff's rights in the manner described in the following paragraphs:

706.    In a number of emails, Plaintiff informed Dr. Mensah-Dartey that he has suffered

invidious discriminatory animus, black stereotypes, and deep-seated antagonism from defendant

Gordon (example: emails dated Jan 8, 2019, 1:05 PM; and email dated Jan 10, 2019, 5:37 PM).

707.    Dr. Mensah-Dartey did not address Plaintiff's allegations of discrimination,

neither did he refer the discrimination claim in that grade appeal to the University's designated

*Plaintiff's Complaint.*

Officer in charge of investigating and addressing reports of racial discrimination at DeVry at least.

708.     Plaintiff avers that anti-discrimination laws require Universities that participate in federal student financial aid programs to investigate and take action against complaints or allegations of discrimination when a student alleges discrimination. Yet, this never happened and cannot happen now in apparent response to this suit.

709.     Defendant Agresta impermissibly went into Plaintiff's DeVry private student email account and saw Plaintiff's emails to Dr. Mensah-Dartey wherein Plaintiff asserts his right to complain to the OCR about the discrimination he believes he experienced from Defendant Gordon. Defendant Agresta also failed to act upon the allegations and rather submitted the emails within the June 2019 conduct packet without the knowledge of Dr. Mensah-Dartey.

710.     WHEREFORE, Plaintiff Michael O. Livingstone demands judgment against Defendants DeVry University, Adtalem Global Education Inc. and its Keller Graduate School of Management; Board Of Trustees, jointly, severally and/or severally, for compensatory and punitive damages in an amount in excess of $2 million exclusive of interest and costs; preliminary, declaratory, and permanent injunctive relief to enjoin defendants to issue the default straight "A" Grade for MIS 535 class within 1-2 weeks of the Court's order; an award of reasonable Attorneys' fees, costs and other costs and disbursements in this action; and such other and further relief as the Court may deem just and equitable.

*Plaintiff's Complaint.*

## COUNT TWENTY-THREE

**HIGHER EDUCATION LAW;
NEGLIGENT COURSE REGISTRATION PRACTICE**

**(Michael O. Livingstone v. Defendants DeVry, Adtalem, Keller, DeVry
University Board of Trustees; Shantanu Bose)**

*711.*    Plaintiff incorporates herein by reference each and every one of the allegations

contained in preceding paragraphs as though fully set forth at length herein.

*712.*    The conduct of Defendants, as set forth hereinabove, constitutes conduct which

deprived Plaintiff's rights in the manner described in the following paragraphs:

*713.*    Plaintiff enrolled in the accelerated MATH 533-Applied Managerial Statistics o

graduate course in the November 2018 session ("MATH 533") at DeVry University's Keller

Graduate School of Management.

*714.*    MATH 533 was an 8-week accelerated online graduate course from October 29,

2018 – December 22, 2018.

*715.*    The course instructor for the MATH 533 class was Kathrine Henson-Mack, PhD,

who is an Associate tenured Professor at DeVry University.

*716.*    All regionally-accredited Universities are required to provide students with a

*drop-add* period after classes start. Yet, DeVry University, Keller Graduate School of

Management and its Board of Trustees do not provide this drop-add period after classes start.

*717.*    The University only provides a one-week preview period for students to add or

drop a class *before* classes start.

*718.*    The weekly content of every class is categorized into weekly modules. These

modules only open each week of the ongoing class itself.

*Plaintiff's Complaint.*

719.    By opening the weekly course content only after the class actually begins and without allowing students to add-drop a class after they have actually interacted with the course material and the Course instructor, students are deprived their right to add or drop a class on their own after interacting with the course material and the course instructor to decide whether the class and the teacher is a good fit for them, or to register for a different class section.

720.    Initially, Plaintiff self-registered on time for ACCT 504 during that November 2019 session. Mr. Laurence Lazofson was the course instructor for that ACCT 504 class section.

721.    Plaintiff met the requirements for Week 1 of ACCT 504 class with Mr. Lazofson. Plaintiff timely completed the textbook readings and weekly discussion postings.

722.    By email dated October 31, 2018, 2:33 PM, Plaintiff submitted his Americans with Disability (ADA) accommodation letter to Mr. Lazofson. (*see* within Exhibit 16C).

723.    Plaintiff perceived hostile educational environment/ADA discrimination after Plaintiff sent Mr. Lazofson his ADA accommodation letter which extended all weekly course assignment deadlines for the class to next Thursdays of each week, to avoid tensions, Plaintiff wanted to swap to another section of the same ACCT 504 with a different teacher during the November 2018 session.

724.    Plaintiff contacted DeVry Central Student Support Center about the situation and he was registered for a different section of that ACCT 504 class without the approval of the course instructor. However, Plaintiff noticed that he is far behind the course material for that new section and so Plaintiff decided to return to the previous section of the same ACCT 504 Class with Mr. Lazofson.

725.    Plaintiff contacted DeVry Central Student Support center and he was transferred to Mr. Jeffrey Greenberg, Director of Student Central, DeVry University.

*Plaintiff's Complaint.*

726.     Mr. Greenberg informed Plaintiff that although Plaintiff had met the course requirements on time, Plaintiff's weekly discussion postings might be lost in the course system even if Plaintiff returned to his original ACCT 504 class with Mr. Lazofson to continue the course.

727.     Mr. Greenberg further explained that given that the ACCT 504 class was ongoing, and Week 1 was almost ended, swapping to a different section of the same class was therefore considered as "late registration" for a class, which requires the written approval of both a faculty chair and the course instructor for that class, and so he would contact the previous course instructor, Mr. Lazofson, and faculty chairperson to seek their approval for Plaintiff to return to his original ACCT 504 class with Mr. Lazofson.

728.     In an email dated November 2, 2018, 3:35 PM, Mr. Greenberg replied to Plaintiff and explained that switching back to the previous ACCT 504 Class with Mr. Lazofson is considered as *late* class registration. Both the faculty chairperson and course instructor, Mr. Lazofson have declined to approve it all course work was already timely completed. (*See* within Exhibit 16C).

729.     Mr. Greenberg's November 2, 2018 email also informed Plaintiff that although Mr. Lazofson declines to allow Plaintiff to return to his class, Mr. Lazofson has retrieved and copied Plaintiff's timely discussion postings for Plaintiff to continue in a different section of the same ACCT 504 class with different course instructor. (*see* within Exhibit 16C).

730.     Notwithstanding the University's denial of Plaintiff's request to join the initial ACCT 504 class with Mr. Lazofson whereas Plaintiff had already completed weekly coursework on time, the University still late-registered Plaintiff for a different class altogether (i.e. MATH 533) in that November 2018 session without the requisite approval of the course instructor (Dr.

*Plaintiff's Complaint.*

Henson-Mack), rather than registering Plaintiff back into the initial ACCT 504 class with Mr. Lazofson where Plaintiff had completed course work on time.

731.    Notwithstanding the University's policy that late class registration requires written approval of both the Course Instructor and a Faculty Chairperson, the University still registered Plaintiff late for a totally different class altogether (MATH 533) class in the November 2018 session without the written approval of the course instructor, Dr. Henson-Mack, and without a written approval of any faculty chairperson.

732.    Plaintiff avers that logically; the University should have rather re-registered Plaintiff to return to the initial ACCT 504 class with Mr. Lazofson because Plaintiff had already met all course requirements that were retrieved by Mr. Lazofson despite Mr. Greenberg's concern that Plaintiff's timely completed coursework would be lost as a result of initially dropping that class with Mr. Lazofson.

733.    Plaintiff was unable to catch up with speed in the late-registered MATH 533 class.

734.     Plaintiff was ultimately unsuccessful in that MATH 533 Class such that even with an incomplete grade, Plaintiff was still unable to complete the course work.

735.    Plaintiff avers that the University knowingly and recklessly late-registered Plaintiff for that MATH 533 class without the written approval of the course instructor, Dr. Kathrine Henson-Mack, and a faculty chairperson, all to the detriment of Plaintiff, which drastically –reduced Plaintiff's strong academic GPA.

736.    Ultimately, what happened here is, on grounds of late registration and inability of student to perform after late class registration, the University declined to put Plaintiff back into his initial ACCT 504 class with Mr. Lazofson for Plaintiff to continue from where he left when

*Plaintiff's Complaint.*

he dropped that class upon perceiving some hostility against him from Dr. Lazofson over his ADA accommodation notice, despite the fact that both Jeffrey Greenberg and Mr. Lazofson were able to retrieve Plaintiff's timely completed work from the Lazofson ACCT 504 class.

737. Yet, the same University ended up doing late registration for Plaintiff late to join a totally new class: MATH 533. Plaintiff did not succeed in MATH 533 with many outstanding coursework and the Incomplete- fail grade has drastically reduced his GPA.

738. The University should be blamed for registering Plaintiff late MATH 533 knowing very well the risk of failure for such late class registrations.

739. As a result, Plaintiff brings this suit for this Court to order the University to unlock the MATH 533 class for Plaintiff to complete the outstanding coursework without retaking and repaying tuition and fees again. So, that Plaintiff can also graduate on time.

740. As a US Citizen and Graduate Student, Plaintiff has constitutionally- protected interest and liberty interest in his GPA.

741. As a graduate student and U.S.Citizen, Plaintiff has a protected interest in his timely graduation for his MBA degree for which success in the MATH 533 class is core requirement to graduate.

742. As a direct and proximate result of defendants' unlawful conduct as described herein of registering Plaintiff late for the MATH 533 class despite the University's own registration practices though Mr. Greenberg that such late registration requires both approval of the course instructor and a faculty chair, Plaintiff could not complete outstanding coursework in MATH 533. (*see* within Exhibit 16C).

743. As a direct and proximate result of defendants' unlawful conduct as described herein Plaintiff's strong GPA has suffered, and continues to suffer, irreparable injury which

*Plaintiff's Complaint.*

cannot be fully compensated by an award of monetary damages for which Plaintiff is entitled to preliminary and permanent injunctive relief to retroactively remove the MATH 533 class from his record, as well as damages in an amount to be determined by the Court and reasonable costs of this lawsuit, including reasonable Attorneys' fees.

744.     As a further direct and proximate result of Defendants' unlawful conduct as described herein, Plaintiff Michael O. Livingstone has been caused and will continue indefinitely into the future to be caused severe mental anguish, humiliation, anxiety, stress, and emotional and/or psychological distress, all with associated physical symptoms.

745.     WHEREFORE, Plaintiff Michael O. Livingstone demands judgment against Defendants DeVry University, Keller Graduate School of Management, Adtalem Global Education Inc., jointly, severally and/or severally for compensatory and punitive damages in an amount in excess of $ 500,000 exclusive of interest and costs; preliminary, declaratory, and injunctive relief to enjoin the university to unlock the MATH 533 class for Plaintiff to submit all outstanding coursework for MATH 533 for the University to change the incomplete -fail grade within 1-3 weeks of the Court's Order in December 2019; an award of reasonable attorneys' fees, costs and other costs and disbursements in this action; and such other and further relief as the Court may deem just and equitable.

## COUNT TWENTY-FOUR

### FRAUDULENT CONCEALMENT;
### HIGHER EDUCATION LAW

**(Michael O. Livingstone v. DeVry; Keller; Adtalem Education Group Inc.; Board of Trustees of DeVry University; Shantanu Bose)**

746.     Plaintiff incorporates the foregoing allegations herein as if fully set forth herein.

*Plaintiff's Complaint.*

747.    The conduct of Defendants, as set forth hereinabove, constitutes conduct which deprived Plaintiff's rights in the manner described in the following paragraphs:

748.    The University intentionally and knowingly concealed material facts from Plaintiff that were known by Defendants or should have been known by Defendants around 2015 when Plaintiff was being admitted or matriculating into the University.

749.    DeVry University and its Keller Graduate School of Management claim that the University's MBA program is "accredited."

750.    The fact is, the University's MBA program is not highly accredited by the Association to Advance Collegiate Schools of Business's (AACSB). [15]

751.    Defendants intentionally and knowingly concealed from their 2015 Catalogs and Handbooks that regardless of Grades, course credits earned from DeVry University's MBA program do not transfer to other highly accredited MBA programs by the AACSB.

752.    Around 2016, when Plaintiff wanted to transfer his MBA classes from DeVry University to Rutgers University in New Brunswick, New Jersey, or Vanderbilt University (Tennessee), for example, Rutgers informed Plaintiff that AACSB highly accredited MBA programs such as Rutgers MBA program do not accept any credits from non-AACSB accredited programs like DeVry University's MBA Program. [16] Consequently, Plaintiff will have to start all over again if he chose to transfer from DeVry to pursue the MBA degree from Rutgers University.

753.    Plaintiff was therefore forced and compelled to stay at DeVry to complete his MBA so that he would not lose his credits and the substantial debt he has incurred.

---

[15]    See, https://www.aacsb.edu/accreditation/accredited-schools

[16]    See, https://www.business.rutgers.edu/part-time-mba/frequently-asked-questions

*Plaintiff's Complaint.*

*754.* Similar issue with loss of transfer credits by failure to disclose happened to another DeVry student that resulted in the federal case of *Daghlian v. DeVry University, Inc.*, 582 F. Supp. 2d 1231 (C.D. Cal. 2008), and the Courts redress Daghlian's grievance about that.

*755.* Defendants have a duty to disclose the concealed information because Plaintiff did not know of the concealed facts prior to purchasing a DeVry education program and related services, nor could Plaintiff reasonably be expected to learn or discover such concealed facts prior thereto.

*756.* Plaintiff would not have purchased the education program and related services, nor would not have paid as much therefor, had Plaintiff known of the concealed information.

*757.* Plaintiff justifiably relied on the facts as he knew them at the time, and as a direct and proximate result of Defendants' fraudulent concealment of this material facts, Plaintiff has suffered actual injury-in-fact and damages, including but not limited to, monetary loss in connection with purchases of the education program and related services he would not have purchased absent Defendants' concealment, fraudulent omissions, and non-disclosures, or would not have paid as much for such purchases.

*758.* WHEREFORE, Plaintiff is entitled to, and hereby seek, actual damages, punitive damages, treble damages, reasonable attorneys' fees and costs, tuition and fees abatement and any and all further equitable relief that this Court deems appropriate.

*Plaintiff's Complaint.*

## COUNT TWENTY FIVE

**OVERBREADTH & VAGUENESS OF ARTICLE II & ARTICLE III OF DEVRY
UNIVERSITY STUDENT CODE OF CONDUCT
(Michael O. Livingstone v. DeVry; Keller; Adtalem,
Board of Trustees of DeVry University)**

*759.* Plaintiff incorporates the foregoing allegations herein as if fully set forth herein.

*760.* Plaintiff brings a constitutional challenge against Article II and Article III of the
DeVry University's Student Conduct Code because it is unconstitutional and facially overbroad
and vague, and problematic.

*761.* By charging a student with "threat" and "intimidation" without specifying that it
is a "threat of physical violence," that is overbroad and vague in the sense that anything at all can
be considered by anybody as threatening in violation of the Article III of Student Conduct Code.
Hence, the University has repeatedly pursued disciplinary actions against Plaintiff's "threat to
sue the University in Court" or Plaintiff's "threats to report racial discrimination," for example.

*762.* Similarly, Article II of the University's Student Code of Conduct is hereby
challenged as unconstitutionally overbroad, vague, and problematic in the sense that by charging
a student with piracy, the code simultaneously adds a charge of forgery. Nothing in Exhibits 8a-
8M and Exhibit 12E constitutes piracy and forgery, for example. Yet, Plaintiff was charged for
all of this.

*763.* Plaintiff avers that even if student codes are not criminal codes that require
specificity, Articles II & III of the DeVry student code of conduct are still problematic in the
sense that it is stigmatizing against constitutionally-protected liberty interests of students' record.

*764.* WHEREFORE, Plaintiff brings this complaint for the Court to enter an Order
declaring that Articles II & III of DeVry University's Student Code of Conduct is

*Plaintiff's Complaint.*

unconstitutionally -vague and overbroad as written and as applied by DeVry University and that future enforcement is enjoined pending replacement with a provision that adequately protects students' rights to procedural and substantive due process and freedom of expression and liberty interests.

## COUNT TWENTY -SIX

## NEGLIGENCE OF DUTY

**(Michael O. Livingstone v. Arissa Bryant; DeVry University; Keller; Adtalem.; Agresta)**

*765.* Plaintiff incorporates the foregoing paragraphs herein as if fully set forth herein.

*766.* Plaintiff also brings this negligence of duty claim against Defendant Arissa Bryant, the DeVry University, and its subsidiaries.

*767.* In June 2019, the University sanctioned Plaintiff with a disciplinary warning letter that outlines a "channel of communication" for Plaintiff to follow when there is a problem (Exhibit 5E).

*768.* The June 2019 warning letter (Ex. 5E) specifically designated Ms. Arissa Bryant as Plaintiff's Student Support Adviser to reach when Plaintiff's direct attempts to resolve matters with a course instructor fails. *Id.*

*769.* The University imposed a duty upon Defendant Bryant as the student support adviser for Plaintiff to reach when there is a problem for Ms. Bryant to connect Plaintiff to the correct complaint administrator (Exhibit 5E).

*770.* By naming Defendant Arissa Bryant as Plaintiff's designated student support adviser to act as Plaintiff's coordinator and advocate to connect Plaintiff to the correct complaint

*Plaintiff's Complaint.*

administrator when there is a problem, defendant Bryant and the University had a duty to Plaintiff to the correct Complaint Administrator.

771.    In October 2019, when Plaintiff reached out to Ms. Bryant by emails and DeVry Central phone lines to seek her assistance and coordination regarding Dr. Havel, Ms. Bryant never responded to Plaintiff's emails and phone call (Exhibit 7D) knowing very well that something was going on; thereby, leaving Plaintiff to find his own appropriate administrator to address Plaintiff's concerns against Dr. Havel.

772.    During the November 14, 2019 conduct hearing and within Plaintiff's memorandum to the Panelists (Ex. 14B), Plaintiff informed Defendant Agresta that Ms. Bryant failed to get back to him despite the fact that Defendant Agresta named her on the warning letter (Ex. 5E) as Plaintiff's student support adviser to assist Plaintiff. Yet, Defendant Agresta and the Panelists (Defendants Russell, Schmitz, and D'Souza) did nothing about it.

773.    The adverse sanctions notice (Ex.14C) erroneously claims that Plaintiff did not follow proper channels of communication to reach the correct complaint administrator, but rather, the National Dean (Lenore Goldberg). Meanwhile, it was the duty of Defendant Arissa Bryant to find and connect Plaintiff to the correct Complaint Administrator (Ex.5E). Yet, she failed to perform that duty and Defendant Agresta and the University did nothing about her negligence.

774.    At the time, Plaintiff also contacted New Brunswick, NJ campus and they connected him to DeVry central and he created a case number for the University to connect Plaintiff to the correct complaint Administrator.

775.    Defendant Agresta should be held liable by this Court for imposing a perfunctory channel of communication upon Plaintiff Livingstone and for his reckless failure to take action

*Plaintiff's Complaint.*

against the non-performance of the Student support adviser and actors within that perfunctory channel of communication.

776. By direct and proximate cause of the negligent failure of Ms. Bryant to respond to Plaintiff's emails and to assist him to find an appropriate complaint administrator to address Plaintiff's concerns against Dr. Havel at the time, this resulted in Plaintiff sending more emails and strings of emails to find solutions from other administrators including Plaintiff contacting the Keller's National Dean (Ms. Lenore Goldberg), which in turn led to adverse disciplinary action (Exhibit 14C).

777. As a further direct and proximate result, this led to the University summoning, sanctioning, and seizing Plaintiff for disciplinary hearing (Exhibits 14C, 7F, 7D, 8A-8M), which has in turn wasted Plaintiff's time, stigmatized Plaintiff's record, and distracted Plaintiff's academic focus.

778. WHEREFORE, Plaintiff Michael O. Livingstone demands judgment against all Defendants Adtalem, DeVry University, Keller Graduate School of Management, jointly, severally and/or severally, for compensatory and punitive damages in an amount in excess of $1 million exclusive of interest and costs; preliminary, declaratory, and permanent injunctive relief order by this Court enjoin the University to vacate and expunge Plaintiff's November 2019 disciplinary record and sanctions without making any references to it; an award of reasonable Attorneys' fees, costs and other costs and disbursements in this action; and such other and further relief as the Court may deem just and equitable.

*Plaintiff's Complaint.*

## COUNT TWENTY-SEVEN

### FALSE ADVERTISING PER SE; PUFFING

### (Michael O. Livingstone v. Adtalem; DeVry University; Keller Graduate School of Management; Board of Trustees of DeVry University )

779.    Plaintiff incorporates herein by reference the foregoing paragraphs as if fully set forth herein.

780.    Defendants recklessly and erroneously use the big title "Professor" for anybody who teaches at the University.

781.    It is not clear who is a tenured Professor and who is not a tenured Professor at the University.

782.    To the best of Plaintiff's knowledge, both the published Academic Catalogs and the Handbook of the University are silent about who is a real and fully tenured Professor and who is not.

783.    The University also uses the Title "Visiting Professor" for most course instructors whereas it is not clear from the handbook what constitutes a "visiting Professor" and whether they are literally on a visit or not. Within the attached emails to this complaint, Defendant Havel, for example, signs off his emails as "Visiting Professor."

784.    When the title "Professor" is used within academic circles, it generally means a full "tenured Professor."

785.    Back in the year 2018, Defendant Agresta, for example, used to call himself "Professor" and sign-off on his emails as "Professor Agresta."

786.    In June 2019, when Plaintiff addressed Agresta as "Professor Agresta," he informed Plaintiff that he is "no longer Professor." Generally, once a tenured Professor, always a

*Plaintiff's Complaint.*

Professor. Real academic tenured Professors retire in their professorship as "Professor Emeritus."

787.    Part of tenureship metrics in academia is knowledge of University policy and procedures and ability to work with students. Real tenured Professors know University policies and University procedures, which minimizes problems such as the problems caused by the University to Plaintiff in this complaint.

788.    As a result of the misleading and reckless misuse of the title "Professor" within DeVry University and its Keller Graduate school of Management by any course instructor, Plaintiff has encountered many unnecessary problems with course instructors at DeVry University who call themselves big title "Professors." Yet, they are not tenured and they are not conversant with University policy.

789.    Defendant Havel, for example, claimed in October 2019 that he does not know how to make extensions in both Canvas and Cengage synchronized software that was being used for the Homework and Quizzes in FIN 515 and he ambiguously asked Plaintiff to tell IT helpdesk to mirror the extensions. Real tenured Professors are trained about technical software and they take charge of the systems that are used for their class without sending students out to software vendors to mirror anything.

790.    As a result of the misleading and reckless misuse of the title "Professor," Plaintiff has been misled to take classes with course instructors, who are not real Professors, thereby compromising the quality of education for which Plaintiff paid.

791.    Defendant Board of Trustees of DeVry University has recklessly failed to proscribe and distinguish to students what a Professor really means and what a Visiting Professor means.

*Plaintiff's Complaint.*

792.    Albeit, the University has some good tenured Professors such as MATH 533

Associate Professor, Dr. Henson-Mack. Plaintiff never had any issues with Dr. Henson-Mack.

793.    WHEREFORE, Plaintiff brings this cause of action for this Court to enjoin the

University to allow only course instructors on tenureship to use the title "Professor" including

award of such other and further relief as the Court may deem just and equitable.


## COUNT TWENTY EIGHT

### TORTS OF MALFEASANCE AND/OR MISFEASANCE
### AND/OR NONFEASANCE; ALTER EGO

### (Michael O. Livingstone v. ALL DEFENDANTS)

794.    Plaintiff incorporates herein all the foregoing paragraphs as if fully set forth

herein.

795.    Plaintiff avers that all Defendants, by not following the proper procedures

authorized by their own Handbooks, Catalogs, Letters, channels of communication, and the law,

as Officers, Supervisors, in the disciplinary proceedings and grade appeals, as well as inaction

and repeated inaction against Plaintiff's allegations of discrimination have committed the torts of

malfeasance and/or misfeasance and/or nonfeasance.

796.    Plaintiff avers that in the event whereby this Court admits any of the causes of

action in this complaint as a viable claim, then this cause of action should also stand as well.

*Plaintiff's Complaint.*

## COUNT TWENTY-NINE

### 42 U.S.C. § 1983) to vindicate Family Educational Rights and Privacy Act (FERPA) (20 U.S.C. § 1232g; 34 CFR Part 99)
### (Michael O. Livingstone v. Jonathan Agresta, DeVry, Keller)

*797.*    Plaintiff incorporates herein all the foregoing paragraphs as if fully set forth herein.

*798.*    Plaintiff never asked anybody to designate his campus location to the University's Philadelphia, Pennsylvania, center campus in the University's systems at all.

*799.*    Under FERPA regulations, Plaintiff had to authorize or complete forms to authorize the University make him a Philadelphia location student. Plaintiff never authorized it and will never authorize it.

*800.*    In 2018, somebody changed Plaintiff's campus location as online student to Philadelphia campus without Plaintiff's FERPA authorization.

*801.*    Plaintiff only visited the Philadelphia campus sometime and he was not impressed by the limited hours of library and study areas and way of doing things. So, he did not complete any forms authorize anybody to change his campus location to Philadelphia at all.

*802.*    In 2019, Plaintiff authorized his DeVry campus location to be changed to New Jersey, as Plaintiff is based in New Jersey and online student.

*803.*    Plaintiff believes and therefore aver that Defendant Agresta has been manipulating the University's system to change Plaintiff's campus location and code Plaintiff to Philadelphia campus unto himself so that Plaintiff issues can be connected to him to carry out his deep-seated animosity and clandestine activities against Plaintiff.

*804.*    Plaintiff hereby denies and revokes his FERPA waivers from Defendant Agresta and Plaintiff declares that Defendant Agresta should never handle Plaintiff's files and records

*Plaintiff's Complaint.*

again except when necessary for issues that are pending before this court only for which he was involved.

805.    Plaintiff asserts that he wants to have nothing to do with Defendants Agresta going forward except for issues pending before this Courts.

## COUNT THIRTY

### RACIAL DISCRIMINATION UNDER CIVIL RIGHTS ACT OF 1964 WITH DISPARATE TREATMENT

### (Michael O. Livingstone v. Defendants Adtalem, DeVry, Keller)

806.    Plaintiff incorporates herein by reference all the foregoing paragraphs as if fully set forth herein.

807.    Plaintiff incorporates herein by reference Exhibit No. 31.

808.    In  July 2020-August 2020 session, Plaintiff enrolled in the  online accelerated eight (8) week module graduate level class called Business Planning Seminar ("MGMT 600") at Defendant Keller Graduate School of Management, DeVry University.

809.    Defendant Dr. Finlay was the course instructor for MGMT 600 class.

810.    Defendant Dr. Finlay placed all students into groups or teams to communicate and work together on a business simulation project called "CAPSIM capstone" through Weeks 3-7 modules of the MGMT 600 course.

811.    Plaintiff was part of a group of students in the MGMT 600 class called "Chester group" consisting of defendants Mr. Sean Mulhern; Ms. Ibironke Majekodunmi (aka "Ronke"); and Mr. Huynh Thanh Ho collectively called "Students."

812.    As part of the long-standing academic norms and culture of the University, the University requires all MGMT 600 class students within all groups to execute contractual

*Plaintiff's Complaint.*

agreements called a "Charter" committing to operate within certain rules the student group members themselves formulate including how the group would communicate (i.e. telephone, text messaging, and/or email), deadlines, tasks, and how the group would address and manage conflicts. *See* Exhibit 30.

813.    The University views, considers, and characterizes the Charter as a "contract" on the course pages.

814.    All members of the Chester group in the MGMT 600 class adopted a conflict management protocol within the contractual charter that makes provision that the Chester Group would address its own conflicts through a meeting with the group leader and if unresolved, then the group would escalate it to the course instructor defendant Dr. Finlay (Exhibit 30).

815.    Plaintiff's Chester group of students also committed to exercise "positivity" in all endeavors  with  group members (Exhibit 30).

816.    Defendant Dr. Finlay formed the Chester Group with students that are not geographically located within the same time zones. Defendants Ronke and Mulhern are within the Pacific time zone. Defendant Mr. Ho and Plaintiff Livingstone are within the Eastern Time Zone (EST).

817.    It was the norm of the Chester group to send and receive text messages anytime (*see* generally Exhibit No. 31).

818.    Around August 13, 2020, Plaintiff sent a text message to Defendant Mulhern and the Chester group around 1:00am EST which is about 9PM in PST time zone (Exhibit No. 31, at pp.41-43).

819.     Defendant Mr. Ho took angry issue with the 1:00amEST time and reported Plaintiff to Defendant Dr. Finlay (Exhibit No. 31 at pp.41- 43).

*Plaintiff's Complaint.*

820.    Around August 15, 2020, without asking for Plaintiff's side of the story, Defendant Dr. Finlay took adverse action and removed Plaintiff from the Chester group to work on his own regarding assignments for Weeks 7 & 8 modules of the MGMT 600. (*See* Exhibit 23). Defendant Finlay also stated that a formal student code of conduct complaint has been filed against Plaintiff. *See* Exhibit 23.

821.    On August 15, 2020, Defendant Finlay sent an email directing Plaintiff not to communicate with the students of Chester group. However, the three (3) students continued to copy and send text messages to Plaintiff. Plaintiff did not respond (ECF No. 22-1, pp.41-43).

822.    On August 23, 2020, Plaintiff sent an email asking Dr. Finlay to equally direct the three students not to communicate with him after Plaintiff continued to receive text messages from them.

823.    On August 26, 2020, Plaintiff continued to receive a series of text messages from Defendants Mulhern and Ronke to all members of the Chester Group including Defendant Mr. Ho around 1:13am EST (*see* Exhibit No. 31, Pages 42-43).

824.    Plaintiff observed that defendant Mr. Ho did not complain after another member of the Chester group (Defendant Mulhern) also sent text message around **the 1:00am** EST to the Chester group members (Exhibit No. 31, Page 43).

825.    Plaintiff avers that if it was an offense to defendant Mr. Ho when a black student like Plaintiff Livingstone sent text message at 1:00am EST to the Chester group and so the adverse action was taken against  Plaintiff for him to be removed from the group, then it should have equally been an offense to Defendant Mr. Ho when a similarly-situated white Caucasian student (i.e. defendant Mulhern) also sent text messages to the group around 1:00amEST.

*Plaintiff's Complaint.*

826.     When Defendant Mulhern (a Caucasian white male in the same Chester Group) also sent text messages around 1:13amEST of August 26, 2020, Defendant Mr. Ho did not complain to defendant Dr. Finlay for defendant Mulhern to be removed from the Chester Group as well. Instead, Defendant Mr. Ho sent a "thank you guys a lot" message in reply (see Exhibit No. 31, Page 43).

827.     Plaintiff avers that he experienced *white privilege* against him when Defendant Mr. Ho reported him to defendant Dr. Finlay for sending text messages around 1amEST. Yet, Defendant Mr. Ho did not complain or report Defendant Mulhern for sending text messages too around 1:00amEST in the Chester group.

828.     Plaintiff avers that he was stereotyped as a black male student when defendant Mr. Ho reported him for sending text messages in the Chester group around 1:00amET. Yet, defendant Mr. Ho appreciated it when defendant Mulhern sent text messages around 1:00am too.

829.     Plaintiff avers that no white privilege should exist at Defendant DeVry University and its Keller Graduate School of Management even among student groups.

830.     By email dated September 1, 2020, 4:27 PM (*see* "Exhibit 20"), Plaintiff presented a formal discrimination complaint and a code of conduct complaint to Defendant Finlay and the University regarding the alleged discriminatory and disparate treatment he experienced from defendant Mr. Ho (Exhibit 20).

831.     Plaintiff asked the University to let its designated Civil Rights Officer get back to him regarding his formal discrimination complaints in three (3) days (Exhibit 20). Nobody got back to Plaintiff.

832.     When defendant Ho reported Livingstone to defendant Finlay for sending text message around 1:00amET, defendant Finlay took adverse action against Livingstone by

*Plaintiff's Complaint.*

removing him from the Chester group to continue the rest of the MGMT 600 class on his own (*see* Exhibit 21). However, when Plaintiff Livingstone reported defendant Mr. Ho to Dr. Finlay and the University alleging racial discrimination and violation of the University's anti-discrimination policy in the Student Handbook and Catalogs, defendant Finlay and the University did not take any action at all.

833.    Dr. Finlay ignored Plaintiff's formal discrimination complaints.

834.    The University ignored Plaintiff's discrimination complaint.

835.    Plaintiff avers that all students should be treated the same way, receive the same adverse action for the same offense regardless of being black, white, Latino, Asian, male, or female.

836.    By direct and proximate cause of the alleged discriminatory and disparate treatment, Plaintiff's academic work and focus was immensely distracted in the MGMT 600 class with lower B - grade and other adverse effects.

837.    As a direct and proximate cause of Defendants' unlawful conduct as described herein, Plaintiff has suffered, and continues to suffer, irreparable injury which cannot be fully compensated by an award of monetary damages for which Plaintiff is entitled to preliminary and permanent injunctive relief order by this Court as well as damages in an amount to be determined by the Court and reasonable costs of this lawsuit, including reasonable Attorneys' fees

838.    By direct and proximate cause of the University's negligent failure to act upon Plaintiff's discrimination complaint, Plaintiff feels that the University has insulted his humanity.

839.    As a direct and proximate cause of Defendants' unlawful conduct as described herein, Plaintiff has suffered, and continues to suffer, irreparable injury which cannot be fully compensated by an award of monetary damages for which Plaintiff is entitled to preliminary and

*Plaintiff's Complaint.*

permanent injunctive relief order by this Court against Weeks 7-8 scores as well as damages in

an amount to be determined by the Court and reasonable costs of this lawsuit, including

reasonable Attorneys' fees.

840.     As a further direct and proximate result of Defendants' unlawful conduct as

described herein, Plaintiff Michael O. Livingstone has been caused and will continue indefinitely

into the future to be caused severe mental anguish, anxiety, stress, and emotional and/or

psychological distress, all with associated physical symptoms.

841.     WHEREFORE, Plaintiff Michael O. Livingstone demands judgment against all

Defendants Adtalem, DeVry University, Keller Graduate School of Management, and Defendant

Havel jointly, severally and/or severally, for compensatory and punitive damages in an amount

in excess of $10 million exclusive of interest and costs; preliminary, declaratory, and permanent

injunctive relief to change the MGMT 600 grade to "A"; an award of reasonable Attorneys'

fees, costs and other costs and disbursements in this action; and such other and further relief as

the Court may deem just and equitable.


## COUNT THIRTY ONE

### NEGLIGENT FAILURE TO ACT UPON DISCRIMINATION COMPLAINT UNDER CIVIL RIGHTS ACT OF 1964

### (Michael O. Livingstone v. Defendants Adtalem, Keller, DeVry)

842.     Plaintiff incorporates herein by reference all the foregoing paragraphs as if fully

set forth herein.

843.     Plaintiff avers that the U.S. Department of Education requires all Universities that

participate in Title IV programs to have a designated anti-discrimination officers.

*Plaintiff's Complaint.*

844.    By email dated September 1, 2020 at 4:27 PM Plaintiff presented a formal discrimination complaint and a code of conduct complaint to Defendant Finlay and the University alleging discriminatory and disparate treatment he experienced from defendant Mr. Ho in the Chester Group of the MGMT 600 class.

845.    In that email Exhibit 20, Plaintiff asked the University to let its designated Civil Rights Officer get back to him regarding his formal discrimination complaints in three (3) days. Nobody got back to Plaintiff.

846.    Defendant Dr. Finlay ignored Plaintiff's formal discrimination complaints.

847.    The University ignored Plaintiff's discrimination complaint.

848.    Plaintiff reminded Assistant National Dean of Keller, Ms. Patti Meyer, that he filed a formal discrimination complaint and so he would like his discrimination complaint to be addressed as well (Exhibit 25). Yet, Plaintiff received no response regarding his discrimination complaint.

849.    By direct and proximate cause of the alleged discriminatory and disparate treatment, Plaintiff's academic work and focus was immensely distracted in the MGMT 600 class.

850.    By direct and proximate cause of the University's failure to act upon Plaintiff's discrimination complaint, Plaintiff feels that the University has insulted his humanity.

851.    As a direct and proximate cause of Defendants' unlawful conduct as described herein, Plaintiff has suffered, and continues to suffer, irreparable injury which cannot be fully compensated by an award of monetary damages for which Plaintiff is entitled to preliminary and permanent injunctive relief order by this Court against Weeks 7-8 scores as well as damages in

*Plaintiff's Complaint.*

an amount to be determined by the Court and reasonable costs of this lawsuit, including

reasonable Attorneys' fees.

852.     As a direct and proximate cause of Defendants' unlawful conduct, Plaintiff feels

he is not counted as one of the human beings with rights at the University, and Plaintiff is not

covered under the sense of community in the University.

853.     Plaintiff brings this  cause of action for this Court to enjoin Defendants  to create

the  University's  own  neutral anti-discrimination officer and office.

854.     WHEREFORE, Plaintiff Michael O. Livingstone demands judgment against all

Defendants Adtalem, DeVry University, Keller Graduate School of Management, and Defendant

Havel jointly, severally and/or severally, for compensatory and punitive damages in an amount

in excess of $10 million exclusive of interest and costs; preliminary, declaratory, and permanent

injunctive relief; an award of reasonable Attorneys' fees, costs and other costs and disbursements

in this action; change of his MGMT 600 grade, and such other and further relief as the Court

may deem just and equitable.


## COUNT  THIRTY-TWO

### BREACH OF THE DUTY OF GOOD-FAITH & FAIR-DEALING;
### BREACH OF CONTRACT

**Michael O. Livingstone v. defendants Mulhern, Ho, Ronke, DeVry, Keller, Adtalem**

855.   Plaintiff incorporates herein by reference all the foregoing paragraphs as if fully

set forth herein.

856.   As a part of the long-standing academic norms and culture of the University, the

University requires all MGMT 600 class students within all groups to execute contractual

agreements described as a "Charter" committing to operate within certain rules the student group

*Plaintiff's Complaint.*

members themselves formulate including how the group would communicate (i.e. telephone, text messaging, and/or email), deadlines, tasks, and how the group would address and manage conflicts. *See* "Exhibit 30."

857.    The University views, considers, and characterizes the group Charter as a "contract" on the course pages.

858.    The Charter also contains the words " I commit…" and all members agreed by signing the Charter to operate within the rules of the group.

859.    In Weeks 1-2 modules of the MGMT 600 class, the Chester Group completed a contractual Charter of a set of rules and submitted a copy to Dr. Finlay.

860.    All members of the Chester group within the MGMT 600 class adopted a conflict management protocol within the contractual charter that makes provision that the Chester Group would address its own conflicts through a meeting with the group leader and if unresolved, then the group would escalate it to the course instructor, defendant Dr. Finlay.

861.    Chester group of students also committed by signing the contractual Charter to exercise and demonstrate "positivity" in all endeavors.

862.    It was the norm of the Chester group to send and receive text messages anytime (*see* generally Exhibit No. 31).

863.    In August 13, 2020, Plaintiff sent a text message to Defendant Mulhern and the Chester group around **1:00am EST**, which is about 9PM in PST time zone. (Exhibit No. 31 at pp.41-43).

864.     Defendant Mr. Ho took angry issue with the 1:00amEST time and reported Plaintiff to Defendant Dr. Finlay (Exhibit No. 31 at pp.41-43).

*Plaintiff's Complaint.*

865.     Whereupon, around August 15, 2020, defendant Finlay took adverse action against Plaintiff and removed Plaintiff from the Chester group to work on his own regarding assignments for Weeks 7 & 8 modules of the MGMT 600 class. (Exhibit 23). Defendant Finlay also stated that a formal student code of conduct complaint has been filed against Plaintiff. *See* Exhibit 23.

866.     On August 26, 2020, Plaintiff continued to receive text messages from Defendants Mulhern and Ronke to all members of the Chester Group including Defendant Mr. Ho around **1:13am EST** (*see* Exhibit No. 31, Pages 42-43).

867.     Plaintiff observed that defendant Mr. Ho did not complain after another member of the Chester group (Defendant Mulhern) also sent text message around the **1:00am** EST to the Chester group members. (Exhibit No. 31 at Page 43).

868.     Plaintiff avers that it was against the conflict management provisions of the Chester group contractual Charter (Exhibit 30) when defendant Mr. Ho reported Plaintiff to Dr. Finlay for sending text messages around 1:00amEST to the Chester group members, instead of summoning a meeting with the group leader and the group members to address that conflict.

869.     Plaintiff avers that it was not fair and it was against the conflict management provisions of the Chester group contractual charter agreement of "*positivity*" in all endeavors when defendant Mr. Ho reported Plaintiff to Dr. Finlay for sending text messages around 1:00amEST to the Chester group members for Plaintiff to be removed from the group. Yet, when Defendant Mulhern (a Caucasian white male in the same Chester Group) also sent text messages around 1:13amEST of August 26, 2020, defendant Mr. Ho did not complain to Dr. Finlay to remove him from the Chester Group as well. Instead, defendant Mr. Ho sent a "thank you guys a lot" message in reply (Exhibit No. 31 at Page 43).

*Plaintiff's Complaint.*

870.     Plaintiff avers that it was not fair and it was against the University's own published anti-discrimination policies in the Catalogs and Student Handbooks when defendant Dr. Finlay and the University ignored and recklessly disregarded Plaintiff's formal discrimination complaint and Plaintiff's code of conduct complaint against Defendant Mr. Ho, whereas all students are under the covering the same rules and policies.

871.     When defendant Mr. Ho reported Livingstone to Dr. Finlay for sending text message around 1:00amET, defendant Dr.Finlay took adverse action against Livingstone by removing him from the Chester group for Plaintiff to continue the rest of the MGMT 600 class on his own (Exhibit 21).

872.     Conversely, when Plaintiff Livingstone reported defendant Mr. Ho to Dr. Finlay and the University alleging racial discrimination and violation of the University's anti-discrimination policy in the Student Handbook and Catalogs, defendant Finlay and the University did not take any action at all.

873.     Plaintiff avers that it was against the contractual charter agreement of the Chester group when defendant Ronke copied Plaintiff in an email dated Aug 3, 2020 at 1:41 AM to her student support adviser (Mr. Felix Caruso) and Defendant Finlay whereas the contractual protocol in the Chester group charter agreement requires that Chester group members themselves will attempt to manage their own conflicts through meeting as group with the leader and if unresolved, then the group leader would escalate it to the Course instructor  for a meeting (Exhibit 30).

874.     During a zoom meeting with the Chester Group members on August 4, 2020 to address a conflict, Dr. Finlay cautioned Chester group members to avoid escalating conflicts to her and others. It was therefore unfair when the same Dr. Finlay later entertained the August 15,

*Plaintiff's Complaint.*

2020 complaint by Defendant Mr. Ho claiming the Plaintiff Livingstone has sent text messages to the group around 1:00amET, without referring defendant Mr. Ho back to the group charter to attempt conflict resolution with the group itself. Instead, Defendant Finlay took adverse action against Livingstone by removing him from the Chester Group (Exhibit 23).

*875.*     Around Week 3 module of the MGMT 600 class, Dr. Finlay addressed the class during a WebEx recorded session with the entire class that it is possible that students will fight in this class: "You will fight like cats and dogs but do not let it show up in front of your shareholder presentations." Plaintiff avers that it was therefore unfair when Dr. Finlay entertained complaints from defendants Ronke and Defendant Mr. Ho and escalated it to student conduct board, knowing very well that interpersonal conflicts would arise, and knowing well that the  students have violated the group Charter.

*876.*     Plaintiff  believes and therefore aver that on August 10, 2020, it was against the group charter's positivity when Defendant Mulhern and all teams in the MGMT 600 class presented before Dr. Finlay via WebEx recorded class session. Defendant Mulhern advised the Chester group that he has to leave early from the class around 4:30pm PST and so he wants the group to go first (Exhibit No. 31, page 35). Prior to the class session, Livingstone sent text message to defendant Mulhern that he wants the group to go second because Plaintiff needs to find a spot around an Airport to do the presentation (text message was sent directly to defendant Mulhern at the time).

Defendant Mulhern ignored Plaintiff's request and insisted upon the group to do the presentation first before other groups. Livingstone allowed defendant Mulhern to have his way. After Chester group presented first, Livingstone observed that Defendant Mulhern was still in the class despite his claim that he cannot stay for the Chester group to present second. Livingstone

*Plaintiff's Complaint.*

observed that Mulhern stayed throughout the second group's presentations and he posted a
comment afterwards. Livingstone avers that it is against the group's contractual charter of
positivity when Mulhern said he cannot stay for Chester group to present second and he has to
leave the class around 4:30pm PDT. Yet, Mulhern stayed throughout the second group's
presentation.

877.    As a direct and proximate cause of Defendants' unlawful conduct of  not
following the terms and rules within the contractual charter agreement, Plaintiff has been
misperceived as someone who  caused conflict within the Chester Group and he was removed.

878.    As a direct and proximate cause of Defendants' unlawful conduct as described
herein, Plaintiff's academic work was distracted by unnecessary conflicts and quasi-judicial
proceedings, which could have been prevented if members of the Chester group abided by the
contractual commitments in the group charter.

879.    Plaintiff has suffered, and continues to suffer, irreparable injury which cannot be
fully compensated by an award of monetary damages for which Plaintiff is entitled to
preliminary and permanent injunctive relief order by this Court against Weeks 7 & 8 scores in
the MGMT 600 class, as well as damages in an amount to be determined by the Court and
reasonable costs of this lawsuit, including reasonable Attorneys' fees.

880.    As a further direct and proximate result of Defendants' unlawful conduct as
described herein, Plaintiff Michael O. Livingstone has been caused and will continue indefinitely
into the future to be caused severe mental anguish, anxiety, stress, and emotional and/or
psychological distress, all with associated physical symptoms.

881.    WHEREFORE, Plaintiff Michael O. Livingstone demands judgment against all
Defendants Adtalem, DeVry University, Keller Graduate School of Management, and

*Plaintiff's Complaint.*

Defendants Mulhern, Ronke, Finlay, Ho, jointly, severally and/or severally, for compensatory and punitive damages in an amount in excess of $10 million exclusive of interest and costs; preliminary, declaratory, and permanent injunctive relief; an award of reasonable Attorneys' fees, costs and other costs and disbursements in this action; change of his MGMT 600 grade, and such other and further relief as the Court may deem just and equitable.

## COUNT THIRTY-THREE

### DISCRIMINATION UNDER AMERICANS WITH DISABILITIES ACT; SECTION 504 OF THE REHABILITATION ACT OF 1973

### (Michael O. Livingstone v. DeVry, Adtalem, Keller)

882.     Plaintiff incorporates herein by reference all the foregoing paragraphs as if fully set forth herein.

883.     This cause of action pertains to MGMT 600 class.

884.     In July 2020, defendant Finlay received Plaintiff's ADA accommodation notice directly from the University's ADA office.

885.     Unlike what other Professors do at the University, Defendant Finlay did not acknowledge receipt of Plaintiff's ADA accommodation notice to Plaintiff.

886.     By email dated July 11, 2020 at 5:27 PM, Plaintiff rather reached out to Defendant Finlay to inquire whether she has received his ADA accommodation notice from the ADA officer. Whereupon, Dr. Finlay replied by email dated July 11, 2020, 5:41 PM that she received it.

887.     The ADA accommodation notice (Exhibit 4D) provides Plaintiff with one-week extension for all individually assigned tasks in every class at the University except group work and weekly discussion postings.

*Plaintiff's Complaint.*

888.    The MGMT 600 class was predominantly group work via CAPSIM simulation with the Chester group of students. As such, the ADA accommodation ( Ex.4D) was not applicable.

889.    Around Week 6 of the MGMT 600 class, Defendant Dr. Finlay removed Plaintiff from the Chester group for Plaintiff to work on his own (Exhibit 23).

890.    By email dated August 20, 2020, 11:45 AM, Plaintiff reminded Dr. Finlay that "…Since I am working on my own for Week 7 and 8, my ADA accommodation extension applies to Week 7."

891.    Defendant Finlay did not apply the one-week ADA accommodation extension to Week 7 module's CAPSIM assignment and she awarded 0/50 points by default to Plaintiff , thereby drastically reducing Plaintiff's final grade to "B."

892.    Plaintiff asked defendant Finlay to use the Chester group's Week 7 score as usual for the CAPSIM assignment. However, Dr. Finlay declined. Although Defendant Dr. Finlay claimed that Plaintiff should complete all Weeks 7 & 8 module assignments on his own including the Week 7 CAPSIM assignment, Defendant Finlay still used the Chester group's scores of 80/100 points for the "balanced scorecard component" of Week 7 assignments.

893.    Plaintiff avers that Defendant Finlay acted with actual malice against him when she failed to apply the one-week ADA accommodation extension to Week 7 CAPSIM scores so that she could hurt Plaintiff's grade as demonstrated by her bad-faith and abusive efforts to use the punitive student code of conduct against Plaintiff that was aborted by Dean Ruth Pineda (compare "Exhibit 22" with "Exhibit 23").

894.    By direct and proximate cause of Defendants' unlawful conduct as described herein, Plaintiff has suffered, and continues to suffer, irreparable injury which cannot be fully

*Plaintiff's Complaint.*

compensated by an award of monetary damages for which Plaintiff is entitled to preliminary and permanent injunctive relief order by this Court to change the MGMT 600 grade from "B" to "A." disciplinary record entirely, as well as damages in an amount to be determined by the Court and reasonable costs of this lawsuit, including reasonable Attorneys' fees.

895.    As a further direct and proximate result of Defendants' unlawful conduct as described herein, Plaintiff Michael O. Livingstone has been caused and will continue indefinitely into the future to be caused severe mental anguish, anxiety, stress, and emotional and/or psychological distress, all with associated physical symptoms.

896.    WHEREFORE, because of the alleged intentional discrimination and malicious intent herein, pursuant to Section 504 of the Rehabilitation Act of 1973 damages, Plaintiff Michael O. Livingstone demands judgment against Defendants Adtalem, DeVry University, and Keller Graduate School of Management jointly, severally and/or severally for compensatory and punitive damages in an amount in excess of $5 million exclusive of interest and costs.

897.    WHEREFORE, consistent with damages under ADA statute, Plaintiff demands preliminary, declaratory, and permanent injunctive relief to vacate and expunge the adverse June 2019 disciplinary record and sanctions from Plaintiff's files at the University without making references to it; and such other and further relief as the Court may deem just and equitable; to change the MGMT 600 grade from "B" to "A" and enjoin defendants from further retaliations against Plaintiff regarding his ADA accommodations.

## COUNT THIRTY-FOUR

### NEGLIGENCE BY OMISSION, NEGLIGENCE, MALFEAANCE, MISFEASANCE, NONFEASANCE

### (Michael O. Livingstone v. Defendants Dr. Finlay, DeVry, Keller, Adtalem)

898.    This cause of action pertains to July-August 2020 session MGMT 600 class.

*Plaintiff's Complaint.*

899.    Plaintiff incorporates herein by reference all the foregoing paragraphs as if fully set forth herein.

900.    As a result of student feedback and numerous conflicts within student groups at the University, the University has implemented a tool at the beginning of every course for course instructors to place students into groups based on their geographic time zones.

901.    The MGMT 600 class reflects such a tool during Week 1 of the course within the discussion pages.

902.    Defendant Finlay failed to select students within the same time zones to form the Chester group.

903.    Defendants Ronke and Mulhern fall within Pacific Time Zone(PST), while Defendant Mr. Ho and Plaintiff Livingstone fall within the Eastern Standard Time Zone(EST).

904.    By direct and proximate cause of defendant Finlay's failure to select students within the same  time zone caused distracting conflicts within the Chester Group because when Plaintiff completed courses at the University where the Course instructors formed the student groups, Plaintiff performed excellently without any serious conflicts related to time of communication, unlike the MGMT 600 class and what happened in Exhibit No. 31, pp. 40-43 that led to Plaintiff being removed from the Chester group:

> May 2020 session, MIS-540, Innovation Through Technology, Final Grade "A".
> November 2019 session, INTL-500, Int'l Business Perspectives, Final Grade "A".
> May 2019 session, ENTR-550, Entrepreneurial Marketing, Final Grade "A".
> March 2019 session, ACCT-504, Acct Fin: Managerial Use, Analysis, Final Grade "A-".
> January 2019 Session, MGMT-520, Legal, Political, Ethical Dimensions of Business, Grade "A".
> January 2018 session, MGMT 570, Managing Conflict in Workplace, Final Grade "A."

Plaintiff  excelled in these other classes without any time zone conflicts with student group members.

*Plaintiff's Complaint.*

905. By direct and proximate cause of Defendants' unlawful conduct as described herein, Plaintiff has suffered, and continues to suffer, irreparable injury which cannot be fully compensated by an award of monetary damages for which Plaintiff is entitled to preliminary and permanent injunctive relief order by this Court.

906. WHEREFORE, Plaintiff Michael O. Livingstone demands judgment against Defendants Dr. Finlay, Adtalem, DeVry University, and Keller Graduate School of Management jointly, severally and/or severally for compensatory and punitive damages in an amount in excess of $200,000 exclusive of interest and costs; preliminary and permanent injunctive relief order by this Court to change the MGMT 600 grade from "B" to "A," expunge the disciplinary record; as well as damages in an amount to be determined by the Court and reasonable costs of this lawsuit.

## COUNT THIRTY- FIVE

### ARBITRARY AND CAPRICIOUS ACADEMIC DISMISSALS
### HIGHER EDUCATION LAW;
### BREACH OF CONTRACT

#### (Michael O. Livingstone v. Defendants DeVry University Office of Registrar Services; DeVry, Keller, Adtalem)

907. Plaintiff incorporates herein by reference the foregoing paragraphs as if fully set forth herein.

908. Since his enrollment at the University, Plaintiff has completed coursework that are provided under the University's catalogs for his MBA degree and certificates.

909. The University encourages students to earn more Degrees and Certificates under what is called "stackables."

910. In November 2019 and July 2020, Plaintiff maintained good academic standing beyond the required 3.0 GPA.

*Plaintiff's Complaint.*

911.    In November 2019 and July 2020, the University's defendant Registrar notified Plaintiff that Plaintiff is academically dismissed (Exhibits 29 &30).

912.    By email dated July 6, 2020 at 1:24 PM, Ms. Danielle Murphy, DeVry central Manager, explained that Plaintiff was academically dismissed due to "maximum coursework."

913.    Upon further inquiry, in November 2019, defendant Agresta explained that Plaintiff was academically dismissed due to maximum coursework.

914.    In both November 2019 and July 2020, Plaintiff appealed the academic dismissals and the Registrar reversed them.

915.    Although the Registrar removed the dismissals, they are still part of Plaintiff's record and it stigmatizes Plaintiff's records as "institutional action" that would impact Plaintiff's prospective contractual interests.

916.    Plaintiff avers that it is against the University's contractual catalogs that the Registrar academically dismissed Plaintiff whereas Plaintiff has always completed academic coursework consistent with the provisions of the contractual catalogs for the University's degree and certificate programs.

917.    The University's Academic Catalog provides that MBA degree seeking students can complete three concentrations while earning other graduate certificates. Plaintiff avers therefore that it is against the University's catalogs that Defendant Registrar academically dismissed Plaintiff for "maximum coursework."

918.    WHEREFORE, Plaintiff Michael O. Livingstone demands judgment against Defendants the office of the Registrar Services, DeVry University, and Keller Graduate School of Management jointly, severally and/or severally for compensatory and punitive damages in an

*Plaintiff's Complaint.*

amount in excess of $200,000 exclusive of interest and costs; preliminary and permanent

injunctive relief order by this Court to expunge the academic dismissals *ab arte, ab initio*

## COUNT TWENTY-EIGHT

### HIGHER EDUCATION LAW;
### INTENTIONAL DEPRIVATION OF ACCESS TO EDUCATIONAL
### MATERIALS

**(Plaintiff Livingstone v. Defendants Mulhern, Dr. Finlay, DeVry, Adtalem, Keller)**

*919.*     This cause of action pertains to July-August 2020 MGMT 600 class.

*920.*     Plaintiff incorporates herein by reference all the foregoing paragraphs as if fully

set forth herein.

*921.*     After Defendant Dr. Finlay removed Plaintiff from the Chester group of students,

Plaintiff did not have access to the files and information that were necessary to complete his

Weeks 7 & 8 assignments.

*922.*     Plaintiff requested for access into the Google drive folder (GM600) that contains

important files in their original formats just as he had access like the Chester group members.

*923.*     Defendant Mulhern sent Plaintiff "zip files" instead of original access link to the

google drive files like every other student has access.

*924.*     Plaintiff told Defendant Dr. Finlay to ask Defendant Mulhern to give him access

like every student has access to those files in their original formats. Those requests were ignored

and /or declined.

*925.*     By direct and proximate cause of Defendants' unlawful conduct as described

herein, Plaintiff was deprived access  and he did not have equal access to the original files and

*Plaintiff's Complaint.*

materials in their original formats to complete Weeks 7&8 assignments with excellence, precision, accuracy, and less stress.

926.     WHEREFORE, Plaintiff Michael O. Livingstone demands judgment against Defendants Mulhern, Dr. Finlay, DeVry, Adtalem, Keller jointly, severally and/or severally for compensatory and punitive damages in an amount in excess of $200,000 exclusive of interest and costs; preliminary and permanent injunctive relief order by this Court to restore the full scores of Plaintiff's Weeks 7 & 8 MGMT 600 assignments to  full scores and change the  final grade to  "A."

## COUNT THIRTY SIX

## ARBITRARY & CAPRICIOUS GRADE; SYSTEMIC BIAS

### (Michael O. Livingstone v. Defendants Dr. Finlay, DeVry, Adtalem, Keller)

927.     This cause of action pertains to July-August 2020 MGMT 600 class.

928.     Plaintiff incorporates herein by reference all the foregoing paragraphs as if fully set forth herein.

929.     Plaintiff believes and therefore avers that at the beginning of the MGMT 600 class in July-August 2020 session, Defendant Finlay demonstrated deep-seated antagonism against plaintiff that can be attributed to the fact that Plaintiff has ADA accommodation extension because unlike what other Professors of the University do when they received Plaintiff's ADA notice, Dr. Finlay did not acknowledge receipt of Plaintiff's ADA accommodation notice to Plaintiff when she received it until Plaintiff followed up with her.

930.     In May 2020 session at the University, MIS 540 class, for example, it was the course instructor, Dr. Peter Newman, who reached out to Plaintiff as soon as he received the ADA accommodation notice from the University's ADA officer. Plaintiff excelled in Dr.

*Plaintiff's Complaint.*

Newman's class with a straight "A" final grade without any problems or animosity from Dr. Newman at all.

*931.* Plaintiff avers that at all times, Dr. Finlay was biased and partial against Plaintiff and it reflects within his final grade.

*932.* During the MGMT 600 class, Plaintiff posted a comment about the fact that the class operates with different schedule unlike other classes in the University and the published deadlines in the University's catalog that all assignments are due during weekends. Plaintiff also commented that forming student groups of students without the same aptitudes was a problem because the University never trained students about presentations. Yet, the University expects students to do weekly presentations. Defendant Mr. Ho, for example, and other students told the class that they were "shy" or "nervous" to do presentations. In "graduate school," this should not happen. Plaintiff believes and therefore aver that Dr. Finlay took offense against Plaintiff's comment and it impacted Plaintiff's final grade.

*933.* During a recorded Zoom meeting on August 4, 2020 with the Chester group students to address a Chester group conflict, Dr. Finlay blamed Plaintiff alone and accused Plaintiff for "making a mistake" thinking that Felix Caruso (Ronke's student support adviser) was the same person as Felix Bill Caruso (University's General Counsel and then- interim President), whereas Ronke rather made a mistake to begin with when she copied Plaintiff on her email dated Aug 3, 2020, 5:03 PM to Felix Caruso notwithstanding the fact that FERPA educational privacy regulations protect student communications with their academic advisers. During that meeting, Dr. Finlay kept telling Plaintiff that "he would regret."

*934.* Before the August 10, 2020 recorded WebEx class with the entire class, Plaintiff told defendant Mulhern that he is around an Airport and so the Chester group should not be the

*Plaintiff's Complaint.*

first to present this time so that Plaintiff can find a spot to do the presentation around the Airport.

Defendant Mulhern indicated that he also has to leave at 4:30PST. Dr. Finlay interrupted with

partiality and bias that since Mulhern has to leave, the group should present first. Meanwhile,

both students had to leave. Mulhern did not leave after the presentation. He stayed through the

second presentation and posted a comment feedback. When Plaintiff informed Dr. Finlay that

Mulhern actually stayed for the second group's presentation, Dr. Finlay did not say anything

about it. Plaintiff avers that this was a reflection of Dr. Finlay's systemic bias against Plaintiff

and Plaintiff avers this bias was extrapolated unto his final grade too.

935.    Around August 13, 2020, when defendant Mr. Ho reported Plaintiff to Dr. Finlay

for sending text messages around 1amET to the Chester group (Exhibit No. 31), Dr. Finlay did

not even bother to seek Plaintiff's side of the story. Instead, she acted with bias and partiality and

filed a formal code of conduct complaint or formal complaint against Livingstone, which was

aborted by Dean Ruth Pineda (Exhibits 22 and 23). When Plaintiff told Dr. Finlay that defendant

Mulhern also sent text messages around 1amET, yet Defendant Mr. Ho took no issue with it, Dr.

Finlay did not say or anything about that. Plaintiff believes this is a reflection of Dr. Finlay's

systemic bias and partiality against him.

936.    In the final Week 8 of the MGMT 600 class, Dr. Finlay asked students to post

what they like or learned about the class. Plaintiff chose not to post it to course's open platform

because he was disappointed by the many incoherencies, discrepancies, and distracting conflicts

in the class. Dr. Finlay took malicious issue with that.

937.    As a part of the MGMT 600 Week 8 course requirements, Plaintiff submitted 16-

paged cumulative financial report he prepared individually from the Chester Group and

PowerPoint with adequate citations and references (Exhibit No. 32). Defendant Dr. Finlay

*Plaintiff's Complaint.*

deducted about 20 points from Plaintiff's work claiming that Plaintiff did not "state what he learned from the class." Meanwhile, a financial report is a technical document "financial report" and it is not the platform to write personal praises for a course instructor especially if student was not satisfied with the quality of education provided in the MGMT 600 class. Plaintiff avers that this reflects Dr. Finlay's systemic bias against Plaintiff.

*938.* By direct and proximate cause of Defendants' unlawful conduct as described herein, Plaintiff's MGMT 600 class grade does not have integrity of grading and it reduces Plaintiff's GPA.

*939.* WHEREFORE, Plaintiff Michael O. Livingstone demands judgment against Defendants Dr. Finlay, DeVry, Adtalem, Keller jointly, severally and/or severally for compensatory and punitive damages in an amount in excess of $500,000 exclusive of interest and costs; preliminary and permanent injunctive relief order by this Court to restore the full scores of Plaintiff's Weeks 7 & 8 MGMT 600 assignments and change the grade to " A."


## COUNT THIRTY-SEVEN

### CONSTRUCTIVE TRUST;<br>COURSE REGISTRATION MALPRACTICE;<br>HIGHER EDUCATION LAW;<br>NEGLIGENCE, GROSS NEGLIGENCE

### (Michael O. Livingstone v. DeVry, Keller, Adtalem)

*940.* Plaintiff incorporates herein by reference all the foregoing paragraphs as if fully set forth herein.

*941.* In May-June 2020 session, Plaintiff enrolled and completed the online graduate level course "innovation in technology" (MIS 540) at the University with Dr. Newman and received a final grade "A" without any problems with Dr. Newman at all.

*Plaintiff's Complaint.*

942.    Plaintiff enrolled in the MIS 540 class because it is currently catalogued as a required class for his graduate certificate in Health Services Management.

943.    Plaintiff's then-designated student defendant Ms. Arissa Bryant, did not tell Plaintiff that the May 2020 MIS 540 class was a substitute class for MIS-535 class which Plaintiff had previously completed in March 2017 session (*see* emails Exhibit 26). It is just a change of course titles.

944.    Later that May 2020 session, Ms. Renuka Patel was installed as Plaintiff's new student academic adviser.

945.    Ms. Renuka Patel contacted Plaintiff to advise that MIS 540 does not count towards Plaintiff's degree program and so Plaintiff would not receive financial aid for it (*see* generally Exhibits 26 and 27). So, either the University would drop the MIS 540 course retroactively, or Plaintiff would have to pay out-of-pocket.

946.    Plaintiff indicated at that point in the session that he cannot drop the MIS 540 class because that would create a gap within his education and that would also place Plaintiff's student loans into repayment and it would create undue hardship for him (Exhibits 26, 27). So, dropping the class way down into the session is not an option.

947.    Plaintiff asserted that just as Ms. Renuka Patel observed and contacted Plaintiff that the MIS 540 class does not count towards his MBA degree requirements because Plaintiff has already completed MIS 535 in March 2017 session with defendant Jacob Gordon, defendant Ms. Bryant should have also noticed it and advised Plaintiff especially when Plaintiff exchanged emails with Defendant Bryant around the early weeks beginning of the course (Exhibit 26).

*Plaintiff's Complaint.*

948. Ms. Patel referred the matter to her boss, Ms. Danielle Murphy, who recommended that Plaintiff can complete the MIS 540 class as a repeat class for the previous MIS 535 class, which will therefore be covered by financial aid.

949. Plaintiff completed the MIS 540 class.

950. Plaintiff avers that it was the duty of her student support academic adviser, defendant Ms. Bryant, to advise him at the beginning of the MIS 540 class that the MIS 540 class would not be counted as a part of his MBA degree program and so Plaintiff would therefore not receive financial aid.

951. Plaintiff avers that it was the University's duty to publish accurate information in its current academic catalogs that the MIS 540 class substitutes the MIS 535 class.

952. Plaintiff avers that he has wasted his time and incurred debt paying for his wasted time over the MIS 540 class and it was not his fault. Therefore, the entire cost of attendance for the MIS 540 class in May 2020 should be imposed upon the University as constructive trust.

953. Plaintiff avers that the University and defendant Bryant should rather be caused by this Court to bear the costs of their negligence, not Plaintiff.

954. Ms. Danielle Murphy agreed that it was not Plaintiff's fault. It was The fault of Ms. Bryant.

955. In effect, plaintiff has been caused to waste to his time and still pay for it.

956. WHEREFORE, Plaintiff Michael O. Livingstone demands judgment against Defendants DeVry, Adtalem, Keller, Bryant jointly, severally and/or severally for compensatory and punitive damages in an amount in excess of $200,000 exclusive of interest and costs; declaratory, preliminary, and permanent injunctive relief order by this Court imposing the full costs of attendance for the MIS 540 upon the University.

*Plaintiff's Complaint.*

## COUNT THIRTY-EIGHT

**MALICIOUS PROSECUTION; ABUSE OF PROCESS;
RETALIATION UNDER CIVIL RIGHTS ACT OF 1964;
N.J.CONSTITUTION FIRST AMENDMENT SPEECH, RETALIATION**

**(Michael O. Livingstone v. DeVry, Keller, Adtalem)**

*957.*   Plaintiff incorporates herein by reference all the foregoing paragraphs as if fully set forth herein.

*958.*   Plaintiff enrolled in the graduate online class called Managing Organizational Change ("HRM 587") for the September 2020-October 2020 session at the University as part of academic requirements for his second-degree track, Master of Public Administration ("MPA") degree.

*959.*   Around August 17, 2020, Plaintiff filed a copy of a cease-and-desist notice against Defendant Agresta and Plaintiff served the notice upon Defendant Agresta by email and copied University's General Legal Counsel, Mr. Bill Caruso, about it (Exhibit 21) Mr. Caruso also happens to be the University's Vice President. Plaintiff also sent the hard copy.

*960.*   In September 2020, Plaintiff received notification from the University's Ms. Patti Meyer and Mr. Chad Maldonado that he has been placed on interim suspension (Exhibit 25) for copying Mr. Bill Caruso, who is the University's General Legal Counsel, on the email Exhibit 21 to defendant Agresta because that allegedly violates the University's limited order sanction that was imposed upon Plaintiff last November 2019- January 2020 session.

*961.*   The University dropped Plaintiff from his HRM 587 class.

*962.*   Plaintiff explained that he cannot be placed on interim suspension for copying Mr. Caruso on his email (Ex. 21) because he is required by law to engage the attention of University Legal Counsel when serving a court document upon any of the University's officials.

*Plaintiff's Complaint.*

963. Plaintiff also explained that he has a duty to report discrimination or harassment between him and defendant Agresta to a "higher management level official." The University's General Counsel who also happens to be the University's Vice President is qualified as a higher management level official with ability to take preventive actions.

964. The notification of interim suspension also claims that Plaintiff sent threatening emails in violation of the student code of conduct because Plaintiff made references to a shooting in his emails to defendant Dr. Finlay (Exhibit 25). Plaintiff denied the allegations.

965. Plaintiff avers that he cannot be suspended for serving legal documents filed with this court upon defendant Agresta and the University's legal counsel.

966. Plaintiff avers that he cannot have adverse action for filing this federal lawsuit against defendant Agresta and the University.

967. Plaintiff avers that in New Jersey, he has free speech privileges in a private institution.

968. Plaintiff avers that this is another way defendant Dr. Finlay wants Plaintiff to regret, as she previously stated to Plaintiff.

969. Plaintiff avers that after Dr. Finlay's first malicious and abusive attempt to use the student conduct code against Plaintiff to carry out her agenda to make Plaintiff regret (Exhibit 23) was aborted by Dean Pineda (Exhibits 22), Dr. Finlay is using these new allegations as another avenue to fulfil her malicious intents against Plaintiff "to regret."

970. Plaintiff requested for details in Exhibit 25 about who made the complaint that he copied Mr. Caruso on his email (Exhibit 21). However, Ms. Patti Meyer never addressed that inquiry.

*Plaintiff's Complaint.*

971.    Plaintiff alerted Ms. Patti Meyer that his emails from which the statements were truncated such as Exhibit 20 also presents Plaintiff's formal complaint of racial discrimination to the University. Yet, no anti-discrimination officer of the University got back to Plaintiff to address the alleged discrimination. Ms. Patti Meyer ignored Plaintiff's concerns.

972.    Plaintiff's email communications with Ms. Patti within Exhibit 25 also suggest that the outcome of upcoming hearing is already decided to expel Plaintiff who is now 99% eligible to graduate for his MBA degree.

973.    To the extent that Plaintiff's discrimination complaints are ignored and they are contained in the emails being used against him, Plaintiff avers that the university is retaliating against him for filing this federal lawsuit and for complaining about discrimination in the Exhibits 20 and 21.

974.    To the extent that all of Plaintiff's procedural questions have been ignored in Exhibit 25, the outcome of the hearing is predetermined.

975.    To the extent that there is already a motion for preliminary injunction denied by this Court *without prejudice* pending Rule 4 process service (ECF No.9) where Plaintiff challenges the legitimacy of the disciplinary sanctions the University imposed around November 2019 - January 2020 against him, Plaintiff requests for TRO against the upcoming September 15, 2020 hearing, so that the Court can adjudicate the challenged sanctions in ECF No. 9 first.

976.    To the extent that Plaintiff has been dropped from his current HRM 587 class, an indelible gap has been created within Plaintiff's continued education.

977.    Plaintiff will seek continuance of the hearing in ECF No.25.

978.    WHEREFORE, Plaintiff Michael O. Livingstone demands judgment against Defendants DeVry, Adtalem, Keller jointly, severally and/or severally for compensatory and

*Plaintiff's Complaint.*

punitive damages in an amount in excess of $3million exclusive of interest and costs; temporary restraining order, preliminary and permanent injunctive relief order by this Court against Exhibit 25.

## COUNT THIRTY-NINE

### VIOLATION OF CEASE-AND-DESIST NOTICE; HARRASSMENT
(Michael O. Livingstone v. Defendants Agresta, Meyer, DeVry, Keller, Adtalem)

*979.* Plaintiff incorporates herein by reference all the foregoing paragraphs as if fully set forth herein.

*980.* On December 2, 2019, Plaintiff filed federal civil complaint against the University and defendant Agresta in U.S.District Court for District of New Jersey, Trenton. The case was docketed as 19-cv-20531-BRM-DEA. On August 17, 2020, Plaintiff filed with the New Jersey District Court a cease-and-desist notice against defendant Agresta to stay away from Plaintiff's matters at the University and outside the University especially since Plaintiff is not a part of the Philadelphia Campus.

*981.* By email dated August 20, 2020, 9:35 AM, Plaintiff notified Defendant Agresta about the cease-and-desist notice and copied the University's in-house Attorney Mr. Bill Caruso and Philadelphia Center Dean, Mr. Waleed Yousef, on that email, for enforcement.

*982.* By email notification of student conduct charges dated September 4, 2020, defendant Meyer advised that Plaintiff is placed on interim suspension and *inter alia* explained (Exhibit 25, Page 2) that this is a reason:

> …In an August 20, 2020 email from you to Jonathan Agresta, DVU Assistant Dean, you included DVU leadership (Bill Caruso, DeVry's General Counsel, Secretary and Vice President, Regulatory Affairs which is a violation of the November 15, 2019 sanctions. Specifically, the stipulation that you "…refrain from emailing or calling DeVry University and Keller Graduate School of Management leadership."

*Plaintiff's Complaint.*

983.    The November 15, 2019 sanctions, specifically, the stipulation that Plaintiff "…refrain from emailing or calling DeVry University and Keller Graduate School of Management leadership" was imposed by Defendant Agresta (Exhibit 14C) who did not have the jurisdiction at the time to act that sanction remains challenged in this lawsuit to be vacated.

984.    As a Plaintiff in federal litigation, Plaintiff has a right to notify the University's General Legal Counsel (Mr. Bill Caruso) about his cease-and-desist notice that is filed with Federal Court and served upon a University official – defendant Agresta.

985.    As a matriculated graduate student of the University, Plaintiff has a right to email or call DeVry University and Keller Graduate School of Management leadership, including the University's General Legal Counsel and Vice President (Mr. Bill Caruso) if Plaintiff feels that defendant Agresta or any University official is harassing him or creating a hostile educational environment for him.

986.    Plaintiff brings this cause of action for this Court to sanction by referring Defendant Agresta for criminal prosecution. Plaintiff reserves the right to file private criminal complaint against Defendant Agresta.

987.    To the extent that Plaintiff was placed into interim suspension and administratively dropped from his class, thereby creating an indelible gap in his continued education, Plaintiff has been irreparably injured.

988.    WHEREFORE, Plaintiff Michael O. Livingstone demands judgment against Defendants Agresta, DeVry, Adtalem, Keller jointly, severally and/or severally for compensatory and punitive damages in an amount in excess of $30 million exclusive of interest and costs; temporary restraining order, prohibitory order, preliminary, and permanent injunctive relief order by this Court against Exhibit 25.

*Plaintiff's Complaint.*

### E.  RELIEF REQUESTED

Plaintiff Michael O. Livingstone hereby declares that the relief requested for each count are set forth under separate final paragraph(s) under the WHEREFORE clauses of each COUNT.


### F.  Fed. R. Civ. Proc. 65 AFFIDAVIT  OF PLAINTIFF MICHAEL O. LIVINGSTONE

The within named Plaintiff, Mr. Michael O. Livingstone, hereby states under penalties of perjury, that the facts set forth and incorporated in this Amended Complaint with Exhibits are true and correct to the best of his knowledge, information, and belief.

Respectfully submitted,



Michael O. Livingstone, *pro se*
1200 Haddonfield Road-1302
Pennsauken, New Jersey 08110
Mailing Address:
P.O. Box 34246
Philadelphia, Pennsylvania 19101
Telephone: 856-676-6951

Emails: mikeosei@gmail.com (preferred)
mikeliving40@gmail.com


Dated: September 18, 2020

# Exhibit "M"

## Description

Settlement agreement repudiated by Plaintiff still signed by defendants
**AFTER** Plaintiff repudiated it.

## CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE

This Confidential Settlement Agreement and Release ("Agreement") is entered into as of the Effective Date by and between the Parties, Plaintiff Michael O. Livingstone ("Mr. Livingstone") on the one hand, and Defendants DeVry University, Inc. ("DeVry") and Adtalem Global Education Inc., ("Adtalem") (collectively the "Defendants") on the other hand. All references in this Agreement to a "Party" or "the Parties" shall refer only to the Parties to this Agreement.

## RECITALS

A. On or about November 19, 2019, Mr. Livingstone filed a federal civil lawsuit against Defendants in the District of New Jersey, captioned as *Michael O. Livingstone v. DeVry University, Inc., et al.*, Case No. 3:19-cv-20531-BRM-DEA (USDC-NJ) (the "New Jersey Action"). On or about September 14, 2020, Mr. Livingstone dismissed that lawsuit without prejudice.

B. On or about September 18, 2020, Mr. Livingstone filed a federal civil lawsuit against Defendants in the Northern District of Illinois, captioned as *Michael O. Livingstone v. DeVry University, Inc., et al.*, Civil Action No. 1:20-cv-05567 (USDC-Northern District Illinois) (the "Northern District of Illinois Action").

C. The New Jersey Action and the Northern District of Illinois Action are collectively referred to herein as the Actions.

D. Defendants deny all material allegations in the Actions.

NOW, THEREFORE, for good and valuable consideration of the mutual promises contained in this Agreement and intending to be legally-bound, the Parties to this Agreement, incorporating the Recital set forth above, hereby agree as follows:

1

## 1.    Background.

The Parties are entering into this Agreement to avoid the time and expense of litigation, and without admitting fault or liability of any kind, and to settle and fully and finally resolve all differences between them, including, but not limited to, all claims arising out of Mr. Livingstone's enrollment at DeVry and all allegations and claims asserted in the Actions. This Agreement constitutes the good faith settlement of all claims of any nature whatsoever that Mr. Livingstone has or may have against the Defendants whether asserted or unasserted.

## 2.    No Admission of Liability.

This Agreement is not and shall not in any way be construed as an admission by the Parties of any violation of any of Mr. Livingstone's statutory or other rights. Defendants deny any and all allegations contained in, associated with or related to the Actions. The Parties expressly represent, understand and assent that this Agreement is a compromise of disputed claims, and that the exchange of consideration by virtue of this Agreement and any other acts, omissions or settlements by the Parties are not to be construed as an admission of liability by Defendants. Nor shall any acts, omissions, or statements by the Parties be construed as an admission of liability. Nothing contained in this Agreement shall be admissible evidence in any judicial, administrative, or other legal proceeding (other than a proceeding for breaching this Agreement), or be construed as an admission of any liability or wrongdoing on the part of Defendants of any violation of federal or state statutory or common law or regulation.

## 3.    Voluntary Withdrawal from the University

Mr. Livingstone shall be permitted to voluntarily withdraw permanently from DeVry. Should he elect to do so, Mr. Livingstone shall submit the requisite form to DeVry's Registrar to discontinue and remove his enrollment at DeVry.

2

### 4.    Graduation from DeVry and Code of Conduct Hearing Against Mr. Livingstone.

Mr. Livingstone must retake Math 533 in order to graduate from DeVry, unless DeVry determines otherwise in which case he may only need to complete the coursework not yet completed in Math 533. DeVry shall not charge Mr. Livingstone tuition to retake Math 533. While enrolled in Math 533, Livingstone agrees to abide by all of DeVry's policies, procedures and rules. Upon Mr. Livingstone's graduation from DeVry, DeVry will close any pending Code of Conduct hearings pending against Mr. Livingstone.

### 5.    No Right to Future Enrollment or Employment at DeVry.

Mr. Livingstone agrees not to apply for or otherwise seek enrollment at DeVry or any Adtalem institution as a student or to apply for, or, otherwise seek employment at DeVry or Adtalem at any time in the future. Mr. Livingstone will not seek to become a DeVry or Adtalem student of any kind, including but not limited to the following types: matriculated, non-matriculated, provisional, full-time, part-time, undergraduate, graduate, enrolled, and non-enrolled. Mr. Livingstone agrees that DeVry and Adtalem have no obligation to readmit, retain, employ, enroll, or hire him in the future. Mr. Livingstone expressly agrees that he will not allege or claim that any failure or refusal by DeVry or Adtalem to admit him as a student of any kind, or to hire him for employment as any form retaliation against him but, rather, Mr. Livingstone acknowledges such rights on the part of DeVry and Adtalem constitutes valid and legal part of the contractual consideration for this Agreement.

### 6.    Non-Disparagement of Mr. Livingstone.

DeVry will not take any action or make any statement, written or oral that disparages Mr. Livingstone; nor shall DeVry take any action that is intended to damage the reputation of Mr. Livingstone.

3

**7. General Release of All Defendants.**

Except for the obligations created by this Agreement, Mr. Livingstone, on behalf of himself individually, and all of his past, present and future predecessors, successors, heirs, assigns, relations, attorneys and agents, hereby releases and forever discharges all defendants in the Actions, including but not limited to, Defendants, and any and all of Defendants' past, present or future executives, employees, consultants, independent contractors, insurers, directors, managing directors, officers, partners, principals, managers, members, attorneys, accountants, financial and other advisors, investment bankers, underwriters, shareholders, owners lenders, auditors, investment advisors, legal representatives, successors in interest, companies, firms, trusts, corporations, administrators, predecessors, successors, assigns, parent companies, subsidiaries, agents, associates, affiliates, divisions, holding companies (collectively, the "Releasees") from any and all claims, debts, liabilities, demands, obligations, costs, expenses, actions and causes of action of every nature, character and description, whether known or unknown, suspected or unsuspected, asserted or unasserted, fixed or contingent, which Mr. Livingstone now owns or holds, or may ever own or hold from the beginning of time to the Effective Date of this Agreement against Defendants, including but expressly not limited to the Actions.

Particularly, but without limitation, Mr. Livingstone releases any claims he has had or may have had against the Releasees arising from or related to Mr. Livingstone's enrollment as a student at DeVry, including any claims arising from any alleged violation by Defendants of any federal, state or local statutes, and any claims or allegations asserted in the Actions. Nothing in this Agreement is intended as a release of claims related to the validity or enforcement of this Agreement, nor does it constitute a release of any rights or claims which may accrue after Mr. Livingstone signs this Agreement.

4

## 8. Voluntary Dismissal of All Claims With Prejudice.

Mr. Livingstone affirms that, within two weeks of signing this Agreement, he will file with the United States District Court for the Northern District of Illinois a stipulation of dismissal that will dismiss with prejudice all claims asserted in *Michael O. Livingstone v. DeVry University, et al.*, Civil Action No. 1:20-cv-05567 (USDC-N.D.Ill.).

Mr. Livingstone also agrees and promises that he has not and will not file, or permit to be filed in his name or on his behalf, any claim with any local, state or federal agency, or any lawsuit in court, against any of the persons or entities released in this Agreement, based upon any act or event which occurred on or before the effective date of this Agreement, and further agrees that, if any charge, complaint, lawsuit or administrative claim is filed in his name or on his behalf with any administrative agency or organization, or in any other forum, against any of the persons or entities released in this Agreement, based upon any act or event which occurred on or before the effective date of this Agreement, he will not seek or accept any personal relief, including but not limited to an award of monetary damages.

Mr. Livingstone represents and agrees that he has not filed any notices, claims, complaints, charges, or lawsuits of any kind whatsoever against the Releasees (as defined in Paragraph 7) with any court, any governmental agency, any regulatory body or any other third party with respect to any matter related to Defendants, Defendants' affiliates or a Releasee, other than the Actions.

In the same token, DeVry expressly agrees not to file or pursue any civil claim  or with any local, state or federal agency, or any lawsuit in court, against Mr. Livingstone based upon any act or event which occurred on or before the effective date of this Agreement, and further agrees that, if any civil complaint, lawsuit or administrative claim is filed against Mr. Livingstone with any agency or organization, or in any other forum, against Mr. Livingstone based upon any

5

act or event which occurred on or before the effective date of this Agreement and Release, DeVry and Adtalem shall withdraw and dismiss it with prejudice. DeVry and Adtalem further agree not to file any criminal reports on their behalf with any state or federal law enforcement agency regarding Mr. Livingstone based upon any act or event which occurred on or before the effective date of this Agreement.

### 9. Confidentiality and Mr. Livingstone's Motions to Seal the Court Records.

To protect their own reputations and good names, Mr. Livingstone will move the Courts to seal the Court records in both the New Jersey Action and the Northern District of Illinois Action. Defendants agree not to oppose Mr. Livingstone's motions to seal. It will be up to the Court to grant Mr. Livingstone's motion to seal.

Mr. Livingstone, his representatives, employees, agents, heirs, executors and/or administrators represent and agree to treat the terms and conditions of this Agreement, all facts and circumstances regarding the Actions, the dispute between the Parties and the final negotiations regarding this Agreement (the "Confidential Information") as strictly confidential, and have not previously been disclosed, discussed or revealed, and shall not in the future disclose, discuss or reveal the Confidential Information to any persons, entities or organizations other than the Parties hereto and their counsel. Notwithstanding the foregoing, this confidentiality representation and agreement does not prohibit disclosure of the Confidential Information by Mr. Livingstone, his attorneys, tax preparers or accountants, provided that disclosure is (1) required for compliance with federal, state or local laws, rules or regulations; (2) required for compliance with a subpoena or other court order; or (3) required for performance or enforcement of obligations under this Agreement. In the event Mr. Livingstone receives a subpoena or other legal process calling for the production of this Agreement or disclosure of the terms of this settlement or of this Agreement, or in any way related to the subject matter of this Agreement or of this settlement, notice shall be

6

given within five (5) business days of receipt of such subpoena or other legal process to the Defendants and their counsel to give the Defendants an opportunity to object to such production or disclosure. Mr. Livingstone shall then cooperate to the extent legally permissible with the Defendants' efforts, if any, to oppose the subpoena or legal process.

### 10. Acknowledgement of Understanding.

Mr. Livingstone represents and certifies that he has carefully read and fully understands all of the provisions and legal effects of this Agreement and the meaning and effect thereof. Mr. Livingstone acknowledges that he is entering into this Agreement voluntarily, and that Defendants have not made any representations concerning the terms or effects of this Agreement other than those contained herein. Mr. Livingstone represents that he had the opportunity to consult with, and receive advice from, independent legal counsel in connection with his review and execution of this Agreement.

### 11. Acknowledgement of Release of All Claims.

Mr. Livingstone expressly acknowledges that this Agreement is intended to extinguish, without limitation, all claims that have arisen and of which Mr. Livingstone knows or does not know, should have known, had reason to know, or suspect to exist in his favor at the time of his signing of this Agreement. Therefore, this Agreement eliminates all known and unknown claims that Mr. Livingstone might have.

### 12. Applicable Law.

This Agreement and all questions relating to its validity, interpretation, performance and enforcement (including, without limitation, provisions concerning limitations of actions),will be governed by and construed in accordance with the laws of the State of Illinois and Federal Laws, as applicable, without regard to its choice of law provisions. The exclusive jurisdiction and venue for any dispute relating to this Agreement is United Stated District Court for the Northern District

7

of Illinois.

### 13. Consideration to Mr. Livingstone.

Upon receipt by Defendants of an executed copy of this Agreement with an actual (not electronic) signature by Mr. Livingstone and an executed W-9 form by November 23, 2020, Defendants shall pay the sum of $20,000.00 (twenty-thousand dollars) to Mr. Livingstone (the "Settlement Payment") which shall be sent by the United States Postal Service via Priority Mail Express, Overnight Guarantee, on or before December 4, 2020. Defendants shall send the Settlement Payment to Mr. Livingstone at the following address:

Michael O. Livingstone
Post Office Box No. 34246
Philadelphia, Pennsylvania 19101

### 14. Entire Agreement.

This Agreement as to the resolution of this matter represents the complete agreement between the Parties concerning the subject matter in this Agreement and Release and fully supersedes any and all prior or contemporaneous representations, warranties, agreements or understandings, written or oral made by the Parties or their representatives pertaining to the subject matter hereof. The Parties have not relied on any facts, statements, or the failure by any Party to make statements or disclose facts, in entering into this Agreement. No extrinsic evidence whatsoever may be introduced in any judicial proceeding involving the construction or interpretation of this Agreement.

### 15. No Oral Waiver or Modifications of Agreement.

No attempted modification or waiver of any of the provisions of this Agreement shall be binding upon either party unless in writing and signed by all Parties.

### 16. Captions.

The captions contained in this Agreement and Release are for the purposes of identification

8

and convenience only and do not define, limit or prescribe the scope of this Agreement.

### 17. Representations and Warranties.

The Parties represent that there has not been any assignment, transfer, conveyance or other disposition of any rights, obligations or liabilities released under the terms of this Agreement, and that there will be no assignment, transfer, or purported assignment or transfer to any person or entity whatsoever, of any claim, debt, liability, demand, obligation, cost, expense, action, defense or cause of action released. The Parties represent that they have the authority to enter into this Agreement, and have obtained the consent of anyone necessary to enter into this Agreement.

This Agreement shall be construed as if the Parties jointly prepared it. Any uncertainty or ambiguity in the Agreement shall not be interpreted against either Party.

### 18. Taxes.

The Parties and their counsel agree that they have not received tax advice from any opposing Party and acknowledge they are responsible for their own tax liability, if any, that may result from this Agreement.

### 19. Violation of Agreement.

If Mr. Livingstone or any of the Releasees prevail in a legal or equitable action claiming that the other Party has breached this Agreement, the prevailing Party(ies) shall be entitled to recover from the other Party(ies) the reasonable attorneys' fees and costs incurred by the prevailing Party(ies) in connection with such action, in addition to other available remedies.

### 20. Binding on Successors and Assigns.

This Agreement shall inure to the benefit of, and shall be binding upon, each of the Parties hereto and their successors or assigns.

### 21. Severability.

In the event any part of this Agreement is deemed unenforceable, the unenforceable

9

provisions will be severed and the remaining provisions shall survive.

## 22.    Counterparts.

This Agreement may be executed and delivered in separate counterparts, each of which, when so executed and delivered, shall be an original, but such counterparts together shall constitute but one and the same instrument and agreement. ".Pdf" signatures shall be effective and shall have the same force and effect as original signatures.

## 23.    Effective Date.

The Effective Date of this Agreement shall be the last date that any Party fully and duly executed the Agreement.

IN WITNESS WHEREOF, and intending to be legally bound hereby, the Parties hereto execute the foregoing Confidential Settlement Agreement and Release.

DATED: November 24, 2020

**Plaintiff**

By: _____

**Michael O. Livingstone**

DATED: November ___, 2020

**DeVry University, Inc.**

By: _____

F. Willis Caruso, Jr.

Its:    Interim President and CEO

DATED: November 11/30 2020

**Adtalem Global Education Inc.**

By: *Chaka Patterson*

Chaka M. Patterson

Its:    Senior Vice President and General Counsel

10

provisions will be severed and the remaining provisions shall survive.

**22. Counterparts.**

This Agreement may be executed and delivered in separate counterparts, each of which, when so executed and delivered, shall be an original, but such counterparts together shall constitute but one and the same instrument and agreement. ".Pdf" signatures shall be effective and shall have the same force and effect as original signatures.

**23. Effective Date.**

The Effective Date of this Agreement shall be the last date that any Party fully and duly executed the Agreement.

IN WITNESS WHEREOF, and intending to be legally bound hereby, the Parties hereto execute the foregoing Confidential Settlement Agreement and Release.

DATED: November 24, 2020

**Plaintiff**

By: _____
Michael O. Livingstone

DATED: November 30, 2020

**DeVry University, Inc.**

By: _____
F. Willis Caruso, Jr.
Its: ~~Interim President and CEO~~
General Counsel, Secretary & VP Regulatory Affairs

DATED: November ___, 2020

**Adtalem Global Education Inc.**

By: _____
Chaka M. Patterson
Its: Senior Vice President and General Counsel

10

# Request for Taxpayer
## Identification Number and Certification

▶ Go to *www.irs.gov/FormW9* for instructions and the latest information.

**Give Form to the
requester. Do not
send to the IRS.**

1 Name (as shown on your income tax return). Name is required on this line; do not leave this line blank.

MICHAEL O. LIVINGSTONE

2 Business name/disregarded entity name, if different from above

3 Check appropriate box for federal tax classification of the person whose name is entered on line 1. Check only one of the following seven boxes.

[X] Individual/sole proprietor or single-member LLC   [ ] C Corporation   [ ] S Corporation   [ ] Partnership   [ ] Trust/estate

[ ] Limited liability company. Enter the tax classification (C=C corporation, S=S corporation, P=Partnership) ▶ _____

Note: Check the appropriate box in the line above for the tax classification of the single-member owner. Do not check LLC if the LLC is classified as a single-member LLC that is disregarded from the owner unless the owner of the LLC is another LLC that is not disregarded from the owner for U.S. federal tax purposes. Otherwise, a single-member LLC that is disregarded from the owner should check the appropriate box for the tax classification of its owner.

[ ] Other (see instructions) ▶

4 Exemptions (codes apply only to certain entities, not individuals; see instructions on page 3):

Exempt payee code (if any) _____

Exemption from FATCA reporting code (if any) _____

*(Applies to accounts maintained outside the U.S.)*

5 Address (number, street, and apt. or suite no.) See instructions.

P. O. BOX 34246

6 City, state, and ZIP code

PHILADELPHIA, PA 19101

7 List account number(s) here (optional)

Requester's name and address (optional)

---

## Part I    Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on line 1 to avoid backup withholding. For individuals, this is generally your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the instructions for Part I, later. For other entities, it is your employer identification number (EIN). If you do not have a number, see *How to get a TIN*, later.

**Note:** If the account is in more than one name, see the instructions for line 1. Also see *What Name and Number To Give the Requester* for guidelines on whose number to enter.

Social security number

[ ][ ][ ] – [ ][ ] – [ ][ ][ ][ ]

or

Employer identification number

[ ][ ] – [ ][ ][ ][ ][ ][ ][ ]

---

## Part II    Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me); and
2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding; and
3. I am a U.S. citizen or other U.S. person (defined below); and
4. The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. See the instructions for Part I, later.

**Sign Here**

Signature of U.S. person ▶

Date ▶ NOVEMBER 24, 2020

---

# General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

**Future developments.** For the latest information about developments related to Form W-9 and its instructions, such as legislation enacted after they were published, go to *www.irs.gov/FormW9*.

## Purpose of Form

An individual or entity (Form W-9 requester) who is required to file an information return with the IRS must obtain your correct taxpayer identification number (TIN) which may be your social security number (SSN), individual taxpayer identification number (ITIN), adoption taxpayer identification number (ATIN), or employer identification number (EIN), to report on an information return the amount paid to you, or other amount reportable on an information return. Examples of information returns include, but are not limited to, the following.

• Form 1099-INT (interest earned or paid)

• Form 1099-DIV (dividends, including those from stocks or mutual funds)

• Form 1099-MISC (various types of income, prizes, awards, or gross proceeds)

• Form 1099-B (stock or mutual fund sales and certain other transactions by brokers)

• Form 1099-S (proceeds from real estate transactions)

• Form 1099-K (merchant card and third party network transactions)

• Form 1098 (home mortgage interest), 1098-E (student loan interest), 1098-T (tuition)

• Form 1099-C (canceled debt)

• Form 1099-A (acquisition or abandonment of secured property)

Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN.

*If you do not return Form W-9 to the requester with a TIN, you might be subject to backup withholding. See* What is backup withholding, *later.*

# Exhibit "N"

# Description

Settlement agreement with Plaintiff's modifications outlined in attached email Exhibit "O" which defendants declined to sign. Yet, defendants wanted Plaintiff to agree with their own modifications.

## CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE

This Confidential Settlement Agreement and Release ("Agreement") is entered into as of the Effective Date by and between the Parties, Plaintiff Michael O. Livingstone ("Mr. Livingstone") on the one hand, and Defendants DeVry University, Inc. ("DeVry") and Adtalem Global Education Inc., ("Adtalem") (collectively the "Defendants") on the other hand. All references in this Agreement to a "Party" or "the Parties" shall refer only to the Parties to this Agreement.

## RECITALS

A. On or about November 19, 2019, Mr. Livingstone filed a federal civil lawsuit against Defendants in the District of New Jersey, captioned as *Michael O. Livingstone v. DeVry University, Inc., et al.*, Case No. 3:19-cv-20531-BRM-DEA (USDC-NJ) (the "New Jersey Action"). On or about September 14, 2020, Mr. Livingstone dismissed that lawsuit without prejudice.

B. On or about September 18, 2020, Mr. Livingstone filed a federal civil lawsuit against Defendants in the Northern District of Illinois, captioned as *Michael O. Livingstone v. DeVry University, Inc., et al.*, Civil Action No. 1:20-cv-05567 (USDC-Northern District Illinois) (the "Northern District of Illinois Action").

C. The New Jersey Action and the Northern District of Illinois Action are collectively referred to herein as the Actions.

D. Defendants deny all material allegations in the Actions.

NOW, THEREFORE, for good and valuable consideration of the mutual promises contained in this Agreement and intending to be legally-bound, the Parties to this Agreement, incorporating the Recital set forth above, hereby agree as follows:

1

## 1. Background.

The Parties are entering into this Agreement to avoid the time and expense of litigation, and without admitting fault or liability of any kind, and to settle and fully and finally resolve all differences between them, including, but not limited to, all claims arising out of Mr. Livingstone's enrollment at DeVry and all allegations and claims asserted in the Actions. This Agreement constitutes the good faith settlement of all claims of any nature whatsoever that Mr. Livingstone has or may have against the Defendants whether asserted or unasserted.

## 2. No Admission of Liability.

This Agreement is not and shall not in any way be construed as an admission by the Parties of any violation of any of Mr. Livingstone's statutory or other rights. Defendants deny any and all allegations contained in, associated with or related to the Actions. The Parties expressly represent, understand and assent that this Agreement is a compromise of disputed claims, and that the exchange of consideration by virtue of this Agreement and any other acts, omissions or settlements by the Parties are not to be construed as an admission of liability by Defendants. Nor shall any acts, omissions, or statements by the Parties be construed as an admission of liability. Nothing contained in this Agreement shall be admissible evidence in any judicial, administrative, or other legal proceeding (other than a proceeding for breaching this Agreement), or be construed as an admission of any liability or wrongdoing on the part of Defendants of any violation of federal or state statutory or common law or regulation.

## 3. Voluntary Withdrawal from the University

Mr. Livingstone shall be permitted to voluntarily withdraw permanently from DeVry. Should he elect to do so, Mr. Livingstone shall submit the requisite form to DeVry's Registrar to discontinue and remove his enrollment at DeVry.

LEGAL02/40247511v2

**4. Graduation from DeVry and Code of Conduct Hearing Against Mr. Livingstone.**

Mr. Livingstone must retake Math 533 in order to graduate from DeVry, unless DeVry determines otherwise in which case he may only need to complete the coursework not yet completed in Math 533. DeVry shall not charge Mr. Livingstone tuition to retake Math 533. While enrolled in Math 533, Livingstone agrees to abide by all of DeVry's policies, procedures and rules. DeVry will close any pending Code of Conduct hearings pending against Mr. Livingstone upon signing this agreement.

**5. No Right to Future Enrollment or Employment at DeVry.**

Mr. Livingstone agrees not to apply for or otherwise seek enrollment at DeVry or any Adtalem institution as a student or to apply for, or, otherwise seek employment at DeVry or Adtalem at any time in the future. Mr. Livingstone will not seek to become a DeVry or Adtalem student of any kind, including but not limited to the following types: matriculated, non-matriculated, provisional, full-time, part-time, undergraduate, graduate, enrolled, and non-enrolled. Mr. Livingstone agrees that DeVry and Adtalem have no obligation to readmit, retain, employ, enroll, or hire him in the future. Mr. Livingstone expressly agrees that he will not allege or claim that any failure or refusal by DeVry or Adtalem to admit him as a student of any kind, or to hire him for employment as any form retaliation against him but, rather, Mr. Livingstone acknowledges such rights on the part of DeVry and Adtalem constitutes valid and legal part of the contractual consideration for this Agreement.

**6. Non-Disparagement of Mr. Livingstone.**

DeVry will not take any action or make any statement, written or oral that disparages Mr. Livingstone; nor shall DeVry take any action that is intended to damage the reputation of Mr. Livingstone.

LEGAL02/40247511v2

**7.    General Release of All Defendants.**

Except for the obligations created by this Agreement, Mr. Livingstone, on behalf of himself individually, and all of his past, present and future predecessors, successors, heirs, assigns, relations, attorneys and agents, hereby releases and forever discharges all defendants in the Actions, including but not limited to, Defendants, and any and all of Defendants' past, present or future executives, employees, consultants, independent contractors, insurers, directors, managing directors, officers, partners, principals, managers, members, attorneys, accountants, financial and other advisors, investment bankers, underwriters, shareholders, owners lenders, auditors, investment advisors, legal representatives, successors in interest, companies, firms, trusts, corporations, administrators, predecessors, successors, assigns, parent companies, subsidiaries, agents, associates, affiliates, divisions, holding companies (collectively, the "Releasees") from any and all claims, debts, liabilities, demands, obligations, costs, expenses, actions and causes of action of every nature, character and description, whether known or unknown, suspected or unsuspected, asserted or unasserted, fixed or contingent, which Mr. Livingstone now owns or holds, or may ever own or hold from the beginning of time to the Effective Date of this Agreement against Defendants, including but expressly not limited to the Actions.

Particularly, but without limitation, Mr. Livingstone releases any claims he has had or may have had against the Releasees arising from or related to Mr. Livingstone's enrollment as a student at DeVry, including any claims arising from any alleged violation by Defendants of any federal, state or local statutes, and any claims or allegations asserted in the Actions. Nothing in this Agreement is intended as a release of claims related to the validity or enforcement of this Agreement, nor does it constitute a release of any rights or claims which may accrue after Mr. Livingstone signs this Agreement.

4

## 8. Voluntary Dismissal of All Claims With Prejudice.

Mr. Livingstone affirms that within two weeks of all parties signing this agreement and upon receiving his payment, he will file with the United States District Court for the Northern District of Illinois a stipulation of dismissal that will dismiss with prejudice all claims asserted in *Michael O. Livingstone v. DeVry University, et al.*, Civil Action No.1:20-cv-05567 (USDC-N.D.Ill.). DeVry affirms that upon Mr. Livingstone filing a stipulation of dismissal, DeVry will also dismiss the pending disciplinary proceedings. Alternatively, if DeVry will dismiss the pending disciplinary proceedings upon Mr. Livingstone's graduation, then Mr. Livingstone also affirms that he will file his stipulation of dismissal of the case upon graduation.

Mr. Livingstone also agrees and promises that he has not and will not file, or permit to be filed in his name or on his behalf, any claim with any local, state or federal agency, or any lawsuit in court, against any of the persons or entities released in this Agreement, based upon any act or event which occurred on or before the effective date of this Agreement, and further agrees that, if any charge, complaint, lawsuit or administrative claim is filed in his name or on his behalf with any administrative agency or organization, or in any other forum, against any of the persons or entities released in this Agreement, based upon any act or event which occurred on or before the effective date of this Agreement, he will not seek or accept any personal relief, including but not limited to an award of monetary damages.

Mr. Livingstone represents and agrees that he has not filed any notices, claims, complaints, charges, or lawsuits of any kind whatsoever against the Releasees (as defined in Paragraph 7) with any court, any governmental agency, any regulatory body or any other third party with respect to any matter related to Defendants, Defendants' affiliates or a Releasee, other than the Actions.

In the same token, DeVry expressly agrees not to file or pursue any civil claim or with

any local, state or federal agency, or any lawsuit in court, against Mr. Livingstone based upon any act or event which occurred on or before the effective date of this Agreement, and further agrees that, if any civil complaint, lawsuit or administrative claim is filed against Mr. Livingstone with any agency or organization, or in any other forum, against Mr. Livingstone based upon any act or event which occurred on or before the effective date of this Agreement and Release, DeVry and Adtalem shall withdraw and dismiss it with prejudice. DeVry and Adtalem further agree not to file any criminal reports on their behalf with any state or federal law enforcement agency regarding Mr. Livingstone based upon any act or event which occurred on or before the effective date of this Agreement.

9. **Confidentiality and Mr. Livingstone's Motions to Seal the Court Records.**

To protect their own reputations and good names, Mr. Livingstone will move the Courts to seal the Court records in both the New Jersey Action and the Northern District of Illinois Action. Defendants agree not to oppose Mr. Livingstone's motions to seal. It will be up to the Court to grant Mr. Livingstone's motion to seal.

Mr. Livingstone, his representatives, employees, agents, heirs, executors and/or administrators represent and agree to treat the terms and conditions of this Agreement, all facts and circumstances regarding the Actions, the dispute between the Parties and the final negotiations regarding this Agreement (the "Confidential Information") as strictly confidential, and have not previously been disclosed, discussed or revealed, and shall not in the future disclose, discuss or reveal the Confidential Information to any persons, entities or organizations other than the Parties hereto and their counsel. Notwithstanding the foregoing, this confidentiality representation and agreement does not prohibit disclosure of the Confidential Information by Mr. Livingstone, his attorneys, tax preparers or accountants, provided that disclosure is (1) required for compliance with federal, state or local laws, rules or regulations; (2) required for compliance with a subpoena

6

or other court order; or (3) required for performance or enforcement of obligations under this Agreement. In the event Mr. Livingstone receives a subpoena or other legal process calling for the production of this Agreement or disclosure of the terms of this settlement or of this Agreement, or in any way related to the subject matter of this Agreement or of this settlement, notice shall be given within five (5) business days of receipt of such subpoena or other legal process to the Defendants and their counsel to give the Defendants an opportunity to object to such production or disclosure. Mr. Livingstone shall then cooperate to the extent legally permissible with the Defendants' efforts, if any, to oppose the subpoena or legal process.

**10.     Acknowledgement of Understanding.**

Mr. Livingstone represents and certifies that he has carefully read and fully understands all of the provisions and legal effects of this Agreement and the meaning and effect thereof. Mr. Livingstone acknowledges that he is entering into this Agreement voluntarily, and that Defendants have not made any representations concerning the terms or effects of this Agreement other than those contained herein. Mr. Livingstone represents that he had the opportunity to consult with, and receive advice from, independent legal counsel in connection with his review and execution of this Agreement.

**11.     Acknowledgement of Release of All Claims.**

Mr. Livingstone expressly acknowledges that this Agreement is intended to extinguish, without limitation, all claims that have arisen and of which Mr. Livingstone knows or does not know, should have known, had reason to know, or suspect to exist in his favor at the time of his signing of this Agreement. Therefore, this Agreement eliminates all known and unknown claims that Mr. Livingstone might have.

**12.     Applicable Law.**

This Agreement and all questions relating to its validity, interpretation, performance and

7

enforcement (including, without limitation, provisions concerning limitations of actions),will be governed by and construed in accordance with the laws of the State of Illinois and Federal Laws, as applicable, without regard to its choice of law provisions. The exclusive jurisdiction and venue for any dispute relating to this Agreement is United Stated District Court for the Northern District of Illinois.

### 13. Consideration to Mr. Livingstone.

Upon receipt by Defendants of an executed copy of this Agreement with an actual (not electronic) signature by Mr. Livingstone and an executed W-9 form by November 23, 2020, Defendants shall pay the sum of $20,000.00 (twenty-thousand dollars) to Mr. Livingstone (the "Settlement Payment") which shall be sent by the United States Postal Service via Priority Mail Express, Overnight Guarantee, before December 2, 2020. Defendants shall send the Settlement Payment to Mr. Livingstone at the following address:

> Michael O. Livingstone
> Post Office Box No. 34246
> Philadelphia, Pennsylvania 19101

### 14. Entire Agreement.

This Agreement as to the resolution of this matter represents the complete agreement between the Parties concerning the subject matter in this Agreement and Release and fully supersedes any and all prior or contemporaneous representations, warranties, agreements or understandings, written or oral made by the Parties or their representatives pertaining to the subject matter hereof. The Parties have not relied on any facts, statements, or the failure by any Party to make statements or disclose facts, in entering into this Agreement. No extrinsic evidence whatsoever may be introduced in any judicial proceeding involving the construction or interpretation of this Agreement.

8

15. **No Oral Waiver or Modifications of Agreement.**

No attempted modification or waiver of any of the provisions of this Agreement shall be binding upon either party unless in writing and signed by all Parties.

16. **Captions.**

The captions contained in this Agreement and Release are for the purposes of identification and convenience only and do not define, limit or prescribe the scope of this Agreement.

17. **Representations and Warranties.**

The Parties represent that there has not been any assignment, transfer, conveyance or other disposition of any rights, obligations or liabilities released under the terms of this Agreement, and that there will be no assignment, transfer, or purported assignment or transfer to any person or entity whatsoever, of any claim, debt, liability, demand, obligation, cost, expense, action, defense or cause of action released. The Parties represent that they have the authority to enter into this Agreement, and have obtained the consent of anyone necessary to enter into this Agreement.

This Agreement shall be construed as if the Parties jointly prepared it. Any uncertainty or ambiguity in the Agreement shall not be interpreted against either Party.

18. **Taxes.**

The Parties and their counsel agree that they have not received tax advice from any opposing Party. DeVry and Adtalem will be liability for any taxes that may result from this Agreement.

19. **Violation of Agreement.**

If Mr. Livingstone or any of the Releasees prevail in a legal or equitable action claiming that the other Party has breached this Agreement, the prevailing Party(ies) shall be entitled to recover from the other Party(ies) the reasonable attorneys' fees and costs incurred by the prevailing Party(ies) in connection with such action, in addition to other available remedies.

LEGAL02/40247511v2

**20. Binding on Successors and Assigns.**

This Agreement shall inure to the benefit of, and shall be binding upon, each of the Parties hereto and their successors or assigns.

**21. Severability.**

In the event any part of this Agreement is deemed unenforceable, the unenforceable provisions will be severed and the remaining provisions shall survive.

**22. Counterparts.**

This Agreement may be executed and delivered in separate counterparts, each of which, when so executed and delivered, shall be an original, but such counterparts together shall constitute but one and the same instrument and agreement. ".Pdf" signatures shall be effective and shall have the same force and effect as original signatures.

**23. Effective Date.**

The Effective Date of this Agreement shall be the last date that any Party fully and duly executed the Agreement.

IN WITNESS WHEREOF, and intending to be legally bound hereby, the Parties hereto execute the foregoing Confidential Settlement Agreement and Release.

DATED: November <u>25,</u> 2020      **Plaintiff**

                                                   By: _____
                                                       **Michael O. Livingstone**

DATED: November ___, 2020      **DeVry University, Inc.**

                                                   By: _____
                                                       F. Willis Caruso, Jr.
                                                   Its:    Interim President and CEO

DATED: November ___, 2020      **Adtalem Global Education Inc.**

By: _____

Chaka M. Patterson

Its:    Senior Vice President and General Counsel

11

# Exhibit "O"

## Description

Plaintiff's email dated Monday, November 30, 2020 at 7:31 AM repudiating the settlement agreement (attached Exhibit "M") **BEFORE** defendants signed and sent the repudiated version to Plaintiff. Plaintiff provided these modifications incorporated within attached **Exhibit "N"** which defendants declined to sign. Yet, defendants wanted Plaintiff to agree with their own modifications. Accordingly, there was no "meeting of the minds" here.

 **Gmail**                **Michael O. Livingstone <mikeosei@gmail.com>**

## Michael Livingstone v. DeVry University - Confidential Settlement Agreement

**Michael O. Livingstone** <mikeosei@gmail.com>        Mon, Nov 30, 2020 at 7:31 AM
To: "Gonsalves, Terance" <Terance.Gonsalves@alston.com>

Good Morning Mr. Gonsalves,

I shall file the stipulation of dismissal myself as the Plaintiff in the case after all is said and done. Since your clients have not yet signed and sent me the agreement and payment, I have attached a revised signed version for Parts 4, 8, 13, and 18 of the agreement because of these four reasons:

**First,** Part 4 provision of the settlement agreement contains ambiguity. As you know by Law, settlement agreements are contracts. Ambiguity is grounds to strike down a contract settlement agreement. See *Lamps Plus, Inc. v. Varela,* 587 U.S. ___ (2019). Here is the ambiguity: Since the DeVry September 2020 code of conduct proceedings forms a major basis of the federal litigation and we are stopping the litigation, that means the pending code of conduct proceedings should also end and close now at DeVry, not "closed upon graduation." If the federal litigation is no longer going to be pending, then the code of conduct proceedings forming a basis of the federal case should also not remain pending. So, I have redacted that statement under Part 4 that says the pending disciplinary proceedings will be "closed upon Mr. Livingstone's graduation…". There is no good-faith reason to keep those disciplinary proceedings open at DeVry since we are dismissing its parallel federal litigation.

If you want to keep it open at DeVry till graduation, then I also need to keep the litigation open till graduation because the two are inextricably -intertwined. That means I will not file the stipulation of dismissal until graduation when the pending disciplinary proceedings are also closed. This will avoid ambiguity. Towards that end, the first paragraph under Part 8 is revised to read:

> …Mr. Livingstone affirms that within two weeks of all parties signing this agreement and upon receiving his payment, he will file with the United States District Court for the Northern District of Illinois a stipulation of dismissal that will dismiss with prejudice all claims asserted in *Michael O. Livingstone v. DeVry University, et al.*, Civil Action No.1:20-cv-05567 (USDC-N.D.Ill.). DeVry affirms that upon Mr. Livingstone filing a stipulation of dismissal, DeVry will also dismiss the pending disciplinary proceedings. Alternatively, if DeVry will wait to dismiss the pending disciplinary proceedings upon Mr. Livingstone's graduation, then Mr. Livingstone also affirms that he will file his stipulation of dismissal of the federal case upon graduation…

**Second,** Part 18 provision regarding Taxes is revised in the attached. DeVry and Adtalem should carry the tax liability because the defendants were represented by Attorneys who are trained and experienced in settling cases. So, the defendants and their Attorneys knew or **should have known** whether there is tax liability or not. There is an element of *surprise* here because Taxes were not discussed during the settlement negotiations. Surprise can be considered as fraud and fraud is grounds to strike down a settlement contract agreement.

**Third,** in Part 13, I have changed the clause about the payment date to "…before **December 2,** 2020 " instead of **December 4** also because of the upcoming December 2nd joint status hearing with Judge Wood. This way, we can have a conclusive settlement to report on the status of the case during that hearing.

**Finally,** after further consideration, the pending motion for reimbursement of the process service fees still matters to me because I unduly suffered over that financial costs. I moved the Court to adjudicate those motions before the settlement proceedings. Those motions were not discussed during the settlement negotiations. I recognize that DeVry is giving MATH 533 tuition as well. However, put into consideration the time I would wasting re-taking that class and my delayed graduation with lost future salary over $70K. My other classmates have already graduated but I am still here. So, I am waiving or precluding those pending

motions from the settlement agreement even if it's not on the face of the agreement. If the Court denies those motions ECF 16, 19-20, I will appeal.

So, please give the attached signed version to your clients to sign instead of the one I sent last November 24.

I respectfully request that your clients sign their parts of the agreement as soon as possible and send me the payment so that we can declare this matter finalized, as there are many thoughts I am having that can cause me to repudiate the settlement and move on to full-blown litigation and subpoena some people and things from DeVry. I am not afraid of the motion to dismiss and "length of the complaint" is not grounds to dismiss a complaint without granting rule 15 leave to amend. Fed. R. Civ. Proc. 8 says a "short and plain complaint" without imposing any page limits. I have seen 400-paged complaint by the FTC before.

Thanks for all you are doing.


Sincerely,

Michael Livingstone.


[Quoted text hidden]

📄 **6. M. Livingstone v. DeVry University, et al._Settlement Agreement_2. .pdf**
166K

# Exhibit "Q"

 **Gmail**

Michael O. Livingstone <mikeosei@gmail.com>

## MATH533 January Enrollment
1 message

**McCann, Amy** <amccann@devry.edu>                    Mon, Dec 14, 2020 at 12:35 PM
To: "mikeosei@gmail.com" <mikeosei@gmail.com>

Hi Michael,

Let me first introduce myself, my name is Dean Amy McCann, and I will be your point of contact for your January session course enrollment. You have been scheduled into your last course, MATH533, with Professor Harris and will be the only student enrolled.  Professor Harris will be available for any questions that you may have that is relevant to the course content. Your threaded discussions will work differently this session, as you will only be required to post 1 response for the week on the related topic.

While you may see charges leading up to the beginning of the session, this is only an administrative function of our system and you will not be responsible for charges associated with the course.

Should you have any questions, please direct them to me.

**Amy McCann** | *Associate National Dean of Registrar Services & University Registrar*

**P** 732.729.3807 | **E** amccann@devry.edu

1200 E. Diehl Road | Naperville, IL 60563 | devry.edu



 **Livingstone_Michael.pdf**
191K

# Exhibit "R"

        **Michael O. Livingstone <mikeosei@gmail.com>**

---

## Courses Outside Home Metro [ ref:_00D80ZxLm._5002H1DsztB:ref ]

**DeVry University** <help@devry.edu>        Mon, May 4, 2020 at 6:46 PM
To: "mikeosei@gmail.com" <mikeosei@gmail.com>

Hello Michael,

Not technically, you can drop any day before you actually attend the course. Any day in the first two weeks. After two weeks of non-attending the course will actually drop automatically. You have plenty of time to apply for the loan renewal. I would suggest doing it today instead of dropping the course. Let me know what you would ultimately like to do!

[Quoted text hidden]

ref:_00D80ZxLm._5002H1DsztB:ref

# Exhibit "T"

## Description

January 18, 2021 email notice from DeVry that MATH 533 is automatically dropped for non-attendance after Plaintiff declined to do the class as a solo *independent* study class unlike all other matriculated students and in violation of the University's own Catalog.

 **Gmail**                                    **Michael O. Livingstone <mikeosei@gmail.com>**

## DeVry: Drop for Non-Attendance Notification

**DSAMS** <noreply@devry.edu>                              Mon, Jan 18, 2021 at 4:08 AM
To: "mikeosei@gmail.com" <mikeosei@gmail.com>



January 18, 2021

Dear Michael,

Missing the first two weeks of class in MATH533 taught by Jennifer Harris at Online, has resulted in the following actions:

- You'll be dropped from the course for non-participation.
- If you're dropped from all of your courses because of non-attendance, you'll also be dropped from courses in which you're enrolled for future sessions. Your financial aid will be recalculated and may result in a balance on your account.
- If you received financial aid and were issued a tuition refund, you may need to return these funds to your lender. You remain responsible for all financial obligations to any DeVry institution; federal, state and local governments; and private loan providers.
- Your expected graduation date may be impacted.

*What if you want to return to DeVry University and continue your studies?*

- Contact a student support advisor if you're taking an onsite course or a member of the academic advising team at 877.496.9050 (choose option 3) if you're taking an online course.
- Take advantage of the numerous student support resources available to you, designed to assist you in making continued progress toward completing your academic program.
- Discuss your financial aid status and the implications of dropping a course(s) with a student finance consultant.

We look forward to seeing you back in class next session. Helping you reach your academic goals is our number one focus.

Thank you,

Student Support Advisor/Academic Advising Team

**In New York, DeVry University operates as DeVry College of New York.**

# Exhibit "Z"

## Description

Note that Math 533 and Math 534 as both called Applied Managerial Statistics because there is older and newer version of the same class based on Catalog year of student matriculation. However, they are the same courses that satisfy the same requirement.

Direct printouts of the DeVry University course registration Portal showing that each Math 533 or Math 534 class has capacity for 45 students.
All Math 534 class sections currently show at least 43 students.
Neither Math 533 nor Math 534 is running as independent study course for any student. All Students are taking the course in groups of 5 - 45 students.

**Please follow yellow highlights**

# Look Up Classes

D40530929 Michael O. Livingstone
March 2021
Feb 23, 2021 09:22 pm

**March 2021**

## MATH-Mathematics

| | | |
|---|---|---|
| 014 | Foundations of Mathematics | View Sections |
| 062 | Beginning Algebra | View Sections |
| 103 | Beginning Algebra | View Sections |
| 114 | Algebra for College Students | View Sections |
| 116 | Algebra for College Students | View Sections |
| 190 | Pre-Calculus | View Sections |
| 221 | Statistics for Decision-Making | View Sections |
| 233 | Discrete Mathematics | View Sections |
| 265 | Applied Calculus | View Sections |
| 500 | Foundations of Managerial Math | View Sections |
| 533 | Applied Managerial Statistics | View Sections |
| 534 | Applied Managerial Statistics | View Sections |

New Course Search     Add or Drop Classes     Register for Another Term     View Detail Schedule

Week at a Glance     Registration History     Active Registration     Print Unofficial Transcript

Account Summary     Registration Fee Assessment     View Holds

© 2021 Ellucian Company L.P. and its affiliates.

**RELEASE: 8.7.2.4**

**SITE MAP**

# Look Up Classes

💬 Select the box in front of the CRN (C = closed class, SR = Restrictions on Student, NR = Restrictions on Course) and choose Register or Add to Worksheet. For classes with NR or SR in selection field, please contact an appropriate academic advisor for registration assistance.

Please note: For days of the week T=Tuesday, R=Thursday so if the days listed on the class have "TR", it means that your class is scheduled to meet on both Tuesday and Thursday.

For textbook cost information click the bookstore link within *Quick Links* section on the Home tab on the main portal page.

## Sections Found

**MATH-Mathematics**

| Select | CRN | Subj | Crse | Sec | Cmp | Cred | Title | Days | Time | Cap | Act | Rem | Instructor | Date (MM/DD) | Location | Attribute |
|--------|-----|------|------|-----|-----|------|-------|------|------|-----|-----|-----|------------|--------------|----------|-----------|
| SR | 60676 | MATH | 534 | 0 | ON1 | 3.000 | Applied Managerial Statistics | | 12:00 am-11:59 pm | 45 | 43 | 2 | Mohammad .. Al Sharoa (P) | 03/01-04/24 | TBA | Course Material with eBook and Course Material - Rate 2 and GoArmy - MATH |
| SR | 61051 | MATH | 534 | 0 | ON1 | 3.000 | Applied Managerial Statistics | | 12:00 am-11:59 pm | 45 | 44 | 1 | Douglas Copeland (P) | 03/01-04/24 | TBA | Course Material with eBook and Course Material - Rate 2 and GoArmy - MATH |
| SR | 61527 | MATH | 534 | 0 | ON1 | 3.000 | Applied Managerial Statistics | | 12:00 am-11:59 pm | 45 | 20 | 25 | Imad Benjelloun Benjelloun (P) | 03/01-04/24 | TBA | Course Material with eBook and Course Material - Rate 2 and GoArmy - MATH |

New Search

| | | | |
|---|---|---|---|
| New Course Search | Add or Drop Classes | Register for Another Term | View Detail Schedule |
| Week at a Glance | Registration History | Active Registration | Print Unofficial Transcript |
| Account Summary | Registration Fee Assessment | View Holds | |

© 2021 Ellucian Company L.P. and its affiliates.

# Look Up Classes

Select the box in front of the CRN (C = closed class, SR = Restrictions on Student, NR = Restrictions on Course) and choose Register or Add to Worksheet. For classes with NR or SR in selection field, please contact an appropriate academic advisor for registration assistance.

Please note: For days of the week T=Tuesday, R=Thursday so if the days listed on the class have "TR", it means that your class is scheduled to meet on both Tuesday and Thursday.

For textbook cost information click the bookstore link within *Quick Links* section on the Home tab on the main portal page.

## Sections Found

### MATH-Mathematics

| Select | CRN | Subj | Crse | Sec | Cmp | Cred | Title | Days | Time | Cap | Act | Rem | Instructor | Date (MM/DD) | Location | Attribute |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| SR | 60220 | MATH | 533 | 55 | ON1 | 3.000 | Applied Managerial Statistics | | 12:00 am-11:59 pm | 45 | 5 | 40 | Bhupinder Sran (P) | 03/01-04/24 | TBA | Course Material with eBook and Course Material - Rate 2 and GoArmy - MGMT and MBA Core and MPA Core and MPM Core |

New Search

New Course Search     Add or Drop Classes     Register for Another Term     View Detail Schedule

Week at a Glance     Registration History     Active Registration     Print Unofficial Transcript

Account Summary     Registration Fee Assessment     View Holds

© 2021 Ellucian Company L.P. and its affiliates.

RELEASE: 8.7.2.4                                         SITE MAP